## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

**BUCKHEAD CITY COMMITTEE,**

    **Plaintiff,**

**v.**

**CITY OF ATLANTA, GEORGIA,**
**and its MAYOR ANDRE DICKENS,**

    **Defendants.**

**CIVIL ACTION**

**FILE NO. 1:22-CV-234-LMM**

## DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Desperate to distract from a run of bad press regarding the Buckhead City

Committee's ("BCC") goals, finances, and officers, BCC filed this lawsuit without

regard to the law or the facts underlying its violations of City of Atlanta ("City")

ordinances.  BCC went so far as to name Mayor Andre Dickens as a defendant—

apparently as a political stunt since the Complaint does not allege Mayor Dickens

has done anything.  BCC ignores that the City had probable cause to issue

correction notices for BCC's apparent violation of two City ordinances: one

prohibiting roof signs, and one requiring parking lot striping.  BCC's vague

innuendo about the City's alleged hostility and unexplained glancing references to

various state and federal constitutional provisions are neither well-pled nor legally meritorious.

If an answer were required now, the City would deny many or all of BCC's allegations.  But for purposes of this Motion, the Complaint's "well-pleaded facts" are accepted "as true." *Gates by Gates v. City of Atlanta*, No. 1:15-CV-0604-LMM, 2015 WL 13642415, at *2 (N.D. Ga. Nov. 3, 2015).  Even by that standard, the Court should dismiss because (1) BCC's claims against Mayor Dickens are redundant; (2) BCC fails to state any viable federal claim; (3) BCC fails to allege an official City policy, as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (4) in the absence of viable federal claims, the Court should decline to exercise jurisdiction over any purported state law claims.  Under Federal Rule of Civil Procedure 12(b)(6), and for the reasons set out in the accompanying memorandum of law, the City and Mayor Dickens move the Court to dismiss BCC's Complaint in its entirety.

## ARGUMENT

### I.    All claims against Mayor Dickens are redundant.

Although BCC sued Mayor Dickens, his inclusion appears to be a public-relations decision, not a legal one. Indeed, after name-dropping him at the outset, the Complaint does not assert any involvement by him in any of the allegations.

*See, e.g.,* Compl., Dkt 1, ¶ 11.  Moreover, much of the alleged conduct took place before he became Mayor.  Presumably, then, though it failed to say as much, BCC intended to sue him in his official capacity—for that is the only logical interpretation of BCC's complaint.

But a lawsuit against Mayor Dickens in his official capacity is simply a lawsuit against the City.  *See, e.g., Higdon v. Fulton Cty.*, 746 F. App'x 796, 799 (11th Cir. 2018) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)). And it is well-established that when a plaintiff sues both the municipality and the individual who is functionally equivalent to that entity, the claims against the individual should be dismissed. *Id.* ("[O]fficial-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant."); *see also Kennedy v. Avondale Estates*, 414 F. Supp. 2d 1184, 1196 (N.D. Ga. 2005) (claims dismissed in sign-regulation suit).  Accordingly, all the claims against Mayor Dickens should be dismissed as redundant—then the Court and the parties can focus only on the legal issues, rather than what scores political points with anonymous donors.

## II.    The Complaint Fails to State any Viable Claims under Federal Law.

On the substance of the claims, BCC "commit[ted] the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm*

*Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).  By including all claims in a single count, BCC violated this Circuit's prohibition on shotgun pleading.  *See id.*  The Court should dismiss on this basis alone, as the City cannot ascertain the substance of BCC's claims.  The City nonetheless endeavors to respond on the merits to the entire range of BCC's claims.[1]

As best the City can tell, BCC may be asserting four claims: (1) as applied and facial First Amendment challenges to the City's Sign Ordinance,[2] Compl., Dkt. 1, ¶ 41; (2) a First Amendment retaliation claim as to the sign correction notices, *id.* ¶ 42; (3) Fifth Amendment and Fourteenth Amendment due process claims, *id.* ¶ 42–43; and (4) a selective prosecution claim, *id.* ¶ 44.  These claims all fail on the merits.

---

[1] If due to the vagaries of the Complaint, the City's response is determined not to be sufficiently comprehensive, the City will supplement this Motion.

[2] BCC did not attach the Sign Ordinance in its Complaint, but the Court should take judicial notice of it under Federal Rule of Evidence 201.  Courts have taken judicial notice of ordinances.  *See, e.g. Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("City ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.").  The Court may consider the ordinances without converting this motion into one for summary judgment.  *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 & n.9 (11th Cir. 2013).  The Sign Ordinance, Atl. Ord. § 16-28A.001 et seq., is attached to this Motion as Exhibit A.

### A. BCC has not stated either a facial or an as-applied First Amendment challenge to the Sign Ordinance.

BCC seems to claim the City's Sign Ordinance violates the First Amendment (1) facially, because it ostensibly allows the City to delay issuance of sign permits, and (2) as applied, because of alleged delays in issuing sign permits to BCC.  Compl., Dkt. 1, ¶ 41.  Neither contention has merit.

### 1.  Precedent forecloses BCC's facial First Amendment challenge.

Settled Eleventh Circuit law bars BCC's facial challenge.  The Sign Ordinance is content-neutral, and "time limits are not *per se* required when the licensing scheme at issue is content-neutral."  *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1271 (2005) (quotation omitted).

The Sign Ordinance is content-neutral because it does not regulate content. As BCC alleges, the Sign Ordinance allows signs with "any lawful message." Compl., Dkt. 1 ¶ 18.  On its face, the Sign Ordinance regulates signs based on objective factors like size and placement.  For example, in the Buckhead Village District, where BCC has its office, the Sign Ordinance limits the size of signs to "ten percent of the total aggregate area of the walls that face the public right-of-way."  *Id.* ¶ 21 (quoting Atl. Ord. § 16-28A.010(19)).  "[O]bjective criteria" like these are quintessential content-neutral regulations.  *Granite State Outdoor Advert., Inc. v. City of St. Petersburg*, 348 F.3d 1278, 1282 & n.4 (11th Cir. 2003).

"Numerous other cases involving sign ordinances have found similar criteria to be sufficient to withstand constitutional scrutiny." *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 623 (6th Cir. 2009); *see Reed v. Town of Gilbert*, 576 U.S. 155, 173 (2015) ("[S]ize, building materials, lighting, moving parts, and portability" are content-neutral.).

The Sign Ordinance also bans roof signs, defined as a sign "any part of which is placed above, supported on, or extends above the top of a building." Atl. Ord. § 16-28A.004; 16-28A.009(7). BCC does not challenge the roof sign ban. Regardless, this blanket ban does not regulate content, either. The Eleventh Circuit recognized as much in an analogous case upholding a blanket ban on portable signs. *See Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051, 1054 (11th Cir. 1987). The Court affirmed the "City's judgment that the regulation of portable signs will help to eliminate visual clutter and thereby further the City's interest in improving the visual character of the City." *Id.* at 1053.

The Supreme Court has also upheld content-neutral bans on entire categories of signs based on aesthetic and safety interests. In *Metromedia, Inc. v. City of San Diego*, the Supreme Court said: "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create

is to prohibit them." 453 U.S. 490, 508 (1981). In *City Council v. Taxpayers for Vincent*, the Court upheld a "content-neutral, impartially administered prohibition against the posting of … temporary signs on public property." 466 U.S. 789, 817 (1984). *See also Naser Jewelers, Inc. v. City of Concord*, 513 F.3d 27, 37 (1st Cir. 2008) ("Concord's prohibition of [electronic messaging centers] is a constitutionally permissible content-neutral regulation.").

This authority affirms the constitutionality of the City's roof sign ban. The Sign Ordinance prohibits roof signs whether they promote Buckhead secession, Ivory soap, or bringing the Olympics back to Atlanta. The sole issue is whether a sign is "placed above, supported on, or extends above the top of a building." Atl. Ord. § 16-28A.004. That objective criteria is content-neutral—it does not "draw[] distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163.

The Sign Ordinance also has a content-neutral purpose. The Sign Ordinance's stated goals include promoting aesthetics, fostering safety, preserving property value, and affording reasonable advertising opportunities. Atl. Ord. § 16-28A.002. The Eleventh Circuit has expressly held that similar goals are content-neutral. *See Granite State*, 348 F.3d at 1281.

Because the Sign Ordinance is content-neutral, it need not include a time limit to pass First Amendment muster. "[T]ime limits are not *per se* required when

the licensing scheme at issue is content-neutral." *Id.* at 1283 n.6.  BCC's facial

First Amendment challenge—claiming the Ordinance allows the City to "unduly

delay the process of sign applications"—therefore fails.

### 2. BCC has not stated an as-applied First Amendment challenge.

That leaves BCC's as-applied challenge.  As best City can tell, BCC faults

an alleged delay in issuing sign permits.  But the only delay BCC alleges occurred

when an inspector requested information about the roof sign.  Compl., Dkt. 1, ¶ 27.

BCC never alleges that it provided the information needed to permit the roof sign.

*Id.*  BCC's own foot-dragging poses no First Amendment problem.

At the threshold, BCC wrongly asserts it had no obligation to obtain permits.

Compl., Dkt. 1, ¶ 20.  The Sign Ordinance requires a permit whenever a sign is

"modified"—including the text.  Atl. Ord. § 16-28A.013(a). BCC admits it

intended to modify three signs, including "the existing roof sign," with new copy.

Compl., Dkt. 1, ¶ 17.  BCC was free to change the signs to reflect any lawful

message.  *Id.* ¶ 18.  But it had to obtain a permit to do so.

As noted, the Sign Ordinance prohibits roof signs.  The City may not permit

a roof unless it "is a lawful nonconforming sign." Atl. Ord. § 16-28A.013(a).  A

lawful nonconforming sign loses status if it "is not used or leased for a continuous

period of one year." *Id.* § 28A.014(b)(2).  BCC bore the burden to establish the

lawful nonconforming status of what it admits was an "existing roof sign."  Under the Sign Ordinance, sign applications are not "deemed to be accepted" until "all information reasonably required … is provided by the applicant."  Atl. Ord. § 16-28A.013(b)(1).  The inspector assigned to review BCC's application accordingly "requested proof that the [roof] sign had been issued a lawful permit."  Compl., Dkt. 1, ¶ 27.  This was a valid request.  The Sign Ordinance forbids the City from permitting a roof sign that does not have nonconforming status.

BCC does not allege it provided the requested proof.  It claims instead that "none of the decades-old permit records were available."  Compl., Dkt. 1, ¶ 27.  But the Sign Ordinance does not make an exception where records are unavailable.  BCC had to show the roof sign had not fallen out of use for more than a year to establish that the City could lawfully issue a permit.  *See* Atl. Ord. § 28A.013(b)(1) (applicant must provide "all information reasonably required" for permit).  BCC's failure to show lawful nonconforming status caused the delay, not the City.

The permit delay is the only specific allegation in the Complaint.  BCC alleges in conclusory fashion that the City "raised other pretexts."  Compl., Dkt. 1, ¶ 27.  But it does not identify any other delays (and none exist).  The Court should reject the City's as-applied challenge rather than accept this conclusory allegation.

Finally, to the extent BCC's as-applied claim rests on the actions of a "City staffer" rather than official policy, the claim fails under *Monell*, as discussed below.

### B. BCC has not stated a First Amendment retaliation claim.

The City construes BCC's allegation that "citations and criminal prosecutions" over the signs violate the First Amendment, Compl, Dkt. 1, ¶ 42, as a retaliatory prosecution claim. To state a such claim, BCC "must plead[]" the "absence of probable cause." *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). BCC has not alleged an arrest occurred, so presumably it does not assert a retaliatory arrest claim. Regardless, BCC would also have to plead the lack of probable cause to state such a claim as well. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019).

BCC failed to do so, and indeed the pleadings confirm why it couldn't. The City has *at least* probable cause to think the Sign Ordinance bars BCC's roof sign. BCC cannot dispute that the Sign Ordinance bans roof signs, and it admittedly wanted to modify an "existing roof sign." Compl. Dkt. 1, ¶ 23. The Court can see the roof sign for itself just by looking at Complaint Exhibit 1. That photo shows the sign supported on a roof and extending above the top of the building—the very definition of a prohibited roof sign. The City thus needed proof of nonconforming status to issue a permit, and it never received that proof.

These facts establish probable cause.  "Probable cause is defined as facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quotation omitted).  Absent a shred of evidence of nonconforming status, an inspector could reasonably believe the Sign Ordinance barred the roof sign.  BCC offers no allegation to the contrary.  The First Amendment retaliation claim must fail based on probable cause.

To be sure, the Supreme Court has held in context of a retaliatory *arrest* claim against a municipality that a plaintiff need not plead the absence of probable cause so long as the municipality has an official policy of retaliation.  *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1955 (2018).  But the Supreme Court "has not identified any exceptions to the no-probable cause requirement in § 1983 First Amendment retaliation claims predicated on criminal prosecutions."  *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1306 (11th Cir. 2019).  BCC does not allege anyone was arrested, so *Lozman* does not apply.

Even under *Lozman*, the claim fails.  *Lozman* set out five "unique" factors that led the Supreme Court to dispense with the probable cause requirement in that case, 138 S. Ct. at 1954: (1) an official policy of retaliation; (2) a pre-meditated plan to retaliate; (3) objective evidence of a retaliatory policy, including a

transcript of a closed door meeting; (4) a time lapse between adoption of the policy and the speech at issue; and (5) the importance of plaintiff's speech. *DeMartini*, 942 F.3d at 1294. The City does not dispute BCC's First Amendment rights to advocate for secession. But the *Lozman* factors are absent here. BCC has not alleged a policy of retaliation, discussed further below. It offers no allegations let alone evidence of pre-meditation or objective evidence of a retaliatory policy, like the transcript in *Lozman*. And here, "the speech the [City] allegedly retaliated against"—the signs—"was the same protected speech for which the [City]" issued corrections notices. *DeMartini*, 942 F.3d at 1307. Applying *Lozman* to dispense with probable cause would "create[] a serious risk of dubious First Amendment retaliatory claims," *id.*, because of "the complexity of proving (or disproving) causation," *Lozman*, 138 S. Ct. at 1953. The Supreme Court warned against this result in *Lozman*.

    For these reasons, given the City's probable cause, the Court should dismiss BCC's First Amendment retaliation claim (if that is what it asserts).

### C. BCC has not stated a due process claim under the Fifth or Fourteenth Amendments.

    BCC also attacks "threats of citations and criminal prosecutions" for Sign Ordinance and "parking lot violations" under the Fifth and Fourteenth Amendments—presumably under those Amendments' respective Due Process

Clauses.  Compl., Dkt. 1, ¶¶ 42–43.[3]  These claims fail because the City offers ample process to challenge the enforcement of its Ordinances.

To start, the Fifth Amendment claim fails for the simple reason that the Fifth Amendment does not apply.  "[I]t is elementary constitutional law that the Due Process Clause of the Fifth Amendment applies only to conduct committed by officials of the federal government; it does not apply to state actors."  *Cotriss v. City of Roswell*, No. 1:16-cv-4589, 2018 WL 11350388, at *2 n.1 (N.D. Ga. Mar. 9, 2018).  To resolve any doubt, the City is not part of the federal government.

BCC's claim fares no better under the Fourteenth Amendment's Due Process Clause.  At its most demanding, the Due Process Clause requires "notice and an opportunity to be heard" prior to the deprivation of a protected interest.  *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009).  The City satisfies this requirement with ample process, as its Ordinances establish.

As clearly set forth in the City's ordinances, BCC could have appealed the sign and parking correction notices to the Board of Zoning Adjustment ("BZA").

---

[3] The Committee calls the parking violation "bogus" but neglects to inform the Court that a City ordinance requires "off-street parking areas for four (4) or more automobiles" to have "individual spaces marked."  Atl. Ord. § 16-28.014(1), attached as Ex. B.  The Americans with Disabilities Act requires accessible parking as well.  Exhibit 1 to the Complaint shows four cars parked in front of the Committee's office, and no striping in sight.  Dkt. 1-1.

Compl., Dkt. 1 ¶ 30; Atl. Ord. § 16-30.010, attached as Ex. C.  "[A]ny person aggrieved" by a zoning correction notice—BCC included—may appeal to the BZA "within 30 days after the action appealed from was taken."  Atl. Ord. § 16-30.010; *see also* Atl. Ord. § 16-28A.016 (providing for Sign Ordinance appeals "as authorized by section 16-30.010").  From there, if still aggrieved, BCC could have sought certiorari in the Fulton County Superior Court.  *See* Atl. Ord. § 16-26.007, attached as Ex. D; *see also* Atl. Ord. § 16-30.010 (providing for appeals from the BZA "as provided for in section 16-26.007").  BCC does not allege that these multiple layers of review fall short of adequate due process, nor could it credibly do so.

The City also provides ample process prior to enforcement action beyond a correction notice.  A zoning or sign ordinance violation is "an offense" punishable by "a fine not exceeding $1,000.00" or "imprisonment for a term not exceeding six months."  Atl. Ord. § 1-8(b), attached as Ex. E; Atl. Ord. § 16-28A.016; Atl. Ord. § 16-30.002, attached as Ex. F.  The Atlanta Municipal Court has jurisdiction over ordinance violations, Atl. Ord. § 62-35, attached as Ex. G, and the City Solicitor tries those cases, Atl. Ord. § 62-28, attach as Ex. H.  If the City takes enforcement action, it must give BCC notice prior to trial, Atl. Ord. § 62-60, attached as Ex. I, where BCC will enjoy a panoply of rights, from compulsory process to secure

witnesses to confrontation rights, Atl. Ord. § 62-64, attached as Ex. J. "No person shall be condemned, fined or punished without full opportunity of being heard in such person's own defense." *Id.* Appeals from the Municipal Court likewise go to the Superior Court on certiorari review. *See Magby v. City of Riverdale*, 288 Ga. 128, 129 (2010) (holding that O.C.G.A. § 5-4-3 authorizes superior court review of municipal court judgments). BCC does not allege that these procedures violate due process, either, particularly in conjunction with the process to appeal a correction notice prior to criminal enforcement proceedings.

Despite the availability of these extensive procedures, BCC "failed to take advantage of available state remedies." *Doe v. Valencia College*, 903 F.3d 1220, 1234 (11th Cir. 2018). That failure precludes BCC from stating a due process claim. "Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)). BCC does not allege it appealed to the BZA. Having failed to use the procedures the City offered, BCC cannot be heard to complain about them. BCC also does not allege the City has initiated criminal proceedings. BCC does not have a ripe due process claim unless and until the City denies it process—which the City has no intention of doing.

BCC tacks onto its due process claim an allegation that "[t]o any extent the City imposes criminal penalties based on discretionary or subjective standards, such rules are unconstitutional and invalid."  Compl., Dkt. 1, ¶¶ 42–43.  The City is unsure what claim BCC means to raise with that language, particularly given the "to any extent" qualifier.  Regardless, BCC has not identified any criminal penalties imposed based on subjective standards.  The Sign Ordinance, as noted, sets out objective criteria that signs must meet—for example, the Sign Ordinances defines roof signs as signs that extend above the top of a building (among other things).  Enforcing the roof sign ban requires no subjectivity, only an objective assessment of how far a sign extends.  The same goes for the parking lot correction notice.  The parking ordinance requires striped spaces in lots with "areas for four or more automobiles."  Atl. Ord. § 16-28.014.  Counting cars is not subjective.

If BCC means to raise a vagueness challenge, that claim likewise fails.  A law is vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008).  BCC has not alleged that it cannot understand the City's ordinances.  Nor has it alleged any ordinance is that standardless.  The previous paragraph makes clear

that the ordinances complained of are perfectly intelligible and sufficiently definite not to encourage seriously discriminatory enforcement.

**D. BCC has not stated a claim for selective prosecution.**

BCC seems to claim selective prosecution based on "free speech and the doctrines of equal protection and due process."  Compl., Dkt. 1, ¶ 44.  "The requirements for a selective-prosecution claim draw on ordinary equal protection standards," *United States v. Armstrong*, 517 U.S. 456, 465 (1996), and the claim should be rejected on those standards.  To the extent BCC asserts a selective prosecution based on the First Amendment, the same standards apply.  *See United States v. Tibbetts*, 646 F.2d 193, 195 (5th Cir. Unit A 1981).[4]

BCC "bear[s] a demanding burden" on a selective prosecution claim. *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011).  It must "demonstrate that [it] was prosecuted while others similarly situated were not, and furthermore that the government prosecuted [it] invidiously or in bad faith." *Lanier v. City of Newton*, 842 F.2d 253, 256 (11th Cir. 1988).  The Complaint falls short on both prongs.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit precedent handed down prior to October 1, 1981.

First, BCC fails to allege that similarly situated signs or parking lots escaped prosecution.  The similarly-situated analysis demands specificity.  *See Jordan*, 635 F.3d at 1188.  An armed robber cannot claim selective prosecution if a prosecutor lets traffic offenses slide.  Instead, BCC must allege the City declined to enforce its ordinances against others who "committed the same basic crime in substantially the same manner … and against whom the evidence was as strong or stronger."  *Id.* at 1188 (quotation omitted).  BCC has not pointed to any similarly situated comparator, let alone one against whom the evidence was "as strong or stronger."

Again, BCC admits that it wanted a permit for a prohibited roof sign, but it never alleges it proved the roof sign's nonconforming status.  Compl., Dkt. 1, ¶¶ 31–32.  The Complaint contains no allegation that anyone else violated the Sign Ordinance in this way.  BCC makes the bare assertion that "thousands of signs which are illegal" have not been prosecuted.  Compl., Dkt. 1, ¶ 34.  But it does not allege that any of those signs are prohibited roof signs.  The lone example it gives—signs that used to be on Mayor Dickens' former campaign headquarters— are not roof signs.  Exhibit 3 to the Complaint, which depicts the Dickens signs, shows campaign signs affixed to the *wall*.  *See* Dkt. 1-3.  The signs are not "placed above" or "supported on" the roof, nor do they "extend[] above the top of a building."  Atl. Ord. § 16-28A.004.  The Court should reject BCC's conclusory

allegation that these signs are illegal.  Compl., Dkt. 1, ¶ 34.  And regardless, wall signs are not a proper comparator.

The same goes for the parking lot correction notice, which required BCC to stripe its lot and provide van accessible parking.  BCC does not allege that a comparable parking lot somewhere in the City escaped prosecution.  Compl., Dkt. 1, ¶ 38.  Without a comparator, BCC does not have a plausible claim.

The most BCC alleges is that prior tenants were not cited for the signs or the parking lot.  Compl., Dkt. 1, ¶¶ 34, 38.  Alone, this allegation does not state an equal protection violation, because it does not establish that prior tenants were similarly situated.  The case of *Zia Shadows, LLC v. City of Las Cruces* makes the point.  829 F.3d 1232 (10th Cir. 2016).  There, a prior mobile home park owner sued for selective prosecution, claiming a city treated the prior owner worse than the current owners.  *Id.* at 1240.  The court rejected the claim, noting the owner failed to show "the City has no objectively reasonable basis for its actions under the circumstances."  *Id.* at 1241.  It was "unclear whether [the old owner] is asserting the City explicitly gave the new owner permission it had denied" the old owner, or "merely that the new owner has not been punished for flouting the rules."  *Id.*

BCC has not alleged that the old tenant—whoever owned the sign shown in Exhibit 2 to the Complaint, Dkt. 2-2—applied for a permit and failed to show the roof sign was nonconforming, as BCC did.  Nor has BCC alleged the City knew of the prior violations—a critical element of its claim.  If "the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses," the City "does not deny equal protection."  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).  *See also Jones v. White*, 992 F.2d 1548, 1573–74 (11th Cir. 1993) ("The failure to apply a recidivist statute because of lack of knowledge of prior convictions or the unavailability of the requisite documentation *at sentencing* does not violate equal protection, although subsequent studies and statistics may reveal previous convictions.").  The City has finite resources; "a [city] zoning department cannot reasonably be expected to be aware of [or act on] all possible zoning violations within the jurisdiction."  *Cobb County v. Peavy*, 286 S.E.2d 732, 735 (Ga. 1982).  There is no constitutional problem with zoning inspectors enforcing an ordinance when a violation comes to their attention.

Moreover, BCC says the City "returned" to issue a notice for the parking lot—so it is plausible the City noticed the parking lot on the first visit to issue a notice for the signs and returned to correct that, too.  BCC must allege more than "a sheer possibility" of unlawful action, and when, as here, its allegations are

"merely consistent with" liability "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

BCC also falls short on the second prong—that the City acted in bad faith. As discussed in the next section, BCC must allege an official policy of retaliation to hold the City liable. But it has not alleged that any final policymaker—as that term is used in *Monell* and its progeny—took any action. BCC thus cannot impute any bad faith to the City.

Some amount of selection in enforcement is inevitable—and consistent with the Constitution. This Complaint is too thin to let BCC's claim proceed. The Supreme Court has warned against allowing such claims to proceed without justification. It catalogued the undesirable consequences in *Armstrong*, noting that discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." 517 U.S. at 468. Further, "federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions." *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989). The Court should heed these warnings and dismiss the claim.

### III.   The enforcement claims fail under *Monell* because BCC failed to allege an unlawful policy.

By suing the City over the actions of its employees, BCC completely ignores over forty years of established federal law.  Following the Supreme Court's ruling in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), it is black-letter law that "a municipality may not be held liable under § 1983 under a theory of *respondeat superior*—that is, solely because it employs a tortfeasor." *Favors v. City of Atlanta*, 849 F. App'x 813, 817 (11th Cir. 2021) (citations omitted).

"Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy or custom that caused the plaintiff's injury." *Id.* (citations omitted). Indeed, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.*

BCC does not allege any such policy or custom and thus cannot establish either the second or third prong. Instead, it alleges only that individual inspectors came to its premises and issued notices for its sign ordinance violations.  *See* Compl., Dkt. 1, ¶¶ 30–38. And, as the claim against the City "is based solely on the conduct of one [of] its alleged employees, such a claim . . . is without merit." *Hall*

*v. Georgia, Dep't of Pub. Safety*, No. 1:14-CV-03295-LMM, 2015 WL 12867005, at *5 (N.D. Ga. June 30, 2015), *aff'd sub nom. Hall v. Georgia*, 649 F. App'x 698 (11th Cir. 2016) (dismissing claims against the government entity).  The only reference to *any* broader activity beyond the individual enforcement is that "*the City sent* an inspector" to the site.  Compl, Dkt. 1, ¶ 30 (emphasis added). But particularly given the contrary allegations elsewhere, that threadbare recital comes nowhere near alleging a policy or custom and falls far short of what is required to allege municipal liability under *Monell*.  Simply put, solitary claims of individual instances of unlawful enforcement by government officials cannot be maintained as against the City as a government entity.[5]

## IV. In the Absence of Viable Federal Claims, the Court Should Not Exercise Supplemental Jurisdiction over any State Claims

Assuming the Court dismisses the federal claims, the Court should also decline to exercise supplemental jurisdiction under § 1367 over any purported Georgia claims.[6]  A contrary result, particularly at this early stage, would allow

---

[5] For this reason, the claims should be dismissed regardless of whether they are brought under the First Amendment, Equal Protection, or Due Process.

[6] Though the Committee does not cite the statute, its reference to "supplemental or pendent jurisdiction" presumably refers to 28 U.S.C. § 1367(a).

BCC to bootstrap its state law claims into federal court based on purported federal claims that were dubious from their very inception.

While the Court's decision is ultimately discretionary, the Supreme Court encourages courts to decline supplemental jurisdiction in cases where the federal claims are dismissed at an early stage of the litigation. *See Chauncey v. Barnes*, No. 1:19-CV-1097-LMM, 2019 WL 5701071, at *3 (N.D. Ga. Aug. 8, 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) ("[W]here a plaintiff's federal law claims are dismissed before trial, the dismissal of state law claims is encouraged"). The Court's decision involves several factors—"judicial economy, convenience, fairness, and comity"—but critically, in the usual case, all of these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Nothing takes this case out of those "usual" circumstances. Instead, those factors all point towards declining jurisdiction, just as this Court did in *Chauncey*:

> The Court declines to exercise supplemental jurisdiction in this case. While judicial economy may tilt in favor of resolving these claims now, the Court finds it is substantially outweighed by the other supplemental jurisdiction factors, particularly those of comity. As the Eleventh Circuit has held, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). This is particularly so in this case where not only have Plaintiff's federal law claims been dismissed

before trial, but also where Plaintiff's state law claims depend primarily on determinations of state law.

*Id*. For reasons of convenience, fairness, and especially comity, to the extent that

BCC alleges violations of the Georgia Constitution—the very heart and source of

Georgia law—those claims would be best resolved in Georgia courts.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety.  Whatever

value it may have had as political theater, it lacks entirely in legal merit.

Respectfully submitted this 28th day of March, 2022.

*/s/ Robert L. Ashe III*
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
E. Allen Page
Georgia Bar No. 640163
page@bmelaw.com
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 28, 2022, I served a true and correct copy of the within and foregoing **DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT** by filing it with the Court's electronic filing system, which will serve a copy on all counsel of record.

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202
