## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **BUCKHEAD CITY COMMITTEE,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **FILE NO. 1:22-CV-234-SEG** |
| **CITY OF ATLANTA, GEORGIA,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

# Table of Contents

I.   BCC Failed to State a First Amendment Claim for the City's Alleged Delay in Issuing Permits..................................................................1

    A.   BCC lacks standing to assert claims based on delay.......................2

    B.   Precedent forecloses BCC's facial First Amendment challenge.....5

    C.   The as-applied challenge also fails...................................................7

        1.   BCC has not alleged a policy of delaying sign applications. .....7

        2.   BCC caused any delay that occurred. ........................................9

II.  BCC Failed to State a First Amendment Retaliation Claim. ................10

    A.   BCC's retaliation claim fails under *Monell* because it failed to allege the existence of a policy.........................................................11

    B.   Any purported delay can be explained by non-retaliatory reasons ............................................................................................12

    C.   BCC's failure to plead the absence of probable cause defeats its retaliation claim based on threats of prosecution. ..........................14

III. BCC has Failed to State a Selective Enforcement Claim.........................17

IV.  BCC Failed to State an Equal Protection Claim. .....................................20

    A.   BCC lacks standing to challenge Sign Ordinance provisions that do not apply to its conduct...............................................................21

    B.   BCC failed to state an equal protection claim................................22

V.   BCC is Not Entitled to an Injunction Because it has No Claim for Relief. ......................................................................................................24

VI.  The Court Should Not Exercise Supplemental Jurisdiction over State Law Claims................................................................................................24

## ARGUMENT

Plaintiff Buckhead City Committee ("BCC") spends most of its time vocally criticizing Defendant the City of Atlanta's ("City")[1] law enforcement practices. In an ironic reversal, BCC has now sued to *prevent* the City from enforcing the law. BCC violated City ordinances prohibiting roof signs and requiring parking lots to be striped. The Constitution does not forbid the City from enforcing those laws, as explained in the City's first Motion to Dismiss. Even accepting the well-pleaded allegations of BCC's Amended Complaint as true, as the Court must do, *see Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022), BCC's five claims all fail as a matter of law. The Court should dismiss the case in its entirety.

## I. BCC Failed to State a First Amendment Claim for the City's Alleged Delay in Issuing Permits.

Count One asserts that the City's alleged delay in issuing sign permits violates BCC's First Amendment rights. BCC challenges a Sign Ordinance provision that requires the City to act on sign permit applications "within 30 days of their submission." Atl. Ord. § 16-28A.013(b)(2). The Sign Ordinance is

---

[1] BCC's first Complaint named Mayor Andre Dickens, but BCC omitted him from the Amended Complaint. The City moves the Court to formally dismiss him. *See* Fed. R. Civ. P. 21 (Courts may "at any time, on just terms, add or drop a party.").

1

attached as Exhibit A.[2]  After 30 days, applicants may "at their own risk erect a sign meeting [Ordinance] requirements," subject to enforcement action against noncompliant signs.  *Id.*  BCC claims the 30-day rule violates the First Amendment, apparently facially and as-applied.

Count One should be dismissed for several reasons.  First, the Court has no jurisdiction because BCC lacks standing to challenge this provision.[3]  Second, the challenged provision is constitutional, both facially and as applied.

### A.      BCC lacks standing to assert claims based on delay.

BCC lacks standing to challenge the 30-day rule because it does not allege the rule caused it injury.  At issue are two of the three elements of standing: BCC has not "suffered an injury" or shown a "causal connection between the injury and the conduct complained of."  *Speech First, Inc. v. Cartwright*, __ F.4th __, 2022 WL 1192438, at *6 (11th Cir. Apr. 21, 2022).  Neither the alleged delay in BCC

---

[2] The Court may take judicial notice of attached City ordinances under Federal Rule of Evidence 201 without converting this motion into one for summary judgment.  *See, e.g., Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 & n.9 (11th Cir. 2013); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).

[3] "[S]tanding is not dispensed in gross."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation omitted).  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Id.* (quotation omitted).

posting its signs nor the threat of criminal prosecution constitute an injury.  Dkt. 13, ¶ 43.

*First*, BCC cannot show an injury due to the 30-day rule.  BCC alleges that it unnecessarily applied for a sign permit the Sign Ordinance does not require.  Dkt. 13, ¶ 20.  "[P]laintiffs cannot manufacture standing merely by inflicting harm on themselves."  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc) (quotation omitted).

BCC is wrong to claim it didn't need a permit—the Sign Ordinance requires permits to "modif[y]" a sign.  Atl. Ord. § 16-28A.013.  But still BCC's allegations show it suffered no delay.  BCC alleges it was entitled to erect its signs on day 31, and that because it "could no longer wait," it "installed the signs."  Dkt. 13, ¶¶ 28–29.  Those allegations belie any claim of harm from delay.  BCC contends that "Applicants who delay posting signs based on the City's failure to issue sign permits – *such as the Committee* – have suffered irreparable harm."  *Id.* ¶ 43 (emphasis added).  But BCC's allegations make clear that <u>it is not an applicant that suffered any delay</u>.  So, it cannot point to the delay itself as an injury in fact.

*Second*, BCC's allegation that it faced "grave risk of criminal prosecution," *id.*, falls flat because the alleged risk is not "fairly traceable" to the 30-day rule.  Only signs that violate the Sign Ordinance risk prosecution.  The City's correction

notices reflect that point: BCC was ordered to remove an "<u>illegal</u> roof sign," i.e., a sign for which no permit could be granted, as well as "any other signs that <u>cannot</u> be permitted."  Dkt. 13, ¶ 32. BCC was not ordered to remove signs *for which an application is pending and could be granted*.  It was only ordered to remove signs that are unlawful.[4]  Thus, it can easily avoid any risk of prosecution by doing so.

That BCC cannot recover as a matter of law also reflects the circumstances: it claims it suffered under the 30-day rule, but the truth is the opposite—BCC <u>benefitted</u> from erecting its unlawful sign(s) while review of its applications plays out (and while BCC upends the usual process with this lawsuit).  The ordinance's flexible 30-day rule reflects that the permitting process inevitably takes time.  It is also invariably true that some applications are more complicated or need more information.  The 30-day rule allows applicants to avoid delay by erecting the sign in the interim, as BCC did.  If the sign is unlawful—as is the case here—the applicant can remove it, and the risk of prosecution evaporates.  That is exactly what BCC has alleged has happened, and it shows why BCC has no claim about the 30-day rule.

---

[4] Of course, whether the signs are in fact unlawful is a critical question, but it is beside the point for BCC's challenge to the 30-day rule.

Because it has no injury causally traced to the 30-day rule in the permitting ordinance, BCC lacks standing to challenge the ordinance's constitutionality.

**B.      Precedent forecloses BCC's facial First Amendment challenge.**

BCC's facial challenge fails on the merits.  BCC claims the 30-day rule is unconstitutional because the City "is not required to grant or deny sign applications within any set time period."  Dkt. 13, ¶ 43.  That flies in the face of precedent.  The Ordinance is content neutral, and "time limits are **not** *per se* required when the licensing scheme at issue is content-neutral."  *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1271 (2005) (quotation omitted) (emphasis added).

The Sign Ordinance is content-neutral because it does not regulate signs based on "the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  Rather, it allows signs to "contain any lawful message so long as said sign complies with the size, height, area and other requirements of this chapter."  Dkt. 13, ¶ 18 (citing Atl. Ord. § 16-28A.007(g)).

For example, in the Buckhead Village District, where BCC has its office, the Sign Ordinance limits the size of signs to "ten percent of the total aggregate area of the walls that face the public right-of-way."  *Id.* ¶ 21 (quoting Atl. Ord. § 16-28A.010(19)).  That raises no issue: "objective criteria" such as "height, area, separation, and setback requirements" are indisputably content-neutral.  *Granite*

5

*State Outdoor Advert., Inc. v. City of St. Petersburg*, 348 F.3d 1278, 1280, 1282 (11th Cir. 2003); *see also Reed*, 576 U.S. at 173 ("size, building materials, lighting, moving parts, and portability" regulations are content neutral).

The Sign Ordinance also bans all roof signs, defined as a sign "any part of which is placed above, supported on, or extends above the top of a building." Atl. Ord. § 16-28A.004. BCC does not allege the roof-sign ban is content-based—or even mention the ban at all. Regardless, the ban is content-neutral. It prohibits roof signs whether they promote Buckhead secession or Ivory soap.

Ample authority supports the constitutionality of a categorical ban. The Eleventh Circuit has upheld a blanket ban on portable signs, affirming the "City's judgment that the regulation of portable signs will help to eliminate visual clutter and thereby further the City's interest in improving the visual character of the City." *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051, 1053–54 (11th Cir. 1987). The Supreme Court has likewise upheld content-neutral bans on entire categories of signs based on aesthetic and safety interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508 (1981) ("If the city has a sufficient basis for believing that billboards are traffic hazards … , then … perhaps the only effective approach … is to prohibit them."); *City Council v. Taxpayers for Vincent*,

6

466 U.S. 789, 817 (1984) (upholding a "content-neutral, impartially administered prohibition against the posting of … temporary signs on public property").

Finally, the Sign Ordinance has a content-neutral purpose: promoting aesthetics and safety. *See* Atl. Ord. § 16-28A.003. Precedent confirms such goals are content-neutral. *See Granite State*, 348 F.3d at 1281.

Because the Sign Ordinance is content-neutral, it need not include a time limit to pass First Amendment muster. "[T]ime limits are not *per se* required when the licensing scheme at issue is content-neutral." *Id.* at 1283 n.6. BCC's facial First Amendment challenge—claiming the City can "unduly delay processing of sign applications," Dkt. 13, ¶ 41—fails to state a claim.

### C. The as-applied challenge also fails.

#### 1. BCC has not alleged a policy of delaying sign applications.

The as-applied First Amendment claim challenges the actions of a single "City staffer." Dkt. 13, ¶ 27. By suing the City for the actions of its employees, BCC completely ignores over forty years of established federal law. Following the Supreme Court's ruling in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), it is black-letter law that "a municipality may not be held liable under § 1983 under a theory of *respondeat superior*—that is, solely because it employs a tortfeasor." *Favors v. City of Atlanta*, 849 F. App'x 813, 817 (11th

7

Cir. 2021) (citations omitted). Instead, BCC must "identify a municipal policy or custom that caused the plaintiff's injury." *Id.* (quotation omitted).

BCC does not allege any such policy or custom. Instead, it alleges only that an individual "City staffer began a series of delaying tactics." *See* Dkt. 13, ¶ 27. As the claim against the City "is based solely on the conduct of one [of] its alleged employees, such a claim . . . is without merit." *Hall v. Georgia, Dep't of Pub. Safety*, No. 1:14-CV-03295-LMM, 2015 WL 12867005, at *5 (N.D. Ga. June 30, 2015), *aff'd sub nom. Hall v. Georgia*, 649 F. App'x 698 (11th Cir. 2016) (dismissing claims against the government entity).

Nor can BCC claim the City staffer is a person whose "edicts or acts may fairly be said to represent official policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (quotation omitted). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127. The Sign Ordinance undisputedly reflects City policy. The staffer's alleged departures from it do not, as a matter of law.

Simply put, solitary claims of individual instances of unlawful enforcement by government officials cannot be maintained as against the City as a government entity. Thus, the Court need not even reach the merits of the as-applied challenge.

### 2.    BCC caused any delay that occurred.

BCC's as-applied challenge based on alleged delay fares no better on the merits. As explained above, BCC failed to allege that it suffered any delay; but regardless its own allegations make clear that it caused any delay, not the City.

To start, BCC alleges that it did not need sign permits.  Dkt. 13, ¶ 22.  On this allegation, any delay is attributable to its decision to take the unnecessary step of getting permits.  The City is not liable for BCC's unilateral decision.

If BCC needs permits, as the City maintains, its claim still fails because it never provided all information needed to complete its application.  BCC had to provide "all information reasonably required" for a permit—including proof of nonconforming status for the prohibited roof sign.  Atl. Ord. § 28A.013(b)(1).  The City's 30-day deadline does not run until the application is submitted, and that does not occur until applicants provide "all information reasonably required."  *Id.*

BCC failed to do so. Given the roof-sign ban, the City cannot permit a roof sign unless it "is a lawful nonconforming sign."  Atl. Ord. § 16-28A.013(a).  Nonconforming signs lose status if not "used or leased for a continuous period of one year."  Atl. Ord. § 16-28A.014(b)(2).  The inspector on BCC's application thus legitimately "requested proof that the [roof] sign had been issued a lawful permit."  Dkt. 13, ¶ 27.  The inspector could not issue a permit without such proof.  BCC

9

admits it never provided this information to the City.  BCC alleges only that "none of the decades-old permit records were available."  *Id.*  But the Sign Ordinance does not make an exception for unavailable records.

The permit delay is the only specific allegation in the Complaint.  BCC alleges in conclusory fashion that the City "raised other pretexts."  Compl., Dkt. 1, ¶ 27.  But it does not identify any other delays or "pretexts," and none exist.  The Court should reject the BCC's as-applied challenge rather than accept this conclusory allegation.

## II.    BCC Failed to State a First Amendment Retaliation Claim.

In Count Two, BCC asserts a First Amendment retaliation claim for the same two alleged injuries discussed above: the alleged delay in issuing sign permits and "threats of criminal prosecutions." Dkt. 13, ¶49. As with the above, these claims necessarily fail.

To state a § 1983 First Amendment retaliation claim, a plaintiff must show: "(1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the

plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Even before it fails to meet these elements, BCC's retaliation claim runs headlong into the same problem as its as-applied First Amendment challenge: that longstanding Supreme Court precedent forbids holding a city liable for the acts of its employees.  As such, Count Two should be dismissed.

### A. BCC's retaliation claim fails under *Monell* because it failed to allege the existence of a policy.

BCC's retaliation claim is based on the actions of two inspectors.  Dkt. 13, ¶¶ 30, 35.  Again, "a municipality may not be held liable under § 1983 … solely because it employs a tortfeasor." *Favors*, 849 F. App'x at 817.  BCC's retaliation claim fails because it has not alleged that a City policy caused its alleged injury.

BCC alleges that inspectors came to its premises and issued notices for its Sign Ordinance and parking lot violations.  *See* Dkt. 13, ¶¶ 30–38.  The claim lacks merit because it "is based solely on the conduct of … [the City's] alleged employees." *Hall*, 2015 WL 12867005, at *5.  The inspectors' "edits or acts" do not "represent official policy." *Praprotnik*, 485 U.S. at 122.  The notices they issued are subject to review by the Board of Zoning Adjustment.  Atl. Ord. § 16-30.010, attached as Ex. B.  "[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to

11

measure the official's conduct for conformance with *their* policies." *Praprotnik*,

485 U.S. at 127.  The Court thus need not reach the merits of the retaliation claim.

**B.      Any purported delay can be explained by non-retaliatory reasons**

Initially, BCC's challenge to the permit issuance "delay" falters for the same

reasons as discussed in Count One—namely, that BCC did not actually suffer any

delay, and so it lacks standing to challenge the City's activities on that basis.

Further, as explained above, BCC's own failure to provide requested, necessary

information contributed to the time the permit review took.

For similar reasons, BCC cannot establish the elements of a retaliation

claim: first, because the alleged delay is not adverse enough to deter a person of

ordinary firmness from exercising First Amendment rights; and second, because

the alleged delay is not causally connected to BCC's exercise of those rights.  *See*

*DeMartini*, 942 F.3d at 1289.

*First*, the delay would not deter a person of ordinary fitness from exercising

its rights. The Sign Ordinance allows applicants to "erect a sign meeting"

Ordinance requirements if an application remains pending 30 days after

submission, at the risk of the City citing illegal signs.  Atl. Ord. § 16-

28A.013(b)(2).  An applicant as convinced as BCC that its signs comply with the

Sign Ordinance would feel no compunction about posting signs.

BCC also admittedly "installed the signs 'as if the applications had been granted.'" Dkt. 13, ¶ 29.  BCC's "actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (quotation omitted).  Given BCC's ability to post signs pending review of its applications—which, again, sought permits for prohibited signs—a person of ordinary firmness would speak.  *Cf. Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x 887, 898 (10th Cir. 2010) (no deterrence where adult entertainment establishment was allowed to continue serving alcohol pending evaluation of its liquor license).

*Second*, the delay is not causally connected to BCC's exercise of its rights. The Sign Ordinance required the City to determine whether BCC's prohibited roof sign had nonconforming status.  A delay "entirely consistent with permissible and lawful actions" does not state a claim for retaliation.  *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 36 (1st Cir. 2011).  In *Carl*, the First Circuit rejected a retaliation claim where the plaintiff's complaint "makes no attempt either to plead that it complied with" regulatory requirements and the complaint itself stated that "Air Sunshine's failure to comply with FAA regulations" caused delay.  *Id.* at 36–37. The same is true here: the sign that even BCC calls a "roof sign" is prohibited.

13

*E.g.*, Dkt. 13, ¶ 27.  The City had to determine the sign's nonconforming status before permitting it, and this legitimate reason defeats BCC's retaliation claim.

BCC offers no other example of delay—it vaguely refers to "other pretexts." *Id.*  BCC no doubt knows the delay resulted from its failure to provide required information.  In any event, the Court should reject the conclusory allegation that "other pretexts" caused delay.  BCC "does not provide … allegations explaining why the proffered reasons for delay were false or unjustified." *Carl*, 663 F.3d at 37.  These "mere broad conclusory allegations of wrongdoing in the complaint are not a substitute for meaningful factual context." *Id.*  "As a result, the complaint fails to state a claim of retaliation." *Id.*

### C.    BCC's failure to plead the absence of probable cause defeats its retaliation claim based on threats of prosecution.

As for threats of prosecution, BCC has not shown that "a causal connection exists between" the correction notices "and the adverse effect on [its] speech."

That is because BCC has failed to plead the lack of probable cause. *DeMartini*, 942 F.3d at 1289, 1304.  In a retaliatory prosecution case, the action of a prosecutor who is immune from suit ordinarily breaks the causal chain between the prosecution and the non-prosecutor defendant alleged to have acted with animus. *Hartman v. Moore*, 547 U.S. 250, 261–62 (2006).  "Probable cause is defined as facts and circumstances sufficient to warrant a prudent man in believing

that the suspect had committed or was committing an offense." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quotation omitted).

The City has at least probable cause to believe the Sign Ordinance prohibits BCC's roof sign.  BCC admits it wants to permit an "existing roof sign."  Dkt. 13, ¶ 23.  The Court can see the roof sign for itself in Complaint Exhibit 1, Dkt. 13-1. That photo shows the sign on the roof extending above the top of the building—a definitional prohibited roof sign.  BCC never proved (or pled) the roof sign had lawful non-conforming status, so far as the Complaint shows.  Dkt. 13, ¶ 27. These facts warranted the City believing that BCC's roof sign violated the Sign Ordinance prohibition on roof signs.  Atl. Ord. §§ 16-28A.010; 16-28A.015.

The same goes for BCC's parking lot violation.  A City ordinance requires "off-street parking areas for four (4) or more automobiles" to have "individual spaces marked."  Atl. Ord. § 16-28.014(1), attached as Ex. C.  Federal regulations require all parking lots to have handicap accessible parking, too.  *See* 28 C.F.R. Part 36, Appx. D, § 4.1.2(5)(a).  BCC's Exhibit 1 again reveals BCC's violation: it clearly shows four cars in the BCC parking lot, with no striping or ADA spaces in sight.  And again, the City had at least probable cause to issue a correction notice.

The presence of probable cause defeats a claim for retaliatory prosecution. To be sure, the Supreme Court held in context of retaliatory *arrest* that a plaintiff

15

need not plead the lack of probable cause so long as a city has an official policy of retaliation. *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1955 (2018). But the Supreme Court "has not identified any exceptions to the no-probable cause requirement in § 1983 First Amendment retaliation claims predicated on criminal prosecutions." *DeMartini*, 942 F.3d at 1306.

This Court should not do so, either. *Lozman* set out five "unique" factors that led the Supreme Court to dispense with the probable cause requirement there, 138 S. Ct. at 1954: (1) a policy of retaliation; (2) a pre-meditated plan to retaliate; (3) objective evidence of a retaliatory policy, including a transcript of a closed-door meeting; (4) a time lapse between adoption of the policy and the speech at issue; and (5) the importance of plaintiff's speech. *DeMartini*, 942 F.3d at 1294.

BCC has a right to advocate secession, but the other *Lozman* factors are absent. BCC has not alleged a policy of retaliation. It offers no allegation of pre-meditation or objective evidence of a retaliatory policy. And here, "the speech the [City] allegedly retaliated against"—the signs—"was the same protected speech for which the [City]" issued corrections notices. *DeMartini*, 942 F.3d at 1307. Applying *Lozman* would "create[] a serious risk of dubious First Amendment retaliatory claims," *id.*, because of "the complexity of proving (or disproving) causation," *Lozman*, 138 S. Ct. at 1953. *Lozman* itself warned against this result.

16

The Court should dismiss the First Amendment retaliation claim based on threats of criminal prosecution based on the City's probable cause.

## III.   BCC has Failed to State a Selective Enforcement Claim.

Count Three asserts selective enforcement based on the same delay and threats of prosecution.  This claim fails for the same reason as the retaliation claim: under *Monell*, BCC cannot recover from the City for the actions of its employees.  Thus, the Court need not even consider the merits of such a dubious claim.

BCC also falls short on the merits.  BCC "bear[s] a demanding burden" to state a selective enforcement claim, and it has not carried the burden.  *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011).  It has not alleged that "[it] was prosecuted while others similarly situated were not, [or] that the government prosecuted [it] … in bad faith."  *Lanier v. City of Newton*, 842 F.2d 253, 256 (11th Cir. 1988).  BCC flunks the second prong because no final policymaker, as defined in *Monell*, took action, and BCC thus cannot impute bad faith to the City.

BCC also fails to allege that similar permit applicants were not delayed or that similar signs and parking lots escaped prosecution.  This analysis demands specificity.  *See Jordan*, 635 F.3d at 1188.  A burglar has no selective prosecution claim if a prosecutor lets traffic offenses slide.  BCC must allege the City declined enforcement against others who "committed the same basic crime in substantially

17

the same manner … and against whom the evidence was as strong or stronger." *Id.* (quotation omitted).  BCC has not pointed to such a comparator.

In BCC's lone example of delay, BCC admits it sought a permit for a prohibited roof sign but never proved the sign's nonconforming status.  Dkt. 13, ¶ 27.  BCC does not allege an applicant for another roof sign received better treatment.  The same is true of the correction notices.  *Id.* ¶¶ 31–32.  BCC vaguely refers to "thousands of signs which are illegal"—but it does not say any are roof signs.  *Id.* ¶ 34.  The lone example BCC gives—signs that used to be on Mayor Dickens' former campaign headquarters—are not roof signs.[5]  Exhibit 3 to the Complaint the Dickens signs affixed to the *wall*, not "supported on" the roof or "extending above the top of a building."  *See* Dkt. 1-3.  The Court should reject BCC's conclusory allegation that these no longer extant signs are illegal.  Dkt. 13, ¶ 34.  Regardless, wall signs are not similarly situated to a prohibited roof sign.

The same goes for the parking lot correction notice, which required BCC to stripe the lot and provide handicap parking.  BCC does not allege any lot escaped prosecution.  Dkt. 13, ¶ 38.  Absent a comparator, BCC does not have a claim.

---

[5] A reasonable pre-suit investigation would show that those signs are no longer in place and haven't been for months.

The most BCC alleges is that prior tenants were not cited for the signs or the parking lot.  Dkt. 13, ¶¶ 34, 38.  This does not establish that prior tenants were similarly situated.  *Zia Shadows, LLC v. City of Las Cruces* makes the point.  829 F.3d 1232 (10th Cir. 2016).  A former mobile home park owner sued, claiming it was treated worse than the current owners.  *Id.* at 1240.  The court rejected the suit, noting the owner failed to show "the City has no objectively reasonable basis for its actions."  *Id.* at 1241.  It was "unclear whether [the old owner] is asserting the City explicitly gave the new owner permission it had denied" the old owner, or "merely that the new owner has not been punished for flouting the rules."  *Id.*

BCC has not alleged that the old tenant, who owned the roof sign in Exhibit 2, Dkt. 13-2, applied for a permit and failed to prove the sign was nonconforming. Nor has BCC alleged the City knew of prior violations—a critical element of the claim.  If "the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses," the City "does not deny equal protection."  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).  *See also Jones v. White*, 992 F.2d 1548, 1573–74 (11th Cir. 1993) ("The failure to apply a recidivist statute because of lack of knowledge of prior convictions or the unavailability of the requisite documentation *at sentencing* does not violate equal protection, although subsequent studies and statistics may reveal previous convictions.").  A city

19

"zoning department cannot reasonably be expected to be aware of [or act on] all possible zoning violations within the jurisdiction." *Cobb County v. Peavy*, 286 S.E.2d 732, 735 (Ga. 1982).  There is no constitutional problem with inspectors enforcing an ordinance when a violation comes to their attention.

Moreover, BCC says the City "returned" to issue a notice for the parking lot—so it is equally likely the City noticed the parking lot on the first visit to issue a notice for the signs and returned to correct that, too.  BCC's allegations are "merely consistent with" liability, which "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*United States v. Armstrong* warns against allowing meritless claims like BCC's to proceed without justification, because discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." 517 U.S. 456, 468 (1996).  Further, "federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions." *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989).  The Court should heed these warnings and dismiss the claim.

## IV.    BCC Failed to State an Equal Protection Claim.

Not only does BCC's baseless equal protection claim lack any legal merit, it challenges an ordinance provision that has absolutely nothing to do with this case.

20

**A.    BCC lacks standing to challenge Sign Ordinance provisions that do not apply to its conduct.**

BCC misrepresents the Sign Ordinance provision that it challenges in Count Four.  The Sign Ordinance *does not* allow "City officials to post whatever signs it [*sic*] wishes directly in front of the Committee's offices," as BCC alleges.  Dkt. 13, ¶ 61.  The Court need not accept BCC's "legal conclusion" that it does.  *Newbauer*, 26 F.4th at 934.  In truth, the Sign Ordinance prohibits *all* signs in the right-of-way, with limited exceptions.  *See* Atl. Ord. § 16-28A.012.  BCC does not allege any desire to post a sign in the right-of-way.  It instead focuses on the "existing roof sign," "wall sign," and "freestanding sign" on its premises.  Dkt. 13, ¶¶ 15, 17.

BCC "lacks standing to challenge provisions of the [Sign] Ordinance that do not apply to its activities."  *CAMP Legal Defense Fund v. City of Atlanta*, 451 F.3d 1257, 1264 (11th Cir. 2006).  *CAMP* rejected a challenge to an ordinance allowing the denial of festival permits to applicants that "failed to pay fees or perform a cleanup plan."  *Id.* at 1283–84.  The plaintiff "lacks standing to challenge" these rules because it "failed to present evidence that it has been … denied a permit for failure to pay fees or perform a cleanup plan."  *Id.* at 1276.  BCC's absurd premise—that the City's power to put up stop signs violates equal protection— does not deserve serious consideration.  But even accepting it, under *CAMP*, that treatment would not have injured BCC because it does not apply here.

21

BCC also lacks standing because its requested remedy will not redress its injury. Suppose the Court enjoins the right-of-way provision. Dkt. 13, ¶ 62. BCC will remain subject to the roof sign ban, restrictions on wall and freestanding signs, and the parking lot striping ordinance. *See Granite State Outdoor Advertising, Inc. v. Cobb County*, 193 F. App'x 900, 906 (11th Cir. 2006) ("[I]f these provisions were declared unconstitutional, the Sign Ordinance would continue to prohibit off-premises outdoor advertising, which is [Granite State's] only intended activity.").

### B.    BCC failed to state an equal protection claim.

On the merits, BCC ignores that "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004). The right-of-way provision treats all speakers alike: it prohibits right-of-way signs as a baseline. Atl. Ord. § 16-28A.012. "Cities clearly have the right to prohibit the erection of private signs on their right of way." *Kennedy v. Avondale Estates*, 414 F. Supp. 2d 1184, 1208 (N.D. Ga. 2005).

The right-of-way provision has ten limited exceptions, but none offend equal protection. BCC claims the exceptions favor the City over it. Dkt. 13, ¶ 60. But only four are speaker-based, to allow public agencies to post essential signs: (1) legal notices and traffic signs; (2) bus stops; (3) signs to a "identif[y] [a utility's]

22

poles, lines, pipes;" and (4) "temporary emergency warning signs" for contractors working in the right-of-way.  Atl. Ord. § 16-28A.012(1), (2), (3), (6).

The four exceptions serve indispensable purposes.  BCC frivolously claims the Constitution requires a world without stop signs or bus stops, with unmarked water mains and crews fixing potholes with no warning.  Right-of-way signs are the most narrowly tailored means of conveying this necessary information. "[W]ell settled law that the state may legitimately exercise its police powers to maintain traffic safety," *Kennedy*, 414 F. Supp. 2d at 1202.  Such "reasonable and viewpoint neutral" exceptions satisfy equal protection.  *Rowe*, 358 F.3d at 804.

The other six exceptions survive scrutiny because they do not draw speaker-based distinctions.  Three speaker- and content-neutral exceptions—for signs projecting over the right-of-way, newspaper vending devices, and signs attached to street furniture, Atl. Ord. § 16-28A.012(4), (7), (8)—receive rational basis review. *See Kennedy*, 414 F. Supp. 2d at 121.  The exceptions are reasonable, for example, by requiring liability insurance for projecting signs.  Atl. Ord. § 16-28A.007(e).

The non-commercial banner exception stands given the limited protection for commercial speech.  *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980).  The City need not "allow[] its citizenry to create a bazaar-like effect on the public right-of-way."  *Kennedy*, 414 F. Supp. 2d at 1214.

23

The two last exceptions, for building identification markers and neighborhood signs, have been upheld numerous times. *See, e.g.*, *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1112 n.5, 1115 (7th Cir. 1999); *Lamar Advert. Co. v. City of Douglasville*, 254 F. Supp. 2d 1321, 1332 (N.D. Ga. 2003) (Martin, J.).

Of course, nothing in the right-of-way provision applies to BCC. If the Court nonetheless engages the merits, it should uphold the right-of-way provision.

## V.    BCC is Not Entitled to an Injunction Because it has No Claim for Relief.

Count Five—labelled "Injunction"— fails because "[t]here is no such thing as a suit for a traditional injunction in the abstract." *Klay v. Utd. Heathgrp., Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). A "suit for … [an] injunction must be based upon a cause of action, such as a constitutional violation." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). BCC failed to state a claim, so the Court should deny it injunctive relief. *See Klay*, 376 F.3d at 1097.

## VI.    The Court Should Not Exercise Supplemental Jurisdiction over State Law Claims.

If the Court dismisses the federal claims, it should also decline supplemental jurisdiction over any Georgia law claims. Otherwise, BCC will have bootstrapped state law claims into federal court based on meritless federal claims.

While the Court's decision is discretionary, the Supreme Court encourages declining supplemental jurisdiction where federal claims are dismissed at an early

24

stage. *See Chauncey v. Barnes*, No. 1:19-CV-1097-LMM, 2019 WL 5701071, at *3 (N.D. Ga. Aug. 8, 2019). The decision involves several factors—"judicial economy, convenience, fairness, and comity"—but in the usual case, all factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. (quotation omitted).

Nothing takes this case out of those "usual" circumstances. Instead, those factors all point towards declining jurisdiction.  As stated in *Chauncey*:

> The Court declines to exercise supplemental jurisdiction in this case. While judicial economy may tilt in favor of resolving these claims now, the Court finds it is substantially outweighed by the other supplemental jurisdiction factors, particularly those of comity. As the Eleventh Circuit has held, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). This is particularly so in this case where not only have Plaintiff's federal law claims been dismissed before trial, but also where Plaintiff's state law claims depend primarily on determinations of state law.

*Id*.  For reasons of convenience, fairness, and comity, any alleged violations of the Georgia Constitution or Georgia law should be resolved in Georgia courts.

## CONCLUSION

For these reasons, the Court should dismiss BCC's Amended Complaint in its entirety.

Respectfully submitted this 2nd day of May, 2022.

<div style="margin-left: 50%;">

*/s/ Robert L. Ashe III*

Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
E. Allen Page
Georgia Bar No. 640163
page@bmelaw.com
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

*Attorneys for Defendants*

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules for the Northern District of

Georgia, I hereby certify that the foregoing pleading has been prepared in Times

New Roman, 14-point font, as permitted by Local Rule 5.1C.

<div align="right">

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 2, 2022, I served a true and correct copy of the within and foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** by filing it with the Court's electronic filing system, which will serve a copy on all counsel of record.

<div align="right">

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202

</div>