EXHIBIT

A

# CITY OF ATLANTA



# OFFICE OF MUNICIPAL CLERK

**STATE OF GEORGIA**

**COUNTY OF FULTON**

}

**CITY OF ATLANTA**

I, **Vanessa Waldon**, do hereby certify that I am the duly appointed **Deputy Municipal Clerk** of the City of Atlanta, Georgia, and as such am in charge of keeping the Minutes of the City Council of the said City of Atlanta.  I further certify that the attached is a true and correct copy of Atlanta, Georgia Code **Part III. Land Development Code: Part 16-Zoning. Chapter 28A. Sign Ordinance** as taken from the 1995 Code of Ordinances of the City of Atlanta, Georgia, **ADOPTED by Council December 5, 1995 and APPROVED by the Mayor December 11, 1995, as amended, from time to time.**

all as the same appears from the original, which is of record and on file in my said office. GIVEN under my hand and seal of office this **28th** day of **March, 2022**.

_A. Vanessa Wald_

**Deputy Municipal Clerk**

A. Vanessa Waldon
Deputy Municipal Clerk

Certification completed by tcp

PART III - CODE OF ORDINANCES—LAND DEVELOPMENT CODE
Part 16 - ZONING
CHAPTER 28A. SIGN ORDINANCE

---

*CHAPTER 28A. SIGN ORDINANCE[1]*

**Sec. 16-28A.001. Title.**

This chapter shall be known and may be referred to as the "Sign Ordinance of the City of Atlanta."

(Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.002. Authority.**

This chapter is enacted pursuant to the City of Atlanta's exclusive zoning and planning authority granted by the Constitution of the State of Georgia, including but not limited to article 9, section 2, paragraph 4, and article 9, section 2, paragraph 3, as well as authority granted by the General Assembly of the State of Georgia, including but not limited to O.C.G.A. section 36-70-3, the City of Atlanta Charter, sections 1-102(b) and 1-102(c)(16), (20), (21), (29), (41), and (42), as well as the general police powers of the City of Atlanta and other authority provided by federal, state and local laws applicable hereto.

---

[1]Editor's note(s)—Ord. No. 2015-54(15-O-1394), § 1(Att. A), approved Nov. 11, 2015 , amended Ch. 28A in its entirety to read as herein set out. Former Ch. 28A, §§ 16-28A.001—16-28A.017, pertained to similar subject matter, and derived from Code 1977, §§ 16-28A.001—16-28A.017; Ord. No. 1996-14, § 2, 3-11-96; Ord. No. 1997-26, §§ 1, 2, 5-27-97; Ord. No. 1999-73, §§ 5—9, 10-12-99; Ord. No. 2000-20, § 3, 4-11-00; Ord. No. 2000-35, §§ 1, 2, 6-13-00; Ord. No. 2000-52, § 2, 9-26-00; Ord. No. 2001-84, § 3, 11-13-01; Ord. No. 2001-85, § 3, 11-14-01; Ord. No. 2001-91, § 4, 7-11-01; Ord. No. 2002-39, § 2, 5-28-02; Ord. No. 2002-40, § 2, 5-28-02; Ord. No. 2002-41, § 2, 5-28-02; Ord. No. 2003-11, § 3, 2-3-03; Ord. No. 2003-87, §§ 1, 2, 8-21-03; Ord. No. 2003-97, §§ 1, 3—9, 10-14-03; Ord. No. 2003-102, § 3(Att. C), 11-10-03; Ord. No. 2004-07, § 3, 2-10-04; Ord. No. 2004-20, § 3, 5-11-04; Ord. No. 2004-58, § 3, 9-15-04; Ord. No. 2005-51, § 3, 8-22-05; Ord. No. 2005-64, § 1, 10-10-05; Ord. No. 2006-09, §§ 4(Att. D), 5, 3-14-06; Ord. No. 2006-11, § 1, 3-14-06; Ord. No. 2006-42, § 3, 6-9-06; Ord. No. 2006-79, § 1, 11-14-06; Ord. No. 2006-80, § 1, 11-14-06; Ord. No. 2006-96, § 3, 12-6-06; Ord. No. 2007-40(07-O-0137), § 1, 7-5-07; Ord. No. 2007-52(07-O-0602), §§ 1, 25, 6, 9-17-07; Ord. No. 2007-71(07-O-2221), § 5, 11-27-07; Ord. No. 2008-59(08-O-0529), §§ 1, 2, 7-14-08; Ord. No. 2009-40(09-O-0499), § 1, 7-13-09; Ord. No. 2009-49(08-O-1020), § 3, 8-26-09; Ord. No. 2009-76(09-O-1402), §§ 4, 7, 12-15-09; Ord. No. 2010-56(10-O-1340), § 1, 10-13-10; Ord. No. 2010-72(10-O-1738), § 1, 12-14-10; Ord. No. 2011-17(10-O-2096), § 1, 5-25-11; Ord. No. 2012-23(12-O-0228), §§ 7, 8, 5-30-12; Ord. No. 2012-34(12-O-0780), §§ 1, 2, 7-11-12; Ord. No. 2013-04(12-O-1743), § 1, 1-31-13; Ord. No. 2013-50(13-O-1046), § 2, 10-16-13 ; Ord. No. 2013-51(13-O-1098), § 1, 10-16-13 ; Ord. No. 2013-52(13-O-1097), §§ 1, 2, 3A—3O, 10-16-13 ; Ord. No. 2014-19(14-O-1134), § 1(Attach. A), 5-28-14 ; Ord. No. 2014-49(14-O-1342), §§ 1—3, 11-12-14 ; Ord. No. 2014-51(14-O-1367), § 1(Attach. A), 11-12-14 ; Ord. No. 2014-21(14-O-1118), § 5(Attach. C), 6-22-14 ; Ord. No. 2015-10(14-O-1560), § 1, 3-11-15 ; Ord. No. 2015-11(14-O-1561), § 1, 3-11-15 ; Ord. No. 2015-26(14-O-1563), § 1(Attach. A), 6-10-15 ; Ord. No. 2015-38(14-O-1368), § 1, 7-15-15 .

---

Atlanta, Georgia, Code of Ordinances
(Supp. No. 90, Update 2)

Created: 2022-03-02 15:57:33 [EST]

Page 1 of 97

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.003. Findings, purpose and intent.**

The City of Atlanta finds that the number, size, design characteristics, and locations of signs in the city directly affect the public health, safety, and welfare. The city finds that signs have become excessive, and that many signs are distracting and dangerous to motorists and pedestrians, are confusing to the public and do not relate to the premises on which they are located, and substantially detract from the beauty and appearance of the city. The city finds that there is a substantial need directly related to the public health, safety and welfare to comprehensively address these concerns through the adoption of the following regulations. The purpose and intent of the governing authority of the City of Atlanta in enacting this chapter are as follows:

(1) To protect the health, safety and general welfare of the citizens of the City of Atlanta, and to implement the policies and objectives of the comprehensive development plan of the City of Atlanta through the enactment of a comprehensive set of regulations governing signs in the City of Atlanta.

(2) To regulate the erection and placement of signs within the City of Atlanta in order to provide safe operating conditions for pedestrian and vehicular traffic without unnecessary and unsafe distractions to drivers or pedestrians.

(3) To preserve the value of property on which signs are located and from which signs may be viewed.

(4) To maintain an aesthetically attractive city in which signs are compatible with the use patterns of established zoning districts.

(5) To maintain for the city's residents, workers and visitors a safe and aesthetically attractive environment and to advance the aesthetic interests of the city.

(6) To maintain and maximize tree coverage within the city.

(7) To establish comprehensive sign regulations which effectively balance legitimate business and development needs with a safe and aesthetically attractive environment for residents, workers, and visitors to the city.

(8) To provide fair and reasonable opportunities for the identification of businesses which are located within the City of Atlanta, and to provide for the identification of the availability of products, goods or services which are available upon site so as to promote the economic vitality of businesses which are located within the City of Atlanta.

(9) To ensure the protection of free speech rights under the State and United States Constitutions within the City of Atlanta and in no event place restrictions that apply to any given sign dependent entirely on the communicative content of the sign.

(10) To establish a permit system to allow specific types of signs in zoning districts consistent with the uses, intent and aesthetic characteristics of those districts.

(11) To allow certain signs that are small, safe, unobtrusive and incidental to the principal use of the respective lots on which they are located, subject to the substantive requirements of this chapter but without a requirement for permits.

(12) To provide for temporary signs in limited circumstances, without regard to the communicative content of the sign.

(13) To place reasonable controls on nonconforming signs that are by definition contrary to the public health, safety and welfare while protecting the constitutional rights of the owners of said nonconforming signs.

(14) To continue to encourage the display of public art as a vital part of the urban landscape, while imposing reasonable restrictions on such art in order to protect public safety and to avoid the abuse of a public art exemption as a means for evading the purpose and effect of these sign regulations.

(15) To prohibit all signs not expressly authorized by this chapter, to provide for the maintenance of signs, and to provide for the enforcement of the provisions of this chapter.

(16) To prohibit obscenity.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )


## Sec. 16-28A.004. Definitions.

The following definitions shall apply to this chapter unless specifically stated otherwise. Any word or phrase not defined below but otherwise defined in Part 16 of the Code of Ordinances of the City of Atlanta shall be given the meaning set forth in said Part 16. All other words and phrases shall be given their common ordinary meaning unless the context clearly requires otherwise.

*Adjacent to an Interstate Highway:* Located within 500 feet of the nearest outer edge of the pavement of any interstate highway, limited access freeway or expressway within the city, regardless of the existence of intervening streets or lots.

*Animated Sign:* A sign that uses movement or change of lighting to depict action or create a special effect or scene.

*Banner:* A sign of lightweight fabric or similar material that is mounted to a pole or a building by a permanent frame at one or more edges. A flag shall not be considered a banner.

*Beacon:* Any light with one or more beams that: (i) is directed into the atmosphere; or (ii) is directed at one or more points not on the same lot as the light source; or (iii) rotates or moves. A sign created solely by a light or lights projected onto an immovable and unchanging surface shall not be included in this definition.

*Billboard Sign:* A sign, other than a building signature sign, over 200 square feet but not greater than 672 square feet.

*Building Marker:* A sign, when cut into a masonry surface or made of bronze or other permanent material.

*Building Official:* The director, office of buildings or such person's designee.

*Building Sign:* A sign attached to any part of a building, as contrasted to a "freestanding sign."

*Building Signature Sign:* A wall sign, erected on a building four or more stories in height and actually occupied by a principal occupant. For purposes of this section, no part of a parking deck shall be used in calculating the height of a building.

*Business Establishment:* An entity that (i) possesses a valid City of Atlanta business license authorizing that entity to operate on said premises, unless said entity is exempt from business licensing requirements; and (ii) occupies said premises.

*Canopy Sign:* A sign that is a part of or attached to an awning, canopy, or other fabric, plastic, or structural protective cover over a door, entrance, window, or outdoor service area. A marquee is not a canopy.

*Changing Sign:* A sign that is capable of changing the visible display of words, numbers, symbols, graphics and/or position or format of word messages or other displays when such changes are actuated by any type of remote control or automatic mechanism rather than manually. Changing signs shall include mechanically operated devices which change the message through rotation of any type of panel and signs which are illuminated partially or entirely by a matrix of electric lamps, movable discs, movable panels, light apertures, the use of light emitting diodes, back lighting, or any other light source that is electronically changed. Any changing sign that includes both mechanical and electronic elements shall be regulated as an electronically changed sign. A sign that changes no more frequently than once every 24 hours shall not be considered a changing sign.

*City:* The City of Atlanta.

*Copy:* The portion of a sign containing a message consisting of words, numbers, symbols, logos, or any other visual image whether such message or part of such message is permanently affixed or capable of being changed in any manner. Where the term "message" is used in this part, such term refers to the entire "copy" and all other parts of the sign face.

*Director:* The director, bureau of buildings or such person's designee.

*District:* A zoning district.

*Flag:* A sign consisting of a piece of fabric or similar material attached at one end to a pole or building and hanging freely such that it may flutter or move in the wind.

*Flashing Sign:* A sign, the illumination of which is not kept constant in intensity at all times when in use, or which exhibits sudden or marked changes in lighting effects.

*Freedom Parkway Corridor:* The parkway, formerly known as the Presidential Parkway, located between the convergence of Interstate Highways 1-75 and 1-85 (known as the Downtown Connector) and either Ponce de Leon Avenue or Moreland Avenue, and including both the pavement of said parkway and all right-of-way associated with said parkway.

*Freestanding Sign:* A sign not attached to a building or any structure other than its own support, supported by one or more columns, uprights or braces in or upon the ground, and that does not extend over any portion of a building.

*Illegal Sign:* A sign erected or maintained without a lawful permit or other authorization specified in this chapter 28A.

*Institutional Sign:* A sign in use for nonresidential uses in a residential district, where such sign is located on the same premises as such use, provided, however, that home occupations and nonconforming uses shall be excluded and shall be considered residential uses.

*Large Screen Video Display (LSVD) Sign:* A sign that utilizes full motion video technology consisting of a matrix board behind which computerized lights are projected to form images, as for a television. LSVD signs shall be separately regulated and authorized in strict accordance with the SPI-1 and other regulations specified herein.

*Lot:* Any parcel of land, the boundaries of which have been established by a legal instrument of record complying with Part 15 and Part 16 of the Code of Ordinances as applicable, that is lawfully recognized and intended as a unit for the purpose of transfer of ownership, and that has independent direct access within its boundaries to a public street.

*Marquee:* Any permanent, roof-like structure attached to and projecting beyond a building or extending along and projecting beyond the wall of a building, generally designed and constructed to provide protection from the weather.

*Marquee Sign:* A sign painted on or attached within 12 inches of the face of a marquee.

*Neighborhood Entrance Sign:* A sign erected by a neighborhood officially recognized by the City of Atlanta that does not exceed 35 square feet in sign area and does not exceed ten feet in height and located at one or more entrances based on the recognized neighborhood map.

*Nonconforming Sign:* A sign that was lawfully erected prior to the adoption of this chapter and does not conform to the requirements of this chapter or other provisions of Part 16. A proposed sign that was lawfully permitted but not erected prior to the adoption of this chapter shall be considered "erected" within the meaning of this definition provided said permit has not expired prior to the adoption of this chapter and further provided that said permit shall not be extended or renewed.

*Obscenity:* Nudity or sexual conduct as defined by O.C.G.A. § 32-6-52 or as thereafter amended.

*Parapet Wall:* That integral part of a wall that extends above the top of a building.

*Parapet Wall Sign:* A sign attached parallel to but within 12 inches of a parapet wall, painted on a parapet wall, or erected and confined within a parapet wall, which is supported by said parapet wall and which displays only one sign face.

*Pennant:* Any lightweight plastic, fabric, or other material, whether or not containing a message of any kind, suspended from a rope, wire, or string, usually in a series, designed to move in the wind.

*Person:* Any association, company corporation, firm, individual, organization, or partnership, singular or plural, of any kind.

*Portable Sign:* A sign designed to be transported, including, but not limited to: signs designed to be transported by means of wheels; signs made as A-frames or T-frames; balloons used as signs; beacons; and signs attached to or painted on vehicles parked and visible from the public right-of-way, unless said vehicle is used in the normal day-to-day operations of the business. This definition shall not be construed to include signs contained on umbrellas, carry bags, or similar objects ordinarily carried or held by pedestrians.

*Primary Occupant:* An office building tenant that occupies a minimum of 50,000 square feet of floor space and possesses a leasehold term of not less than five years.

*Principal Occupant:* A building owner or tenant who occupies a minimum of 25 percent of the floor space, or 100,000 square feet of the floor space, of a specific building that is available for occupancy. Any lease for the required amount of floor space is to be for a period of not less than five years.

*Projecting Sign:* A sign attached to a building wall and extending laterally more than 12 inches from the face of such wall.

*Public Entertainment District (PED):* An area of land delineated and designated by city ordinance not to exceed 30 days created only in association with an entertainment event of national interest that meets the following criteria:

i.    Occurs within SPI-1;

ii.   The primary spectacle occurs in a facility that seats at least 15,000;

iii.  Has a duration of no greater than ten consecutive days; and

iv.   Is likely to have an economic impact on the city during the period of the event of not less than $25,000,000.00.

*Public Park:* A park owned, leased, or maintained by a local, state, or federal government or agency thereof.

*Regional Shopping Center:* One or more attached buildings containing primarily retail establishments which exceed 800,000 square feet of gross leasable floor area.

*Residential District:* All zoning districts contained in this part in which the principal use is restricted to single-family housing, two-family housing or multiple-family housing, including R-1 through R-G, MR and RD-H districts.

*Roof Sign:* A sign, any part of which is placed above, supported on, or extends above the top of a building, excluding parapet wall signs.

*Rotating Sign:* A sign designed to revolve, rotate, or otherwise turn, in whole or in part, by means of electrical power.

*Setback:* The distance from the property line to the nearest part of the applicable building, structure, or sign, measured perpendicularly to the property line.

*Shopping center:* Three or more primary retail establishments planned, developed and managed as a unit and providing parking facilities in common on the site.

*Sign:* Any device, fixture, placard, display, or structure visible to the general public that uses or is designed to use any color, form, graphic, illumination, symbol, writing, or visual presentation of any kind to advertise, announce, draw attention to, or identify a product, place, activity, person, institution, business, or other entity, or to communicate a message or information of any kind to the public. "Sign" shall include both "sign face" and "sign structure."

*Sign Face:* The portion of a sign on which the copy, message, or other visual image to be communicated is placed or is intended or designed to be placed.

*Sign Structure:* The portion of a sign consisting of the total structural bracing system supporting said sign including the foundation.

*Subdivision Entrance Sign:* A sign installed at the entrance of a subdivision approved pursuant to the Land Subdivision Ordinance of the City of Atlanta.

*Suspended Sign:* A sign that is suspended from the underside of a horizontal plane surface and is supported by such surface.

*Temporary Sign:* A sign mounted on a stake or metal frame that is used for a limited time period, not to exceed 180 consecutive days, and without regard to message. Examples of use of temporary signs include, but are not limited to, campaigns, real estate, and construction in progress.

*Total Area of the Wall:* The total exterior wall surface area measured in square feet above grade including all opaque portions, glass portions, and door areas.

*Wall Sign:* A sign attached parallel to but within 12 inches of a wall or roof, painted on a wall, or roof surface, or erected and confined within an outside wall or roof of any building or structure, which is supported by such wall, roof, or building and which displays only one sign face, provided that no part shall be placed above, supported on, or extend above the top of a building.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 ; Ord. No. 2016-16(15-O-1409) , § 1, 6-15-16; Ord. No. 2017-50(17-O-1204), § 1, 9-5-17 ; Ord. No. 2018-50(18-O-1427), § 1, 10-24-18 )

**Sec. 16-28A.005. Scope of regulations.**

It shall be unlawful for any person to erect, construct, enlarge, move, alter or convert any sign or cause the same to be done within the City of Atlanta except in accordance with the provisions of this chapter 28A.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.006. Computations.**

(a)   *Area of Sign Face and Distance Between Signs:* All regulations involving the area of signs specified in this chapter 28A shall be interpreted to mean measurements of the sign face unless the context, text or usage clearly requires otherwise. All regulations involving distances from or between signs specified in this chapter 28A shall be interpreted to refer to any part of a sign, including both the sign structure and the sign face.

(b)   *Computation of Sign Area of Individual Signs:* The area of a sign shall be the total area within the smallest square, circle, rectangle, triangle or combination thereof that will encompass the extreme limits of the writing, representation, emblem, or other display, together with the total area of any material or color forming an integral part of the background of the display or used to differentiate the sign from the backdrop or structure against which it is placed, but not including any supporting framework, bracing or decorative fence or wall when such fence or wall otherwise meets the regulations of Part 16 of the Code of Ordinances and is clearly incidental to the display itself.

(c)   *Computation of Area of Multifaced Signs:* Where the sign faces of a double-faced sign are parallel or the interior angle formed by the faces is 60 degrees or less, only one display face shall be measured in computing sign area. If the two faces of a double-face sign are of unequal area, the area of the sign shall be the area of the larger sign face. In all other cases, the areas of all sign faces of a multifaced sign shall be added together to compute the area of the sign.

(d)   *Computation of Height of Sign:* The height of a sign shall be computed as the distance from the base of the sign at normal grade to the top of the highest attached component of the sign. Normal grade shall be construed to be the lower of (1) existing grade prior to construction, or (2) the newly established grade after construction, exclusive of any filling, berming, mounding, or excavating solely for the purpose of locating the sign. In cases in which the normal grade cannot reasonably be determined, sign height shall be computed on the assumption that the elevation of the normal grade at the base of the sign is equal to the elevation of the nearest point of the crown of a public street or the grade of the land at the principal entrance to the principal structure on the lot, whichever is lower.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.007. General regulations.**

The following general regulations shall apply to all signs located in the city:

(a) *Portable Signs:* Portable signs, subject to 16-28A.013(e), shall be permitted in districts C-1 through C-5, I-1, I-2, SPI-1, and SPI-9 and only for a period of time not exceeding 30 consecutive days within a 365 day period. At no other time and in no other place shall such signs be permitted, except as may be specifically authorized within public rights-of-way under section 16-28A.012.

(b) *Billboard Signs:* Billboard signs are permitted only in the I-1 and I-2 industrial districts and are subject to all of the following requirements:

(1) No billboard sign shall be located within 300 feet of any residential district boundary line as measured in a straight line from said boundary line to the nearest edge of the sign.

(2) No billboard sign shall be located within 500 feet of another billboard sign as measured in a straight line from the nearest edge of the signs.

(3) No billboard sign adjacent to an interstate highway shall be located within 1,000 feet of another billboard sign adjacent to an interstate highway and on the same side of said interstate highway, as measured in a straight line from the nearest edges of the signs.

(4) No billboard sign shall be located within 300 feet of the boundaries of any property which (i) is now on or may be subsequently named to the National Register of Historic Places or (ii) is now or may be subsequently designated as a landmark district, historic district, conservation district, landmark building or site, or historic building or site under chapter 20 of Part 16, as measured in a straight line from said boundaries to the nearest edge of the sign.

(5) No billboard sign shall be located within 300 feet of any governmental building owned by a local, state, or national government, or a public authority thereof, as measured in a straight line from said building to the nearest edge of the sign.

(6) No billboard sign shall be located within 300 feet of any portion of a Metropolitan Atlanta Rapid Transit Authority station structure as measured in a straight line from said station to the nearest edge of the sign.

(7) No billboard sign shall be located within 1,000 feet of the Freedom Parkway as measured in a straight line from said parkway to the nearest edges of the sign.

(8) No billboard sign shall be located in a manner such that any part of said sign is visible from the Freedom Parkway.

(9) No billboard sign shall be located within 500 feet of the boundaries of a public park as measured in a straight line from said boundaries to the nearest edge of the sign.

(10)  No billboard sign shall be stacked on top of another billboard sign.

(11)  All distance requirements specified in this subsection 16-28A.007(b) shall apply regardless of the existence of intervening streets or lots.

(c)  *[Reserved.]*

(d)  *Institutional Signs:* On institutional property, one sign not exceeding 35 square feet in sign area is permitted in R-1 through RG and MR residential districts only where such use shall have been approved by special permit or where such use is a legal nonconforming use in such residential district.

(e)  *Liability Insurance for Projecting and Suspended Signs:* All permits for projecting or suspended signs that are suspended or project above a public street or public sidewalk or other public vehicular or pedestrian thoroughfare shall be conditioned upon the obtaining and continuous maintenance of liability insurance by the owner for such sign in an amount not less than $1,000,000.00 per occurrence per sign. Said insurance policy shall not contain a deductible in excess of $1,000.00. The owner shall provide to the director a certificate of insurance that names the City of Atlanta as an additional named insured and that requires notice to the City of Atlanta at least 30 days prior to cancellation or termination. The owner of such sign shall provide proof of these insurance requirements in a form acceptable to the director prior to issuance of a permit. The owner of such sign shall maintain said liability insurance for the life of the sign, and any sign not so insured by the owner shall automatically be deemed illegal as of the date of said insurance lapse and be immediately removed by the owner. In addition, the director, prior to issuance of a permit for such sign, shall require that the owner of such sign execute a statement appearing on the face of the permit or affixed thereto, agreeing to indemnify the city and holding the city harmless from any and all claims of any kind relating to said sign, which indemnification shall not be limited to the terms of liability insurance required herein.

(f)  *[Reserved.]*

(g)  *Messages:* Any sign allowed herein may contain any lawful message so long as said sign complies with the size, height, area and other requirements of this chapter and of Part 16 of the Code of Ordinances.

(h)  *Signs Not to Constitute Traffic Hazard:* No animated flashing or changing sign shall be located adjacent to an interstate highway or be visible from any portion of said highway unless the sign is otherwise permitted by state law and complies with the following:

(i)  Any sign which is directly or indirectly illuminated, including electronically changed signs, shall be reviewed by the director of the bureau of traffic and transportation prior to the issuance of a permit for compliance with this subsection (h).

(ii)  No sign shall be erected, and there shall be no lighting of signs or premises in such a manner and location so as to obstruct the view of, or be confused with any

authorized traffic signal, notice or control device, or with lights on any emergency vehicle, or so to create hazards or distractions to drivers because of direct or reflected natural or artificial light, flashing, intermittent or flickering lighting or real or apparent movement.

(iii)  No flashing or animated sign shall extend over a public right-of-way.

(iv)  If any sign is found to constitute a traffic hazard, the owner of the sign may be required to reduce the intensity of the condition or effect which caused the hazard to a level acceptable to the bureau of traffic and transportation. The director may through the issuance of a stop work order cause an immediate cessation of such conditions or effects where an imminent danger to the traveling public is found.

(i)  *Sign Lighting:* Any sign erected subsequent to the effective date of this amendment shall, if externally lighted, be lighted from the top and the lighting shall be directed downward onto the sign. Lighting associated with a sign shall be directed at the sign face. All sources of light associated with a sign shall be effectively shielded from adjacent residential districts and streets. Lighting associated with a sign shall not exceed one and one-tenth (1.1) foot candles in intensity when measured within any portion of a residential district.

(j)  *Temporary Signs:* Temporary signs are permitted in all zoning districts, subject to the applicable sign regulations governing temporary signs in such districts. In the event the sign district regulations do not set forth limitations on temporary signs, the following shall apply:

(1)  In R-1, R-2, R-2A, R-2B, R-3, R-3A, R-4, R-4A, R-4B, R-5, PD-H, SPI-5, SPI-6, SPI-8, R-G, and MR districts, two unlighted temporary signs per lot shall be permitted, each not to exceed six square feet in sign area.

(2)  In R-LC and O-I districts, two unlighted temporary signs per lot shall be permitted, each not to exceed 25 square feet in sign area.

(3)  In remaining districts, two unlighted temporary signs per lot shall be permitted, each not to exceed 50 square feet in sign area. In R-LC through I-2 districts, two unlighted signs of the sign area specified in the applicable district are allowed for each 400 feet of street frontage or portion thereof, for each separate street on which the property faces.

(4)  Where buildings are set back along the front or side street to a depth greater than ten feet, such sign shall not be placed closer than ten feet to the property line; where buildings have setbacks less than ten feet such sign may be placed on the building wall or within the zone between the building wall and the street. No such sign shall be erected within ten feet of an interior side lot line.

(k)  *[Reserved.]*

(l)  *[Reserved.]*

(m)  *Maximum Height of Signs:* No portion of any sign shall extend above the top of the building upon which it is located. When attached to buildings over 30 feet in height, no portion of a sign shall be located more than 30 feet in height above ground level, provided that when the ground level is lower than the level of the adjoining street pavement, said sign may be raised so as to be not more than 20 feet above the level of the pavement.

(n)  *Protection of Trees:* No removal, destruction, topping, pruning or cutting of any trunk, branch, roots or other vital section of any tree shall be allowed, whether or not such tree may interfere with the visibility of or otherwise affect a sign, without a permit obtained from the city arborist. In deciding whether or not to issue such permit, the city arborist shall consider the following factors:

(1)  Conformance with the City of Atlanta tree ordinance.

(2)  Whether the tree(s) involved are historic or specimen trees.

(3)  The degree to which the proposed cutting or pruning is likely to damage the trees.

(4)  The impact of the proposed cutting or pruning on Atlanta's urban forest environment.

(o)  *Location of Freestanding Signs:* Freestanding signs shall be located ten or more feet from the nearest wall of a principal structure and shall not project over the roof of any structure. If a building existing on the date of adoption of this chapter is located in such a way that there is no place on its lot that is more than ten feet from a wall of the building, and if a freestanding sign would otherwise be permitted on such lot, then the director shall permit a freestanding sign to be located nearer than ten feet to the building provided that such sign is kept as far as practicable from the building, does not result in an unsafe condition, and otherwise complies with the requirements of this part.

(p)  *Building Signature Signs:* Building signature signs where permitted by district regulations are subject to the following conditions unless otherwise modified by a more specific district regulation:

(1)  Only one building signature sign shall be allowed on any side elevation of the building and further provided that no building shall contain more than one such sign per side elevation.

(2)  Building signature signs may supersede the more restrictive height limit set forth in section 16-28A.007(m) including the 200 square foot area limitation imposed by the applicable zoning district.

(3)  Building signature signs are allowed only on buildings four or more stories in height provided no part of such sign shall extend above the top of the building.

(4) The area of a building signature sign shall not exceed five percent of the area of the wall to which it is affixed, and shall not be included in computing the total area of signage imposed by each zoning district for other signs.

(5) Building signature signs shall be allowed only for an owner or principal occupant as defined in section 16-28A.004. Changes in ownership or occupancy that result in non-compliance with this chapter shall require the removal of the subject sign.

(6) [Reserved.]

(7) Building signature signs are subject to the prohibition against roof signs. Walls erected on the roof of a building regardless of whether such wall projects above its top are not parapet walls and no such wall may be used as a building signature sign or to support a building signature sign.

(8) An applicant seeking permission to erect a building signature sign shall provide notarized documentation that it has an ownership interest in the building or that it meets the conditions required to be considered a principal occupant and has permission from the owner to make the application. In determining the level of ownership necessary to qualify as an owner, the city presumes, based on the documentation required to be produced, that the applicant has made such arrangements with other claiming ownership interest as may be necessary to allow the applicant to claim that it may apply for the sign as an owner. As a part of the documentation, which may be, but is not required to be on a form supplied by the city, the applicant shall acknowledge and agree:

   (i) That neither the city nor its administrative officials are confirming whether the application is in conflict with the rights of others claiming ownership rights or others claiming to be principal occupants regardless of whether such claims are known or unknown;

   (ii) That the applicant has made the statements in the application subject to the state law penalties which apply to false, fictitious, or fraudulent statements or entries in a matter within the jurisdiction of a department or agency of the government of a city;

   (iii) That the city and its administrative officials are relying on the sworn statements in the application in making its determination that the application meets the criteria set forth in this chapter;

   (iv) That the city and its administrative officials are authorized to audit the leases for a principal occupant to verify that the level of occupancy and length of the lease term meets the requirements of this chapter and that the applicant agrees to cooperate when requested to produce such documents.

(9) The issuance of a sign permit pursuant to this chapter is limited to a determination that the application included the required documentation, that the building on

which the sign is to be erected met the requirements of this chapter and that the sign erected or to be erected met the requirements of this chapter. Those determinations are, in part, based on the notarized documentation provided by the applicant concerning the allocation of private rights subject to contracts and/or leases with other parties and therefore the city's issuance of such permit:

(i)    Shall not be considered to be the decision of the city or any administrative official that such permit has the effect to determine, supersede, amend or modify private rights of ownership in any sign or in any building where such sign may be legally erected in that the city and its administrative officials are relying on the sworn representations of the applicant in issuing the permit; and

(ii)   Shall not be considered to be the decision of the city or any administrative official that such permit has the effect to determine, supersede, amend or modify the private rights created in or by any lease or contract between any parties in that the city and its administrative officials are relying on the sworn representations of the applicant in issuing the permit; and

(iii)  Shall not give standing to another party to request that the board of zoning adjustment determine whether ownership rights in the building or a contractual right or leasehold right gives such party the right to control the erection of or the content of the sign for which the permit was issued. While no building signature sign may be erected without a permit, the allocation of the right between private parties as to which party has the right to apply for and erect a permitted building signature sign on a building where such sign could otherwise be erected shall at all times be determined by the contractual, leasehold or ownership rights of the qualifying principal occupants and the owners, such that in the case of this type of dispute, the parties shall be obligated to settle such dispute between them in a court of competent jurisdiction in that the board of zoning adjustment is not empowered to make such determinations.

(q)   *Signs Inside of a Building:* Notwithstanding the provisions of section 16-28A.008(2), certain signs inside of a building may require a permit to demonstrate that such signs conform with the district regulations where said signs function in a manner that is substantially equivalent to signs that would require a permit if placed on the outside of that building. Specific examples of signs that function in a manner that is substantially equivalent to signs placed on the outside of a building include the types of signs regulated by this subsection. However, a sign that is not specifically regulated by this subsection may still be considered to function in a manner that is substantially equivalent to a sign placed on the outside of a building. This section shall be considered authority to require that such sign apply for and receive a permit that complies with this chapter.

Created: 2022-03-02 15:57:33 [EST]

(1)   Illuminated and changing signs may not exceed 30 percent of the area of any window or door where such sign is installed and shall be less than 12 square feet in total size regardless of the size of the window; provided however that no one sign shall exceed six square feet and further provided that where district regulations impose stricter controls on signs inside of a building or window signs, that the district regulations shall control. Illuminated or changing signs exceeding these limits shall not be considered signs inside of a building and require a permit.

(2)   No sign installed in any enclosed space on a roof or rising above the level of a roof in that enclosed space shall be considered a sign inside of a building; provided however that where such signs are permitted by the district regulations they shall not be considered to be in conflict with this section.

(3)   Window coverings of any type being used for the purpose of shielding interior construction activity or a vacant tenant space on the ground level of commercial or multi-family buildings shall be considered signs inside of a building and no permit shall be required and shall be subject to the following limitations:

    (i)   In R-G districts, signs posted inside of a building shall not exceed six square feet in surface area.

    (ii)  In R-LC and O-I districts or where the district regulations do not otherwise specify, signs posted inside of a building shall not exceed 25 square feet in surface area.

    (iii) In C-1 through C-5 district signs posted inside of a building shall not exceed 50 square feet.

    (iv)  One sign of the size specified above is allowed for each 400 feet of street frontage or portion thereof, for each separate street on which the property faces, provided however that the posting of an exterior sign shall count against the square footage of signs allowed inside of a building.

(r)   *Temporary Signage During Construction:* Temporary signage during construction shall be permitted as follows:

(1)   In R-1 through R-5 and PD-H zoning districts. Unilluminated signs are permitted in single-family two-family and planned development-housing districts provided they are placed no earlier than the start of construction and removed within 30 days of issuance of a certificate of occupancy. Such signs shall be limited to one sign per dwelling not to exceed six square feet per contractor or subcontractor.

(2)   All other zoning districts: In all other zoning districts, unilluminated signs are permitted provided they are placed no earlier than the start of construction and removed whenever a certificate of occupancy issued. Such signs shall be limited to one sign per job site not to exceed 16 square feet per contractor and six square feet per subcontractor.

(3)   A temporary construction fence around an active construction site may be decorated with colors, graphics, symbols, writing, or other visual presentations. A temporary construction fence is permitted only if it is placed no earlier than the start of construction and removed whenever a certificate of occupancy is issued.

(s)   *General Clearance Requirements:* No sign otherwise permitted in a particular district shall be allowed to project any closer than 18 inches from the inner curbline. All signs shall be so located and shall provide such vertical clearance as to provide for safe, convenient and unobstructed passage for pedestrians and vehicles. Above sidewalks or any other public pedestrian ways, vertical clearance to the lower portion of any canopy or marquee sign, projecting sign or wall sign, or freestanding sign shall be at least ten feet. Above parking areas and driveways other than for large trucks, such vertical clearance shall be a minimum of 14 feet. Above service and other driveways for large trucks, such vertical clearance shall be a minimum of 14 feet. Signs shall not be erected or maintained which obstruct any fire escape, any means of egress or ventilation, or prevent free passage from one part of a roof to any other part thereof; nor shall any sign be attached in any manner to a fire escape.

(t)   *Flags:* In addition to the flags authorized under section 16-28A.008(4), one flag not exceeding 60 square feet in sign area may be flown on each lot within the following districts: R-LC; O-I; C-I through C-5; I-1; I-2; SPI-1; PD-MU; PD-OC; and PD-BP. Said flag shall not be counted in computing the number or total area of signs specified in the district regulations. Flags exceeding the size limits herein shall be permitted and counted as signs to the extent authorized under the applicable district regulations.

(u)   *Neon:* Neon lighting shall be allowed only in the following districts: C-1 through C-5; PD-MU; PD-OC; I-1; I-2; SPI-1; Subareas 1 (Mill) and 5 (Transitional Commercial/Industrial) of LD-20A (Cabbagetown); Subareas 4 (Auburn Commercial Corridor) and 5 (Edgewood Commercial Corridor) of LD-20C (Martin Luther King, Jr. Landmark District); LD-20H (Hotel Row Landmark District); Subareas 2 (Transitional Commercial) and 3 (Transitional Industrial) of HD-201 (Adair Park); LD-20N (Castleberry Hill Landmark District).

(v)   *Additional Standards for Signs in Landmark and Historic Areas:* In determining the appropriateness or location of new signs proposed to be placed within the boundaries of any landmark building and site, historic building and site or any property within a landmark district or historic district, the urban design commission shall apply the following criteria in addition to the applicable criteria for certificates of appropriateness specified in chapter 20 of this Part 16:

(1)   The size, scale and design of the sign shall be compatible with the size, scale and design of the property, building or site upon which it is to be located.

(2)   The sign's materials shall be compatible with the period and style of the property, building or site.

(3)   The sign's location shall not obscure any significant architectural features of the building or site.

(4)   The sign's installation shall not irreparably damage any cornice, ornament or similar architectural detail and shall be the least damaging method feasible for the property, building or site.

(5)   The content of the message to be conveyed shall not be considered.

(6)   Whenever in these regulations a certificate of appropriateness is required for a sign, the certificate shall be granted or denied within 30 days from the filing of the initial application. If the certificate is not granted or denied within that time period, the applicant may proceed as if the certificate had been granted. Provided, however, if the commission subsequently takes action on the certificate, the director is authorized to take the appropriate action necessary to cause the sign to come into compliance with that decision.

(7)   Any appeal from any decision made on the issuance or denial of a certificate shall be granted or denied within 60 days of the initial filing of the appeal. If the appeal is not granted or denied within this time period, the applicant may proceed as if the appeal was decided in his favor. Provided, however, if action is subsequently taken on the appeal, the director is authorized to take the appropriate action necessary to cause the sign to come into compliance with that decision.

(w)   *Approved Historic Marker:* An approved historic marker is a sign created through a program directly administered by a non-profit organization chartered for the purpose of research and education in Georgia history. All approved historic markers shall be freestanding, two-sided, cast aluminum markers of the same size, shape and height (including the support pole), as that marker previously used by the Parks, Recreation and Historic Sites Division of the Georgia Department of Natural Resources in the State of Georgia historical marker program. An approved historic marker shall have a total plate size of 38" × 42" and a black background with text in silver. The lettering of the approved historic marker text shall be no more and no less than one inch in height and the text shall be the same on each side. Any seal of the sponsoring historic society shall be painted in the same color as the text and shall not exceed an area of 96 square inches.

(x)   *Regulations for Changing Signs and Signs Employing Changing Sign Technology:*

(1)   Each message displayed on any changing sign display shall remain static for at least ten seconds following the completion of its transition from the previous message. As used in this subsection "static" shall mean a display that is fixed in one position with no portion of the display being in motion or changing in color or light intensity.

(2)   When a message is changed mechanically, the transition between a complete static display of the previous message and a complete static display of the next

message shall be accomplished in three seconds or less. The transition period shall be measured as that period between any movement of any part of the display of the previous message and the time that the display of the next message is fully static.

(3) When a message is changed electronically, the transition between a complete static display of the previous message and a complete static display of the next message shall be accomplished in two seconds or less. The transition period shall be measured as that period between the time that the previous message is static and fully illuminated and the next message is static and fully illuminated.

(4) No changing sign may include animated, flashing, full-motion video or other intermittent elements. The transition period between two fully illuminated static messages displays in an electronically changed sign shall not be considered an intermittent element so long as the purpose of the changing light intensity is to fade or dissolve into the next message.

(5) No changing sign may have any type of changing effect on the border of the sign that is not fully integrated with a static message display and which does not transition to the next static message display in the same manner as the rest of the display.

(6) No display or other effect from any electronically changed sign shall cause a glare or other condition that impairs the vision of the driver of any motor vehicle or which otherwise interferes with the safe operation of a motor vehicle. Such display or effect shall be considered an acute traffic hazard and shall be subject to the regulations contained in this chapter.

(7) An electronically changed sign which uses the scrolling of letters, numbers or symbols onto the sign face to form words or messages shall be allowed to appear on the sign face from only one direction for each static display. Messages transitions achieved by means of the scrolling of the letters, numbers or symbols shall be completed within two seconds and shall remain static for at least ten seconds following the completion of the transition from the previous message.

(8) All signs shall appropriately adjust display brightness as ambient light levels change so that the brightness of the display does not cause a glare or other condition that impairs the vision of the driver of any motor vehicle or which otherwise interferes with the safe operation of a motor vehicle. The failure of an electronically changed sign to appropriately adjust display brightness as ambient light levels change shall be considered an acute traffic hazard and shall be subject to the regulations contained in this chapter.

(9) No malfunction of a changing sign shall cause a glare or other condition that impairs the vision of the driver of any motor vehicle or which otherwise interferes with the safe operation of a motor vehicle. Any such condition resulting from a

malfunction shall be considered an acute traffic hazard and shall be subject to the regulations contained in this chapter.

(10) No billboard sign employing changing sign technology which is permitted by state law to be located on or adjacent to the interstate highway system or a billboard sign with a changing message sign face that is visible from an interstate highway shall be located within 5,000 feet of another billboard sign employing changing sign technology that is permitted adjacent to an interstate highway and on the same side of said interstate highway or any other billboard sign with a changing message sign face that is visible to traffic traveling in the same direction on said interstate highway. The distances shall be measured in a straight line from the nearest edges of the signs.

(11) No billboard sign employing changing sign technology which is adjacent to an arterial or connector street or with a message face that is visible from an arterial or connector street shall be located within 2,500 feet of another billboard sign employing changing sign technology that is on the same side of arterial or connector street or with a sign face that is visible to traffic traveling in the same direction on said arterial or connector street, as measured in a straight line from the nearest edges of the signs.

(12) A sign which is not permitted to be a changing sign and employing any changing sign technology shall contain only static messages and shall not be allowed to change more than once every 24 hours.

(13) [Reserved.]

(14) Any building which is allowed to have a building signature sign employing any changing sign technology may not change the sign more frequently than once every 24 hours.

(15) Shopping center signs may employ changing sign technology in those districts where changing signs are allowed. The portion of the sign face which is capable of employing changing sign technology shall be limited to 50 percent or less of the total area of the sign face.

(16) Permit applications for electronically changed signs must also include a certification from the owner or operator of the sign stating that the sign shall at all times be operated in accordance with this part and that the owner or operator shall provide proof of such conformance upon request of the director.

(17) Any billboard sign which applies to employ changing sign technology shall be required to include as a part of its application, a statement which shall indicate whether the applicant is willing to allow law enforcement agencies to utilize its display capabilities to disseminate emergency messages.

(18) Any changing sign currently in existence shall comply with the regulations of this part. If a changing sign currently in existence cannot meet these requirements due to the limitations of the technology being employed, the owner of the sign shall be allowed to continue the existing use upon a showing, satisfactory to the director, that the requirements of this part cannot be met.

(19) Large screen video display signs which are permitted in SPI-1 shall be regulated by the specific provisions applicable to that type of sign.

(20) Due to the limitation on distances between certain electronic changing signs, an approved application to employ changing sign technology must be acted upon within the time frames stated on the sign permit. After expiration of the permit, a new application for the location shall be required and the expired permit shall be not be considered to bar location of other changing signs due to distance requirements under this part. The director may issue one extension of 60 days for good cause as shown in writing by the permit holder.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

## Sec. 16-28A.008. Signs not requiring a permit.

The following signs shall not be required to obtain a sign permit. Notwithstanding, they are subject to all applicable requirements in this part and in City Code:

(1) Temporary signs.

(2) Any sign inside a building provided that such signs otherwise comply with the requirements of this chapter.

(3) Lights and decorations.

(4) Flags.

(5) Signs otherwise allowed within public rights-of-way pursuant to section 16-28A.012, except for subsection 16-28A.012(a)(5) therein, which signs shall require a permit.

(6) Parking lot identification signs required by sections 16-14.011(5), 16-15.010(5), 16-18A.012(5), 16-18B.012(5), 16-18C.012(5), and 16-18D.012(5) of this Part 16.

(7) Approved historic markers. (See section 16-28A.007(w)). Signs which do not meet the requirements for approved historic markers provided in section 16-28A.007(w) as to size, shape, height, plate size, and allowable text or decoration are not "approved historic markers," even if erected for the purpose of commemorating historical events or persons, and shall be required to obtain a permit in accordance with the City of Atlanta Sign Ordinance.

(8) Signs not visible from the public right-of-way at private universities with a physical campus of over 50 acres within city limits.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 ; Ord. No. 2017-81(17-O-1426), § 2, 12-13-17 )

**Sec. 16-28A.009. Prohibited signs.**

All signs not expressly permitted under this chapter 28A are prohibited. Such signs include but are not limited to:

(1)   Banners, except as authorized in section 16-28A.012(a)(5) and 16-28A.007;

(2)   Beacons, except as authorized in section 16-28A.007(a);

(3)   Pennants;

(4)   Strings of lights not permanently mounted to a rigid background, except as authorized in section 16-28A.008(3);

(5)   Inflatable signs;

(6)   Balloons, except as authorized in section 16-28A.007(a);

(7)   Roof signs; and

(8)   Rotating signs.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.010. District regulations.**

The following regulations shall apply to all signs within the districts indicated. No signs other than those specifically authorized in this section for each district shall be permitted unless otherwise expressly authorized in section 16-28A.007 or elsewhere in this chapter 28A. All signs authorized in a particular district by this section shall, in addition to these district regulations, meet all other regulations in this chapter 28A, including but not limited to section 28A.007, and also shall comply with all other applicable provisions of Part 16 and of the Code of Ordinances.

(1)   *R-1 (Single-Family Residential) District, R-2 (Single-Family Residential) District, R-2A (Single-Family Residential) District, R-2B (Single-Family Residential) District, R-3 (Single-Family Residential) District, R-3A (Single-Family Residential) District, R-4 (Single-Family Residential) District, R-4A (Single-Family Residential) District, R-4B (Single-Family Residential) District, and R-5 (Two-Family Residential) District.* The following signs shall be permitted in the R-1, R-2, R-2A, R-2B, R-3, R-3A, R-4, R-4A, R-4B, and R-5 residential districts:

a.   *Number and Area of Signs:* For a residential use, two permanent signs per lot shall be permitted. Each sign shall not exceed two square feet in sign area. For institutional uses, one sign per street frontage shall be permitted not exceeding 35 square feet in sign area. Subdivisions shall be permitted one sign per entrance and such sign shall not exceed 35 square feet in sign area.

b. *Setback:* Signs shall be mounted flat to the wall of the building, suspended, or not nearer than 30 feet to the street property line, except that two temporary signs are permitted in any required yard.

c. *Height of Signs:*

1. No freestanding sign for residential use shall be higher than three feet above ground level.

2. No freestanding institutional or subdivision sign shall be higher than ten feet above ground level.

d. *Lighting of Signs:* No sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

e. *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

f. *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

g. *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

(2) *R-G (Residential General) District.* The following signs shall be permitted in the R-G (General residential) district:

a. *Number and Area of Signs:* For all uses permitted in this district, one sign per street frontage shall be permitted. Such sign shall not exceed 35 square feet in sign area.

b. *Setback:* Signs shall be mounted flat to the wall of the building or not nearer than 30 feet to the street property line except for signs mounted in a permitted entrance wall.

c. *Height of Signs:* No freestanding sign shall be higher than ten feet above ground level.

d. *Lighting of Signs:* No sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

e. *Animated, Flashing, Changing Signs Prohibited:* No animated flashing, or changing signs shall be permitted.

f. *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

g. *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

(3) *R-LC (Residential-Limited Commercial) District.* The following signs shall be permitted in the R-LC (Residential-limited commercial) district:

a. *Number and Area of Signs:* A maximum of one sign is permitted for each separate street frontage of each business establishment. Such sign shall not exceed 16 square feet in sign area.

b. *Setback:* Signs shall be mounted flat to the wall of the building or not nearer than 20 feet to the street property line.

c. *Height of Signs:* No freestanding sign shall be higher than 24 feet above ground level.

d. *Lighting of Signs:* No sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

e. *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

f. *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

g. *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

(4) *O-I (Office-Institutional) District.* The following signs shall be permitted in the O-I (Office institutional) district:

a. *Number and Area of Signs:* A maximum of one sign is permitted for each separate street frontage of each business establishment or building. Such sign shall not exceed 30 square feet in sign area. There is no limit on the number of freestanding signs identifying buildings or providing wayfinding at private universities with a physical campus of over 50 acres within city limits. Such signs shall not exceed 30 square feet in sign area and 8 feet in height, except hospital signs which shall not exceed 95 square feet in sign area and 15 feet in height.

b. *Setback*: Signs shall be mounted flat to the wall of the building or not nearer than 20 feet to the street property line. Freestanding signs identifying buildings or providing wayfinding at private universities with a physical campus of over 50 acres within city limits shall not be nearer than 10 feet to the street property line.

c. *Height of Signs:* No freestanding sign shall be higher than 24 feet above ground level.

d. *Lighting of Signs:* Except for hospital signs at private universities with a physical campus of over 50 acres within city limits, no sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

e. *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

f. *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

g. *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

h. *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(5) *C-1 (Community Business) District.* The following signs shall be permitted in the C-1 (Community business) district:

a. *Number and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three building signs shall be permitted for each business establishment. The combined area of these permitted building signs shall not exceed ten percent of the total area of the wall of the front of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b. *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the total area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c. *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d. *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding business identification sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for

each additional street frontage provided that such additional street does not face a residential district.

e.   *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f.   *Animated, Flashing or Changing Signs Prohibited:* No animated, flashing or changing signs shall be permitted.

g.   *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

h.   *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

i.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(6)  *C-2 (Commercial Service) District.* The following signs shall be permitted in the C-2 (Commercial service) district:

a.   *Number and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three building signs shall be permitted for each business establishment. The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b.   *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c.   *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when

located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d.  *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding business identification sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e.  *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f.  *Animated, Flashing or Changing Signs Prohibited:* No animated, flashing or changing signs shall be permitted.

g.  *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

h.  *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

i.  *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(7)  *C-3 (Commercial-Residential) District.* The following signs shall be permitted in the C-3 (Commercial-residential) district:

a.  *Number and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three building signs shall be permitted for each business establishment. The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b.  *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the area of the wall of said building occupied by such

business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c.   *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b, above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign are per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d.   *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e.   *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f.   *Animated, Flashing, and Changing Signs:* Animated, flashing, and changing signs shall be permitted provided that no such sign shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g.   *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

h.   *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

i.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(8)   *C-4 (Commercial Residential) District.* The following signs shall be permitted in the C-4 (commercial residential) district:

a. *Type, Number, and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted, provided that any such sign which projects over the public sidewalk or public street right-of-way shall be subject to all other provisions of this chapter and other applicable requirements of the Code of Ordinances of the City of Atlanta. A maximum of three building signs shall be permitted for each business establishment on the ground floor of a building. Only one of said three signs may be a suspended or projecting sign. The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of the ground floor of said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b. *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c. *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d. *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage of two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e. *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35

feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f.   *Animated, Flashing, and Changing Signs:* Animated, flashing, and changing signs shall be permitted provided that no such sign shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g.   *Signs Extending Over Right-of-Way:* Signs extending or projecting over any property line onto sidewalk or street right-of-way shall be subject to all other provisions of this chapter, of Part 16, and of any other applicable requirement of the Code of Ordinances of the City of Atlanta governing such signs.

h.   *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

i.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

j.   *Primary Occupant Sign:* Notwithstanding any provisions to the contrary within this chapter, primary occupant signs are permitted as a type of wall sign on a building 55 feet or greater in height, subject to the following limitations:

i.   Maximum number of signs: A maximum of three primary occupant signs shall be permitted per building. Only one primary occupant sign shall be allowed on any elevation of the building.

ii.   Maximum sign height: 55 feet above street level.

iii.   Maximum sign area: 200 square feet, whether individually or in the aggregate.

iv.   Further limitations: A primary occupant that also meets the definition of a principal occupant may erect a primary occupant sign or a building signature sign but not both on the same building.

(9)   *C-5 (Central Support) District.* The following signs shall be permitted in the C-5 (Central support) district:

a.   *Type, Number, and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted, provided that any such sign which projects over the public sidewalk or public street right-of-way shall be subject to all other provisions of this chapter and other applicable requirements of the Code of Ordinances of the City of Atlanta. A maximum of three building signs shall be permitted for each business establishment on the ground floor of a building. Only one of said three signs may be a suspended or projecting sign. The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of the ground floor of said business establishment, and in no case shall any individual sign exceed

200 square feet. Notwithstanding these provisions every business establishment shall be entitled to at least 60 square feet total combined sign area.

b. *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c. *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d. *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e. *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f. *Animated, Flashing, and Changing Signs:* Animated, flashing, and changing signs shall be permitted provided that no such sign shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g. *Signs Extending Over Right-of-Way:* Signs extending or projecting over any property line onto sidewalk or street right-of-way shall be subject to all other provisions of this chapter, of Part 16, and of any other applicable requirement of the Code of Ordinances of the City of Atlanta governing such signs.

h.   *Billboard Signs Prohibited:* Billboard signs shall be prohibited.

i.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(10)  *[I-1 (Light Industrial) District.]* The following signs shall be permitted in the I-1 (Light Industrial) District:

a.   *Number and Area of Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three such signs shall be permitted for each business establishment. The combined area of these permitted signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Where existing nonconforming buildings are located immediately adjacent to the street, such buildings shall be permitted to have one sign, not exceeding 60 square feet in sign area, projecting into the public right-of-way. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b.   *Wall Signs on Corner Lots:* For corner lots, one additional wall sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said wall sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c.   *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d.   *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding business identification sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for

each additional street frontage provided that such additional street does not face a residential district.

e. *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f. *Animated and Flashing Signs:* Animated or flashing signs shall be permitted provided that no such signs shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g. *Changing Signs:* Changing signs shall be permitted.

h. *Billboard Signs:* Billboard signs shall be permitted subject to all other provisions in this Chapter 28A, specifically including section 16-28A.007(b), any other applicable portion of Part 16, and any other provision of the Code of Ordinances governing billboard signs. Billboard signs shall not exceed 50 feet in height above ground level; provided, however, when the ground level is lower than the level of the adjoining pavement, then a freestanding billboard sign may be raised so as to be not more than 25 feet above the level of the pavement. Billboard signs shall be located within the buildable area of the lot and shall not exceed 672 square feet in total sign area. No billboard sign shall be located within 300 feet of a freestanding sign 72 square feet or greater but less than 200 square feet in total sign area.

(11) *[I-2 (Heavy Industrial) District.]* The following signs shall be permitted in the I-2 (Heavy Industrial) District:

a. *Number and Area of Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three such signs shall be permitted for each business establishment. The combined area of these permitted signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Where existing nonconforming buildings are located immediately adjacent to the street, such buildings shall be permitted to have one sign, not exceeding 60 square feet in sign area, projecting into the public right-of-way. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b. *Wall Signs on Corner Lots:* For corner lots, one additional wall sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said wall sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c.   *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet.

d.   *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding business identification sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e.   *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

f.   *Animated and Flashing Signs:* Animated or flashing signs shall be permitted provided that no such signs shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g.   *Changing Signs:* Changing signs shall be permitted.

h.   *Billboard Signs:* Billboard signs shall be permitted subject to all other provisions in this Chapter 28A, specifically including section 16-28A.007(b), any other applicable portion of Part 16, and any other provision of the Code of Ordinances governing billboard signs. Billboard signs shall not exceed 50 feet in height above ground level; provided, however, when the ground level is lower than the level of the adjoining pavement, then a freestanding billboard sign may be raised so as to be not more than 25 feet above the level of the pavement. Billboard signs shall be located within the buildable area of the lot and shall not exceed 672 square feet in total sign area. No billboard sign shall be located within 300 feet of a freestanding sign 72 square feet or greater but less than 200 square feet in total sign area.

(12) *SPI-1 Downtown District.*

a.  *General Regulations:* Signs within SPI-1 Downtown District are subject to the regulations set forth in this section (12). For purposes of this section (12), "street" means public streets and private streets, as well as associated public right-of-way including public right-of-way accessible only to pedestrians.

b.  *Building Signs:*

   1. *Type:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. Only one of the signs may be either suspended or projecting along each street frontage per business establishment, provided that corner business establishments may have two projecting signs limited to one projecting sign per street frontage. Wrap signs and projection signs shall be permitted within the time, manner and place limitations contained in (12)i. herein.

   2. *Number:*

      (a) *Sidewalk-Level Business Establishments:* A maximum of three signs shall be allowed for each business establishment on the sidewalk-level of a building. For the purposes of this section (12), "sidewalk level" shall be as defined by Section 16-18A.005(3) except where additional signage is authorized on a monument sign or multi-tenant sign.

      (b) *Second-Level Business Establishments:* A maximum of three signs shall be allowed for each second-level business establishment engaged in a permitted use listed under the commercial/retail and institutional headings of the Use Table in Section 16-18A.006 and having a façade that faces a street except where additional signage is authorized on a monument sign or multi-tenant sign. For purposes of this section (12), "second-level" means the building floor level immediately above sidewalk-level.

      (c) *Corner Business Establishments:* One additional sign shall be allowed for each business establishment occupying corner space that faces two streets and is located on the sidewalk-level or second-level, provided such sign is oriented toward the additional street.

   3. *Area:* Where a business establishment is permitted to have signs, the following regulations shall apply:

      (a) Sidewalk-Level and Second-Level Business Establishments:> The combined area of the signs except for that signage on monument signs or multi-tenant signs if allowed shall not exceed ten percent

of the total area of the walls of the business establishment that face the street but at least 60 square feet of combined sign area is allowed for each business establishment.

(b) Corner Business Establishments: The area of the additional sign authorized by subsection (12)b.2.(c) shall not exceed ten percent of the total area of the walls of such business establishment that face the additional street, or 60 square feet, whichever is less and this calculation shall exclude that signage on monument signs or multi-tenant signs if allowed.

(c) No individual sign shall exceed 200 square feet except for wrap signs as provided for in (12)l.

4. *Height:* The height limitation set forth in Section 16-28A.007(m) may be exceeded as follows:

(a) Subject to subsection (12)b.4.(a) above; no portion of a sign for a sidewalk-level business establishment shall be located more than 40 feet in height above the elevation of the nearest sidewalk clear zone.

(b) Subject to subsection (12)b.4.(a) above, no portion of a for a second-level business establishment shall be located more than 50 feet in height above the elevation of the nearest sidewalk clear zone provided that:

(1) The sign shall be located directly above the independent entrance to the second-level use; or

(2) The sign shall be located directly above or adjacent to windows for such second-level use.

(c) Notwithstanding the permission for increased height in SPI-1, no portion of any sign shall extend above the top of the building upon which it is located.

(d) Height of a wrap sign shall not extend 200 feet in height above ground level as prescribed in Section 16-28A.010(12)l.

c. *Freestanding Signs Prohibited:* Freestanding signs shall not be permitted other than monument signs.

d. *Monument Signs:* In addition to the signs otherwise authorized in this section (12), monument signs shall be authorized as a type of sign provided they meet each of the following standards:

1. For the purposes of this section (12), "monument sign" means a permanent sign not attached to a building and constructed directly and continuously

upon the ground or a grade-level support structure with no separation between the sign and the ground or grade-level support structure. Monument signs shall not be supported by visible columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps or spacing.

2. One monument sign shall be authorized for each building meeting the following two requirements:

   (a) *Building square footage:* The building contains more than 25,000 square feet of gross floor area excluding parking areas; and

   (b) *Large building setbacks:* 50 percent or more of the sidewalk-level building façade that faces the street is located 15 feet or more from the adjacent required sidewalk clear zone, measured from the nearest point of said clear zone to the nearest point of the building, due to lawful nonconforming status of the building.

3. When buildings meeting the requirements of subsection (12)d.2. face two or more streets, two monument signs shall be authorized provided that each is oriented toward a different street.

4. Monument signs shall not exceed ten feet in height measured from the lowest point of the elevation of the nearest sidewalk clear zone or supplemental zone to the highest point of the monument sign. Monument signs shall not exceed four feet in length and two feet in width, measured from the outer edges of the monument sign structure.

5. Monument signs shall be located on private property except when expressly authorized to encroach into a public right-of-way by an encroachment agreement approved pursuant to Chapter 138 of the City Code, provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones or visibility triangles.

6. All monument signs shall require approval through a Special Administrative Permit before a building permit can be issued.

e. *Multi-Tenant Signs:* In addition to the signs otherwise authorized in this section (12), buildings with three or more tenants shall be permitted one single building sign. Said sign shall be erected as a wall sign and shall not exceed 100 square feet in sign area. Where a building with three or more tenants faces two or more streets, two such multi-tenant signs shall be authorized provided that each is oriented toward a different street.

f. *Animated, Flashing, and Changing Signs:* Except where prohibited in Subarea 6 Terminus and Subarea 7 Fairlie-Poplar, animated, flashing, and changing signs

shall be permitted provided that no such sign shall be erected within 100 feet of an adjoining residential district if visible therefrom.

g. *Signs Extending Over Right-of-Way:* Signs extending or projecting over any property line onto sidewalk or street right-of-way shall be subject to all other provisions of this chapter, of Part 16, and of any other applicable requirements of the Code of Ordinances of the City of Atlanta governing such signs.

h. *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

i. *Public Entertainment District signs:* After temporary designation by the City Council of a Public Entertainment District, wrap and projection signs, as a type of building sign, shall be permitted only in Subareas 1, 5 and 7 and provided they meet each of the following standards:

1. *Display:* A projection sign shall project video from one location onto a building façade at a different location through use of a color projector(s). All wrap signs shall be constructed and erected as wall signs on a building or structure, including a pedestrian bridge. Each sign face shall be made of perforated one-way window tint/film that is fastened directly onto the exterior of the building façade through an adhesive and without use of any suspended cables or other fastening equipment. Freestanding wrap signs are specifically prohibited;

2. *Number:* No more than five wrap signs shall be permitted. No more than three projection signs shall be permitted. Projection signs are only permitted to project onto wrap signs. A permit may be issued that authorizes both a wrap and a projection sign.

3. *Size:* No wrap sign shall be less than 7,000 nor exceed 45,000 square feet in sign face area. Square feet in sign face area for projection signs may not exceed the square feet in area for the wrap sign it is projected on to.

4. *Location:* Projection signs are only permitted on buildings greater than 100 feet tall and must face and be visible from Centennial Olympic Park. Any building to which a wrap sign is affixed shall be on a parcel that has street frontage along Centennial Olympic Drive, Marietta Street or Peachtree Street. Any pedestrian bridge to which a wrap sign is affixed shall cross over Andrew Young International Boulevard;

5. *Height:* No portion of a wrap or projection sign shall be placed above, supported on, or extend above the roof of a building; and

6. *Duration:* The display of wrap or projection signs may commence no earlier than seven business days before the beginning of the entertainment event and shall be removed no more than five business days after the completion of the entertainment event.

j. *Building Signature Signs:*

1. *Museum Signature Signs:*

   (a) Notwithstanding the restriction set forth in subsections 16-28A.007(p)(1) and 16-28A.007(p)(3) museum signature signs are allowed on museums with a gross floor area greater than 75,000 square feet and such museums may combine the five percent allocation allowed for such signs on wall of the museum building. No other museum signature signs shall be allowed on other walls of the museum building where the option to combine the five percent per wall allocation is utilized to increase the size of the museum signature sign on any other wall of the museum building.

   (b) For the purposes of this district, a museum signature sign means a building signature sign on a museum. For the purposes of this definition, a museum is a facility meeting the following criteria;

      (1) Is used for educational or preservation purposes;

      (2) Owns utilizes tangible inanimate objects of historical or cultural significance;

      (3) Is organized for the care of those objects and exhibits them to the public on a regular schedule;

      (4) Interprets the cultural heritage or history of the city, the state or the nation, natural history, or the history of science, technology or business;

      (5) Devotes less than 15 percent of the floor area of the primary building for retail, restaurant or other commercial purposes, excluding any parking facilities. For the purposes of this definition, the "floor area" of a museum shall be measured in the same manner as the floor area of business, commercial and industrial buildings.

   (c) Enclosed displays constructed as a part of the design of museums that may be visible from the public right-of-way are permitted as a part of the educational or preservation purposes of the museum in that such displays are intended to represent significant contributions to the cultural heritage or history of the city, the state or the nation, natural history, or the history of science, technology or business.

2. *Principal Occupant Occupancy Limits:* Notwithstanding the restriction on occupancy limits in the definition of Principal Occupant in section 16-28A.004, a building tenant who occupies a minimum of 20 percent or 100,000

square feet of the floor space of a specific building that is available for occupancy shall be authorized to erect a building signature sign, provided all other restrictions set forth in Chapter 28A related to building signature signs are followed.

k. *Subarea 6 Terminus and Subarea 7 Fairlie-Poplar:* The sign regulations for Subarea 6 Terminus and Subarea 7 Fairlie-Poplar shall be subject to the following additional limitations:

1. *Multi-Tenant Signs:* Multi-tenant signs authorized by subsection (12)e. shall be limited to 30 square feet in sign area.

2. *Changing Signs:* No changing signs shall be permitted, with the exception of theaters.

3. *Canopy Signs:* No internally illuminated canopy signs shall be permitted.

4. *LSVD Signs:* No LSVD signs shall be permitted.

l. *Wrap Signs:* In addition to the signs otherwise authorized in this section (12), wrap signs shall be authorized only in Subareas 1 and 5 and provided they meet each of the following standards:

1. Wrap signs shall be erected only within a public entertainment district delineated and designated by city ordinance; for purposes of this subsection (12)l., the definition of public entertainment district in Section 16-28A.004 shall not apply. Such public entertainment district shall be a temporary designation that shall not exceed 30 consecutive days, and must be created only in association with an entertainment event that meets the following criteria:

   i. Occurs within SPI-1;

   ii. Occurs in a facility that seats at least 15,000;

   iii. Has a duration of no greater than seven consecutive days; and

   iv. Is likely to have an economic impact on the city during the period of the event of not less than $25,000,000.00.

2. Only one wrap sign shall be authorized on each building façade. No wrap sign shall exceed 10,000 square feet in sign face area;

3. No building shall contain more than four wrap signs, nor contain more than 40,000 square feet in total sign face area;

4. All wrap signs shall be constructed and erected as wall signs on a building or structure, including a pedestrian bridge. Each sign face shall be made of perforated one-way window tint/film that is fastened directly onto the exterior of the building façade through an adhesive and without use of any

suspended cables or other fastening equipment. Freestanding wrap signs are specifically prohibited;

5. No portion of a wrap sign shall extend 200 feet in height above ground level; provided further that no part of a wrap sign shall be placed above, supported on, or extend above the roof of a building;

6. The display of wrap signs may commence no earlier than three days before the beginning of the entertainment event and ending no more than two days after the completion of the entertainment event; and

7. Any building to which a wrap sign is affixed shall be on a parcel that has street frontage along either Marietta Street or Peachtree Street. Any pedestrian bridge to which a wrap sign is affixed shall cross over Andrew Young International Boulevard.

m. *Subarea 5 Centennial Olympic Park:* The regulations for Subarea 5 Centennial Olympic Park shall be subject to the following additional limitations:

1. LSVD Signs: In addition to the signs otherwise authorized in this section (12), LSVD Signs, shall be a permitted wall sign on a building provided they meet each of the following standards:

   a. The LSVD sign(s) erected on a building permitted as a Museum, Gallery, Auditorium, Library or similar cultural facility located within Subarea 5 - Centennial Olympic Park; and

   b. No single LSVD sign shall not exceed 1,500 square feet in total sign face; and

   c. No portion of an LSVD sign shall extend 65 feet in height above sidewalk level; provided further that no part of an LSVD sign shall be placed above, supported on, or extend above the building façade to which it is attached; and

   d. All LSVD signs shall be constructed and erected as wall signs or parapet wall signs. Freestanding LSVD signs are specifically prohibited; and

   e. All LSVD signs must otherwise comply with all other provisions of this chapter as well as all other laws and regulations of the State of Georgia and the City of Atlanta.

(13) *SPI-12 Buckhead/Lenox Stations District.* It is the intention of these regulations to address the specific and unusual development patterns, building forms, and mix of uses which currently exist in this SPI district so as to regulate the size and location of signs, so that only businesses which are clearly intended by building form and placement to

be a component part of a unified development or a development utilizing shared access.

a.  *General regulations:* Signs within the SPI-12 Buckhead/Lenox Stations District are subject to the regulations set forth in this section (13). For purposes of this section (13), "street" means public right-of-way, private streets that function as public streets and pedestrian ways as defined by section 1618L.005. Other references in this section (13) to terms defined in section 16-18L.005 shall apply said definitions.

b.  *Subareas 1, 2 and 4:* The sign regulations for Subareas 1, 2, 4 shall be as indicated below in subsections d. through j.

c.  *Subarea 3:* The sign regulations for Subarea 3 shall be the same as the sign regulations for residential districts set forth in section 16-28A.010(I).

d.  *Building Signs:*

   1.  *Type:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs and marquee signs shall be permitted. Only one of the signs may be either suspended or projecting along each street frontage per business establishment, provided that corner business establishments may have two projecting signs limited to one projecting sign per street frontage.

   2.  *Number:*

      (a)  *Sidewalk-level business establishments:* A maximum of three building signs shall be allowed for each business establishment on the sidewalk-level of a building having frontage along a street.

      (b)  *Second-level and third-level business establishments:* A maximum of two building signs shall be allowed for each second-level and third-level business establishment having a façade that faces a street. For purposes of this section (13), "second-level and third-level" means those building floor levels immediately above sidewalk-level.

      (c)  *Corner business establishments:* One additional building sign shall be allowed for each business establishment occupying a corner space that faces two streets and is located on the sidewalk-level, second-level or third-level, provided such sign is oriented toward the additional street.

   3.  *Area:* Where a business establishment is permitted to have building signs, the following regulations shall apply:

      (a)  Sidewalk-level, second-level and third-level business establishments: The combined area of the signs shall not exceed ten percent of the total area of the walls of the business

establishment that face the street but at least 60 square feet of combined sign area is allowed for each business establishment.

(b) Corner business establishments: The area of the additional sign authorized by subsection (13)d.2.(c) shall not exceed ten percent of the total area of the walls of such business establishment that face the additional street, or 60 square feet, whichever is less.

(c) No individual sign shall exceed 200 square feet.

4. *Height:* The height limitation set forth in section 16-28A.007(m) may be exceeded for authorized building signs as follows:

(a) No portion of a sign for a sidewalk-level business establishment shall be located more than 35 feet in height above the elevation of the nearest sidewalk walk zone or pedestrian path.

(b) No portion of a sign for a second-level or third-level business establishment shall be located more than 50 feet in height above the elevation of the nearest sidewalk walk zone or pedestrian path provided that:

(1) The sign shall be located directly above the independent entrance to the second-level or third-level use; or

(2) The sign shall be located directly above or adjacent to windows for such second-level or third-level use.

(c) No portion of any sign shall extend above the top of a building upon which it is located.

5. *Multi-tenant Signs:* In addition to the signs otherwise authorized, buildings with three or more tenants shall be permitted one single building sign. Said sign shall be erected as a wall sign and shall not exceed 100 square feet in sign area. Where a building with three or more tenants faces two or more streets, two such multi-tenant signs shall be authorized provided that each is oriented toward a different street.

e. *Monument Signs:* For the purposes of this section (13), "monument sign" means a permanent sign not attached to a building and constructed directly and continuously upon the ground or grade-level support structure with no separation between the sign and the ground or grade-level support structure. Such signs shall not be supported by visible columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps or spacing and shall be authorized as a type of sign, subject to all restrictions and regulations generally applicable to all building signs provided they meet each of the following standards:

1. *Number:* One monument sign shall be authorized for each building that contains more than 25,000 square feet of gross floor area excluding parking areas except that no monument sign shall be authorized for any building that utilizes a regional shopping center sign or utilizes a nonconforming freestanding sign. When buildings which meet these criteria for a monument sign also face two or more streets, two monument signs shall be authorized provided that each is oriented toward a different street. Any sign copy appearing on a monument sign shall be counted against the number of signs and the total square footage of sign faces to which a business is otherwise entitled.

2. *Location:* Monument signs shall only be located on private property provided that under no circumstances shall a monument sign encroach into required sidewalk walk zones, pedestrian paths, or visibility triangles.

3. *Size and Height:* Monument signs shall not exceed 18 feet in length and two feet in width measured from the outer edges of the monument sign, and five feet in base height measured from the lowest point of the elevation of the nearest sidewalk clear zone or pedestrian path to the highest point of the monument sign. A vertical extension shall be permitted above the five feet maximum base height provided such extension does not exceed a total height of 18 feet (including the base height), eight feet in length and two feet in width, all measured in the same manner as stated above. Such signs, when located in the supplemental zone, shall not be situated in a manner that prohibits pedestrian circulation.

4. *Affiliated Businesses and Affiliated Businesses Utilizing Shared Access:* Businesses that are affiliated, such as through a unified development plan, or in the operation of their businesses through direct shared private street vehicular access to the same public street may utilize monument signs for signage on a monument sign located upon or within 20 feet of a drive lane of such shared vehicular access provided that such monument signage:

   (a)  Shall be directly visible from such adjacent public street;

   (b)  Shall be counted against the number of signs and the total square footage of sign faces to which a business utilizing such signage is otherwise entitled; and

   (c)  Shall be subject to include notarized documentation acknowledging that the city will only issue permits that meet the criteria set forth in this subsection; that the city is not required to determine whether the requested space on any monument sign is available to such applicant for such use; and that such applicant is responsible for all arrangements with its business affiliates to allow the location of the sign which is the subject of the application on

the monument sign. Further, the city's issuance of a sign permit pursuant to this subsection, which is, in part, based on the notarized documentation provided by the applicant:

(1) Shall not be considered to be the city's decision that such permit has the effect to supersede, amend or modify private rights of ownership in the monument sign.

(2) Shall not be considered to be the city's decision that such permit has the effect to supersede, amend or modify private rights in shared access as between any party with claims to the use of such private access.

(3) Shall not give rise to any obligation of the city to defend its issuance of the permit because such issuance granted a vested right to a business to locate on any monument sign. While no sign may be located on any monument sign without a permit, the allocation of all private rights as to who may place a permitted sign on such monument sign shall at all times be finally determined by the contractual or ownership arrangements between the business affiliates with respect to such monument sign.

f. *Building Signature Signs:* Notwithstanding the restriction on occupancy limits in the definition of principal occupant in section 16-28A.004, a building tenant who occupies a minimum of 20 percent or 100,000 square feet of the floor space of a specific building that is available for occupancy shall be authorized to erect a building signature sign, provided all other restrictions set forth in Chapter 28A related to building signature signs are followed; provided however that building signature signs for tenants with qualifying square footage in a qualifying building in a unified development may be located on another building in such unified development under common ownership that meeting the requirements for building signature signs in this district provided that the building where the occupancy is located is on an immediately adjacent parcel to the building where the signs are to be erected, the building are not separated by a public right-of-way, and both buildings are served by common pedestrian access and shared parking facilities.

g. *Regional Shopping Center Signs:* In lieu of authorized monument sign(s), a regional shopping center, as defined by section 16-18L.005, shall be permitted one single freestanding sign which may be a changing sign. Said sign shall not be located within the sidewalk walk zone or pedestrian path. Said sign shall not exceed 200 square feet in sign area and shall not exceed 35 feet in height above the elevation of the nearest sidewalk walk zone or 35 feet from the ground at the base of the structure to the tallest part of the structure, whichever greater. Where such

regional shopping centers have frontage on two or more streets, one additional large shopping center sign shall be permitted provided that such additional sign is not a changing sign.

h.  *Prohibited and/or Restricted Signs:*

1.  *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

2.  *Freestanding Signs Prohibited:* Freestanding signs shall not be permitted other than monument signs and regional shopping center signs, except that any freestanding sign lawfully constructed prior to the effective date of this chapter that is partially or fully destroyed by unintentional means such as fire, storm or other hazards may be reconstructed on its previous footprint to its previous height, size and location.

3.  *Animated, Flashing, and Changing Signs:* Unless authorized as regional shopping center signs in subsection (13)g., animated, flashing, and changing signs shall be prohibited.

4.  *Signs Extending Over Pedestrian Ways:* No sign shall extend into or project over an amenity zone, sidewalk walk zone, pedestrian path, or street right-of-way except if expressly authorized to encroach into a public right-of-way by an encroachment agreement approved pursuant to Chapter 138 of the City Code.

i.  All zero-lot-line attached single-family dwellings shall be allowed one sign per lot not to exceed two square feet in sign area. Said sign shall be mounted flat to the building or suspended.

j.  *Regional Shopping Center Development Major Business Signs:*

1.  Where an authorized building sign for a business occupying and actively using over 80,000 square feet in a regional shopping center, as defined by section 16-18L.005, would be permitted on an exterior wall of such business, this authorized wall sign, projecting sign, canopy sign, parapet wall sign, suspended sign or marquee sign may be placed on a building on an immediately adjacent lot not separated from the regional shopping center by a public right-of-way. The relocated sign shall be considered in calculating the size and number of signs that would be permitted for the authorized business identified.

2.  In lieu of an authorized building sign or an authorized monument sign, a business occupying and actively using over 80,000 square feet on a lot immediately adjacent to a regional shopping center, as defined by section 16-18L.005, not separated by a public right-of-way shall be permitted to place this authorized wall sign, projecting sign, canopy sign, parapet wall sign, suspended sign, marquee sign or monument sign for such business on the

adjacent regional shopping center building or the lot containing the regional shopping center. The relocated signage shall be considered in calculating the size and number of signs that would be permitted for the authorized business identified. A relocated business building identification sign permitted to be relocated by this subsection 2 may be implemented as either one business building identification sign or one monument sign. If such relocated business building identification signage permitted is to be installed as a monument sign, it shall be located in an area visible from and adjacent to a private drive or pedestrian walkway providing access from the public right-of-way to such business.

3. No part of the signage permitted by subsections 1 and 2 may extend above the top of the building on which it is placed nor be located on portions of a building containing residential living area. Size of the signage permitted shall be determined pursuant to section 16-28A.010(13)(d)(3) and 16-28A.010(13)(e)(3).

(14) *[Reserved.]*

(15) *[Reserved.]*

(16) *SPI-5 Inman Park District.* For one- and two-family dwellings, the regulations for the R-1 through R-5 district shall apply; for multi-family dwellings, the regulations of the RG district shall apply.

(17) S*PI-6 Poncey-Highland District.* For one- and two-family dwellings, the regulations for the R-1 through R-5 district shall apply; for multi-family dwellings, the regulations of the RG district shall apply.

(18) *SPI-8 Home Park District.* The regulations of the R-1 through R-5 district shall apply.

(19) *SPI-9 Buckhead Village District.* Signs shall be permitted in the SPI-9 District as follows:

(a) *Subarea Regulations:* Specific subarea regulations may allow signage that is not permitted in other subareas or exceeds the height otherwise permitted by the Sign Ordinance.

(i) *Subarea 1:* Core Village. The maximum height of any sign on any building frontage in Subarea #1 and along on Pharr Road may be 60 feet above adjacent sidewalk-level.

(b) *Definitions:* For purposes of this section the following words, terms and phrases shall, when used in this section, have meanings ascribed to them in this article except where the context clearly indicates a different meaning:

(i) *Sidewalk-level:* Shall be defined per section 16-18I.006(1).

(ii) *Public street:* Any public right-of-way including such right-of-way that is only accessible by pedestrians.

(iii)   *Private street:* Any area that is fully accessible to vehicular traffic but that is not a public street and is not interior to a building or parking structure.

(iv)   *Monument sign:* A permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade level support structure with no separation between the sign and the grade. Such signs shall not be supported by columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps, or spacing; otherwise they shall be considered freestanding signs.

(v)   *Freestanding sign:* A sign that does not extend over any portion of a building and is not attached to a building or any structure other than its own support by one or more columns, uprights or braces in or upon the ground.

(vi)   *Historic iconic sign:* A roof sign erected on an establishment within the district, both of which were in continuous existence for at least 40 years prior to the creation of the district.

(c)   *Type, Number, and Area of Business Identification Signs:*

(i)   *Type:* Wall signs, projecting signs, canopy signs, parapet wall signs, monument signs, freestanding signs, suspended signs, and marquee signs shall be permitted. Building signature signs shall be permitted, subject to the restrictions set forth in section 16-28A.007(p) and section 16-28A.010(19)(a). Historic iconic signs shall be permitted, subject to the restrictions set forth in section 16-28A.010(19)(j).

(ii)   *Number:*

(A)   Three signs shall be allowed on the premises of active sidewalk level uses having a frontage along a public street or a private street where visible from a public street. One sign may be suspended from the wall or project over any frontage if approved in the manner required for its placement unless such signs are restricted by specific sub-area regulations.

(B)   Two signs shall be allowed on the premises of businesses located on a building floor above sidewalk-level and having a frontage along a public street or a private street where visible from a public street. One sign may be suspended from the wall or project over any frontage if approved in the manner required for its placement.

(C)   For businesses or having frontage on more than one public street or private street, one additional sign for the business establishment shall be permitted on the premises of such business, provided that no sidewalk level frontage contains more than three signs and no frontage above sidewalk level contains more than two signs. The

total area of increase for any additional sign allowed by this subsection shall not cause all signs on a frontage to exceed ten percent of the area of the wall area of said building occupied by such business establishment on that frontage or 60 square feet, whichever is less.

(iii) *Area:* The combined area of permitted signs shall not exceed ten percent of the total aggregate area of the walls that face the public right-of-way or which face a private drive and are visible from a public right-of-way provided however that at least 60 square feet of combined sign area is allowed. No individual sign shall exceed 200 square feet.

(d) *Maximum Height of Signs:* Section 16-28A.007(m) shall be supplanted for SPI-9 by the following height limitations provided however that no portion of any sign shall extend above the top of the building upon which it is located where the building height is less than the height permitted for signs.

(i) Where a business establishment is permitted to have signs, the following regulations shall apply:

(ii) Sidewalk-level business establishments: For such establishments signs are permitted to a maximum height of 35 feet above the adjacent sidewalk-level.

(iii) Above sidewalk-level business establishments: For such establishments signs are permitted to a maximum height of 50 feet above the lowest point of the adjacent sidewalk-level on that frontage provided that:

(A) The sign shall be located directly above the independent entrance to the upper floor use; or

(B) The sign shall be located directly above or adjacent to windows for such upper floor use.

(e) *Pedestrian Directories:* [Reserved.]

(f) *Shopping Center Signs:* Shopping centers shall be permitted one sign in addition to the signs of the businesses therein. Said sign shall be erected as a wall sign or monument sign and shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional wall sign or monument sign shall be permitted for each additional street frontage.

(g) *Signs Extending Over the Public Right-of-Way or Private Drives:* Signs extending or projecting over any property line onto sidewalk or street right-of-way or extending over a private drive and visible from a public street shall not be permitted without the written permission of the department of transportation obtained according to their procedures for allowing such encroachments. Any suspended or projecting sign that extends into any private drive on the exterior of any building shall be reviewed and approved by the department of transportation.

(h)  *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

(i)  *Animated, Flashing, Neon, Changing and Internally Illuminated:* No animated, flashing, neon, changing signs or internally illuminated signs shall be allowed.

(j)  Notwithstanding anything to the contrary in sections 16-28A.009(7), 16-28A.010(19), or 16-28A.014, a historic iconic sign is permitted within the district. Such sign may be re-located from its historic location to a new location within the district when the relocation is in connection with redevelopment of the historic location and the historic iconic sign is preserved in its historic form. Such requirement of preservation shall not preclude repairs and normal maintenance.

(20)  *[Reserved.]*

(21)  *[PD-H, Planned Development-Housing District.]* The following signs shall be permitted in the PD-H, Planned Development-Housing District:

a.  *Number and Area of Signs:* For a residential use, two permanent signs per lot shall be permitted. Each sign shall not exceed two square feet in sign area. One building sign per lot, which shall not exceed one square foot in sign area, shall be permitted. One permanent sign per planned development entrance shall be permitted and such sign shall not exceed 35 square feet in sign area. In addition, two temporary signs per lot shall be permitted, each not to exceed six square feet in size.

b.  *Setback:* Signs shall be mounted flat to the wall of the building or not nearer than 30 feet to the street property line, except that two temporary signs are permitted in any required yard.

c.  *Height of Signs:* No freestanding sign shall be higher than ten feet above ground level.

d.  *Lighting of Signs:* No sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

e.  *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

f.  *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

g.  *Billboard signs Prohibited:* Billboard signs shall not be permitted.

(22)  *[PD-MU, Planned Development-Mixed Use District.]* The following signs shall be permitted in the PD-MU, (Planned Development-Mixed Use) District:

a.  *Number and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three building signs shall be permitted for each business

establishment. The combined area of these permitted building signs shall not exceed ten percent of the total area of the wall of the front of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b.  *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the total area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c.  *Freestanding Signs:* In addition to the building signs permitted in subsections a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet.

d.  *Shopping Center Signs:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding sign. Said sign may be located within the required front yard setback. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street does not face a residential district.

e.  *Height of Signs:* No freestanding sign shall exceed 30 feet in height above ground level, provided that when the ground level is lower than the level of the adjoining street pavement, a freestanding sign may be raised so as to be not more than 20 feet above the level of the pavement.

f.  *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

g.  *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

h. *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

i. *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(23) *[PD-OC, Planned Development-Office-Commercial District.]* The following signs shall be permitted in the PD-OC (Planned Development-Office-Commercial) District:

a. *Number and Area of Building Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of three building signs shall be permitted for each business establishment. The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

b. *Building Signs on Corner Lots:* For corner lots, one additional building sign for the business establishment occupying the corner space shall be permitted, provided it is oriented toward the additional street frontage. The total area of said sign shall not exceed ten percent of the area of the wall of said building occupied by such business establishment and oriented toward the additional street frontage, or 60 square feet, whichever is less.

c. *Freestanding Signs:* In addition to the building signs permitted in subsection a. and b. above, one freestanding sign shall be permitted for each lot. On interior lots, said freestanding sign shall not exceed 60 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said interior freestanding sign may be enlarged from said 60-square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 100 square feet in total sign area. On corner lots, said freestanding sign shall not exceed 90 square feet in sign area when located in the required front yard setback. If located within the buildable area of the lot, said corner freestanding sign may be enlarged from, said 90 square foot maximum at a rate of one additional square foot of sign area per additional linear foot of setback from the required front yard setback line, measured perpendicularly, up to a maximum of 130 square feet in total sign area.

d. *Shopping Center Sign:* In lieu of the freestanding sign permitted in subsection c. above, shopping centers shall be permitted one single freestanding business identification sign. Said sign shall not exceed 200 square feet in sign area. Where a shopping center has frontage on two or more streets, one additional sign shall be permitted for each additional street frontage provided that such additional street frontage does not face a residential district.

    e.   *Height of Signs:* No freestanding sign shall exceed 35 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure, whichever is greater.

    f.   *Animated, Flashing or Changing Signs Prohibited:* No animated, flashing, or changing signs will be permitted.

    g.   *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

    h.   *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

    i.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(24) *[PD-BP, Planned Development-Business Park District.]* The following signs shall be permitted in the PD-BP (Planned Development-Business Park) District:

    a.   *Number and Area of Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted. A maximum of one is permitted for each separate street frontage of each business establishment. Such sign shall not exceed 30 square feet in sign area.

    b.   *Setback:* Signs shall be mounted flat to the wall of the building or not nearer than 20 feet to the street property line.

    c.   *Height of Signs:* No freestanding sign shall be higher than 24 feet above ground level.

    d.   *Lighting of Signs:* No sign shall be internally illuminated. No lighting shall be permitted which illuminates any area outside of the lot upon which said sign is located.

    e.   *Animated, Flashing, Changing Signs Prohibited:* No animated, flashing, or changing signs shall be permitted.

    f.   *Signs Extending Over Right-of-Way Prohibited:* No sign shall extend or project over any property line onto sidewalk or street right-of-way.

    g.   *Billboard Signs Prohibited:* Billboard signs shall not be permitted.

    h.   *Building Signature Signs:* Subject to the restrictions set forth in section 16-28A.007(p).

(25) *Cabbagetown Landmark District.*

    a.   *General Regulations:* The following regulations shall apply to all property located within the Cabbagetown Landmark District:

1. Billboard signs shall not be permitted in the Cabbagetown Landmark District; and

2. No sign shall be permitted within the Cabbagetown Landmark District except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

b. *The Mill (Subarea 1):* The sign regulations for the Mill (Subarea 1) shall be the same as the C-1 (Community business) district.

c. *Mill Housing (Subarea 2):* The sign regulations for Mill Housing (Subarea 2) shall be the same as the regulations in section 16-28A.010(1), provided that:

1. Freestanding signs shall not be permitted except for institutional uses permitted within the subarea;

2. The location of the sign, unless otherwise specified within this subsection (25), shall be subject to the approval of the urban design commission simultaneously with the request for a certificate of appropriateness;

3. Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

d. *Shotgun and Cottage Housing (Subarea 3):* The sign regulations for shotgun and cottage housing (Subarea 3) shall be the same as the regulations in 16-28A.010(1), provided that:

1. Freestanding signs shall not be permitted except for institutional uses permitted within the subarea.

2. The location of the sign, unless otherwise specified within this subsection (25), shall be subject to the approval of the urban design commission simultaneously with the request for a certificate of appropriateness.

3. Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

e. *Neighborhood Commercial/Services (Subarea 4):* The sign regulations for Neighborhood commercial/services (Subarea 4) shall be the same as the C-1 (Community business) district, provided that:

1. Freestanding signs shall not be permitted except for institutional uses permitted within the subarea and shall not exceed ten feet above ground level.

2. Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

    f.    *Transitional Commercial/Industrial (Subarea 5):* The sign regulations for Transitional commercial/industrial (Subarea 5) shall be the same as the C-1 (Community business) district, except where commercial or industrial uses in this subarea abut residential usage, no sign shall exceed 20 feet above ground level.

(26) *Druid Hills Landmark District.* The sign regulations for the Druid Hills landmark district shall be the same as the regulations in section 16-28A.010(1), provided that:

    a.    No billboard signs shall be permitted in the Druid Hills landmark district.

    b.    No sign shall be permitted within the Druid Hills landmark district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

    c.    One sign, not exceeding 20 square feet in sign area, shall be permitted for multi-family uses.

    d.    For all other nonresidential uses permitted in this district, one sign per street frontage shall be permitted. Such sign shall not exceed 35 square feet in sign area.

    e.    No sign shall be placed nearer than ten feet to the street property line.

(27) *M.L. King, Jr. Landmark District.* The following signs shall be permitted in the M.L. King, Jr. landmark district:

    a.    *General Regulations:* Notwithstanding any other individual district standards, all signs within the M.L. King, Jr. landmark district shall be subject to the following general regulations:

        (1)    No billboard signs shall be permitted in the M.L. King, Jr. landmark district.

        (2)    No freestanding signs shall be permitted in the M.L. King, Jr. landmark district.

        (3)    No monument signs shall be permitted in the M.L. King, Jr. landmark district.

        (4)    No LSVD signs shall be permitted in the M.L. King, Jr. landmark district.

        (5)    No sign shall be permitted within the M.L. King, Jr. landmark district except after approval by the commission of a certificate of appropriateness as specified in Chapter 20 of this part.

        (6)    Signs provided for contributing structures shall be designed in a manner that is compatible with the design, materials and general character of signage from the time period of historical significance for the structure.

        (7)    Signs provided for non-contributing structures shall be designed in a manner that is compatible with the design, materials and general character of signage from the time period of historical significance for the district.

b. *Auburn Avenue Residential District (Subarea 1):* The sign regulations for Auburn Avenue residential district (Subarea 1) shall be the same as the regulations in 16-28A.010(1), except that the location of the sign, unless otherwise specified within this subsection (27), shall be subject to the approval of the commission simultaneously with the request for a certificate of appropriateness.

c. *Residential District (Subarea 2):* The sign regulations for Residential district (Subarea 2) shall be the same as the regulations in 16-28A.010(1), except that the location of the sign, unless otherwise specified within this subsection (27), shall be subject to the approval of the urban design commission simultaneously with the request for a certificate of appropriateness.

d. *Institutional District (Subarea 3):* The sign regulations for Institutional district (Subarea 3) shall be the same as the regulations for the O-I (Office-institutional) district, provided that:

(1) The location of the sign, unless otherwise specified within this subsection (27), shall be subject to the approval of the commission simultaneously with the request for a certificate of appropriateness;

(2) Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

e. *Edgewood Avenue and Auburn Avenues Commercial District (Subarea 4):* The sign regulations for Edgewood Avenue and Auburn Avenues Commercial District (Subarea 4) shall be the same as the regulations for the SPI-1 (Downtown) district provided that:

(1) No individual sign shall exceed 100 square feet in sign area.

(2) No projecting sign shall exceed eight square feet in sign area.

(3) Sign location on the building shall correspond with that portion of the building owned or leased by the person erecting the sign.

(4) Signs shall be located as follows:

i. In the area of the storefront above the transom and below the second floor windows or centered between the transom and the cornice.

ii. On or in display windows or upper façade windows.

iii. On or in the glazing of the doors.

iv. On the valance of awnings.

v. On the fascia or top edge of canopies.

vi. Projecting perpendicularly from the building.

(5)   Changing signs shall be prohibited.

f.   *Transitional Zone (Subarea 5):* The sign regulations for Transitional zone (Subarea 5) shall be the same as the regulations imposed by the underlying zoning designation of each property within this subarea, provided that no such sign shall be permitted except after approval by the commission of a certificate of appropriateness as specified in Chapter 20 of this part and no billboard sign shall be permitted in this subarea.

(28) *Washington Park Landmark District.* The sign regulations for the Washington Park landmark district are as follows:

a.   No billboard signs shall be permitted in the Washington Park landmark district.

b.   No sign shall be permitted within the Washington Park landmark district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

c.   No institutional sign shall exceed 35 square feet in sign area.

d.   No freestanding sign shall exceed ten feet above ground level.

e.   No internally illuminated signs shall be permitted.

f.   No sign displaying the name of a sponsor for any park improvement shall exceed two square feet in sign area.

(29) *Oakland Cemetery Landmark District.* The sign regulations for the Oakland Cemetery landmark district are as follows:

a.   No billboard signs shall be permitted in the Oakland Cemetery landmark district.

b.   No sign shall be permitted within the Oakland Cemetery landmark district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

c.   No institutional sign shall exceed 35 square feet in sign area.

d.   No freestanding sign shall exceed ten feet above ground level.

e.   No internally illuminated signs shall be permitted.

f.   No sign for any cemetery improvement shall exceed two square feet in sign area.

(30) *Baltimore Block Landmark District.* The sign regulations for the Baltimore Block landmark district shall be the same as the SPI-1 (Central core) district except that:

a.   No billboard signs shall be permitted.

b.   No sign shall be permitted within the Baltimore block landmark district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

    c.    No sign shall exceed 100 square feet in sign area except that a projecting sign shall not exceed eight square feet in sign area.

    d.    Signs shall be located as follows:

        1.    On the valance of canopies;

        2.    Mounted flush against the façade of the building adjacent to the front entryway of the unit; or

        3.    Projecting perpendicularly from the building.

    e.    No shopping center signs shall be permitted.

    f.    No freestanding signs shall be permitted.

    g.    No animated, flashing or changing signs shall be permitted.

    h.    No internally illuminated signs shall be permitted.

(31) *West End Historic District.* The regulations for the West End historic district shall be the same as the regulations for section 16-28A.010(1), provided that:

    a.    No billboard signs shall be permitted in the West End historic district.

    b.    No sign shall be permitted within the West End historic district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

    c.    One sign, not exceeding 20 square feet in sign area, shall be permitted for multi-family uses.

    d.    For all other nonresidential uses permitted in this district, one sign per street frontage shall be permitted. Such sign shall not exceed 35 square feet in sign area.

    e.    The location of the sign, unless otherwise specified within this subsection (31), shall be subject to the approval of the urban design commission simultaneously with the request for a certificate of appropriateness.

    f.    For all legal, nonconforming commercial uses:

        1.    A maximum of three building signs shall be permitted for each business establishment. The combined area of these permitted building signs shall not exceed ten percent of the wall of the front of each said business establishment, and in no case shall any individual sign exceed 100 square feet.

        2.    No projecting sign shall exceed eight square feet in sign area.

        3.    Signs shall be located as follows:

            i.    In the area of the storefront centered between the transom and the cornice.

      ii.   On or in display windows.

      iii.   On or in the glazing of the doors.

      iv.   On the valance of the awnings.

      v.   Projecting perpendicularly from the building.

  4.   No freestanding signs shall be permitted.

  5.   No animated, changing, or flashing signs shall be permitted.

(32) *Hotel Row Landmark District.* The regulations for the Hotel Row landmark district shall be the same as the SPI-1 (Central core) district, provided that:

  a.   No billboard signs shall be permitted in the Hotel Row landmark district.

  b.   No sign shall be permitted within the Hotel Row landmark district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

  c.   No sign shall exceed 100 square feet in sign area except that a projecting sign shall not exceed eight square feet in sign area.

  d.   Sign location on the building shall correspond with that portion of the building owned or leased by the person erecting the sign.

  e.   Signs shall be located as follows:

      1.   In the area above the transom of the storefront and below the second floor windows.

      2.   On or in display windows or upper façade windows.

      3.   On or in the glazing of the doors.

      4.   On the valance of the awnings.

      5.   On the fascia or top edges of canopies.

      6.   Projecting perpendicularly from the building.

  f.   No shopping center signs shall be permitted.

  g.   No freestanding signs shall be permitted.

  h.   No changing signs shall be permitted.

  i.   No internally illuminated signs shall be permitted.

(33) *Adair Park Historic District.* The following signs shall be permitted in the Adair Park Historic District:

  a.   *General Regulations. Signs within the Adair Park Historic District are subject to the following regulations:*

1.  No permit shall be issued for the erection of any sign prior to issuance of a certificate of appropriateness by the urban design commission pursuant to chapter 20.

2.  No billboard signs shall be permitted in the Adair Park Historic District.

b.  *Residential Subarea 1:* The regulations for the Residential Subarea 1 shall be the same as the regulations in section 16-28A.010(1) except that the location of the sign, unless otherwise specified within this subsection (33), shall be subject to the approval of the urban design commission simultaneously with the request for a Certificate of Appropriateness.

c.  *Transitional Commercial Subarea 2:* The regulations for the Transitional Commercial Subarea 2 shall be the same as those for the C-1 (Community business) district, provided that:

1.  Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, not exceeding eight square feet in sign area, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

2.  No freestanding sign shall exceed 20 feet in height above ground level.

d.  *Transitional Industrial Subarea 3:* The regulations for the Transitional industrial Subarea 3 shall be the same as those for the C-1 (Community business) district, provided that:

1.  Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, not exceeding eight square feet in sign area, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

2.  No freestanding sign shall exceed 20 feet in height above ground level.

(34) *[Reserved.]*

(35) *Grant Park Historic District.* Except when otherwise explicitly provided, the provisions of chapter 28A of this part shall apply to this district.

a.  *General Regulations Applicable to all Subareas:*

1.  No billboard signs shall be permitted in the Grant Park Historic District.

2.  No animated, changing, or flashing signs shall be permitted in the Grant Park Historic District.

3.  No internally illuminated signs shall be permitted in the Grant Park Historic District.

b.  *Residential Subarea I:* The regulations for the Residential Subareas shall be the same as the regulations in section 16-28A.010(1) provided that:

1. No permit shall be issued for the erection of any sign prior to the issuance of a Certificate of Appropriateness by the commission pursuant to chapter 20.

2. The location of the sign, unless otherwise specified within this subsection (35), shall be subject to the approval of the commission simultaneously with the request for a Certificate of Appropriateness.

3. Any nonresidential zoned property shall comply with the regulations for the Commercial Subarea II, as set forth in [sub]section 16-28A.010(35)c.

c. *Commercial Subarea II:* The regulations for the Commercial Subarea II shall be the same as those for the C-1 (Community Business) district, provided that:

1. No permit shall be issued for the erection of any sign prior to the issuance of a Certificate of Appropriateness by the commission pursuant to chapter 20.

2. The location of the sign, unless otherwise specified within this subsection (35), shall be subject to the approval of the commission simultaneously with the request for a Certificate of Appropriateness.

3. Where an existing building is located immediately adjacent to the street, such building shall be permitted to have one sign, not exceeding eight square feet in sign area, projecting into the public right-of-way, subject to all other provisions of this part regarding projecting signs.

d. *Transitional Industrial Subarea III:* The regulations for the Transitional Subarea III shall be the same as those for the I-1 (Light industrial) district, except as otherwise specified within this subsection (35).

(36) *NC (Neighborhood Commercial) District.* The regulations for the NC District shall be the same as the regulations in subsection (5) C-1 (Community Business District), provided that:

a. No freestanding signs shall be permitted.

b. No shopping center signs shall be permitted.

c. In addition to the NC District general sign regulations, the following shall also apply to the Cascade Heights NC-6 District:

1. Wall signs and parapet wall signs shall be flush against the wall and shall not cover architectural building ornamentation and shall be internally illuminated or lit from behind (i.e. halo lighting) or externally illuminated but lighting shall be projected onto the sign from an ornamental light fixture attached above the wall sign (i.e. gooseneck lighting). In no event shall the light produce spillage onto adjacent property. Notwithstanding the general prohibition on freestanding signs in NC districts, businesses located in structures originally built as single-family dwellings may erect, in lieu of a wall sign, one freestanding sign. The freestanding sign shall be no greater than 20

square feet in size, no taller than six feet in height, and be set back from the property line at least 15 feet. The freestanding sign shall be permanently anchored to the ground by at least 4x4 painted posts on both ends of the signs. Any lighting of the freestanding sign shall not be internally illuminated but shall be projected onto the sign from the ground or from an ornamental light fixture attached to the top of the freestanding sign (i.e. gooseneck lighting). In no event shall the light produce spillage onto adjacent property.

2. Blade signs shall not extend five feet beyond the building façade.

3. Placement: Signage including window signs and incidental window signs shall not be permitted on building façades facing side or rear property lines directly adjacent to residential districts or uses when tenant signage may be provided on other building façades.

4. Window signs:

   i. Definition: The following definitions as well as all other definitions set forth in the Sign Ordinance shall apply within the District.

      1. Window sign: Any sign that is placed on, affixed to, painted or located either on the exterior of a window or glass pane or within the casement or sill area of a window or glass pane or within three feet therein and is visible from the exterior of the structure; but not including any lawful display of merchandise in its original packaging.

   ii. Type, number, area, removal: Window signs, as defined herein, shall not require a sign permit prior to display but shall only be permitted as follows:

      1. Not more than one window sign per façade per establishment shall be allowed. Each individual window sign or incidental window sign shall not be larger than four square feet. In no event shall one or more such signs cover more than 25 percent of the area of each window or glass pane in which a sign is placed. Such signs shall not be illuminated. Window signs shall not be counted toward any wall sign total square footage allowed by the underlying zoning district sign regulations.

      2. Any window sign in excess of the number allowed herein that was in lawful existence prior to the effective date of this amendment shall be removed within a reasonable period of time so as to allow recoupment of cost to the sign owner. Cost shall be evidence by receipts or other evidence of actual cost in procuring the window sign. Removal shall be as follows:

a. Any window sign with a cost of $100.00 or less shall be removed within 30 days of the effective date of this amendment.

b. Any window sign with a cost of greater than $100.00 and less than $5000 shall be removed within 120 days of the effective date of this amendment.

c. Any window sign with a cost of equal to or greater than $5000.00 shall be removed within one year of the effective date of this amendment.

5. Removal of legal, nonconforming freestanding signs and sign faces:

i. Within 30 days of the cessation of a business, each sign face associated with said ceased business shall be removed from any on-premise freestanding sign structure. Cessation of business shall be measured from the expiration of the business license. Each on-premise freestanding sign face for any business not in operation on the date of this ordinance shall have 30 days thereafter to remove said sign face(s). Operation of a business shall be evidence by a business license.

ii. Within 90 days of the cessation of a business, or adoption of this ordinance, whichever is greater, any freestanding sign structure shall be removed if no business, as evidenced by a business license, occupies the premises on which the freestanding sign is located. Cessation of business shall be measured no later than from the expiration of the last business license associated with the premise.

iii. Within 90 days of issuance of a business license for new on-premise business establishments that do not utilize an existing freestanding sign, said freestanding sign structure shall be removed.

(37) *SPI 16 Midtown District.* The following signs shall be permitted in the SPI 16 Midtown District:

a. The regulations for SPI 16 Midtown District section 16-18P.028 (Specific regulations for Subarea 1: Midtown Commercial) shall be the same as the regulations in subsection (6) C-2 (Commercial Service) District, provided that:

i. No freestanding signs shall be permitted.

ii. No shopping center signs shall be permitted.

iii. Large Screen Video Displays in Mixed Use Technology Centers. Despite any language to the contrary in Chapter 28A, the use of Large Screen Video Display (LSVD) utilizing full motion video technology consisting of a matrix

board behind which computerized lights are projected to form images, as for a television, shall be a permitted wall sign on a building within a Mixed Use Technology Center that meets the following criteria:

1. A Mixed Use Technology Center exceeds 700,000 square feet and consists of the following mix of uses:

   (a) at least 500,000 square feet of office floor area, a portion of which is leased to a university system of Georgia tenant and the remainder is available for lease by technology companies;

   (b) at least 50,000 square feet of floor area used as a high-performance computing space or data center;

   (c) at least 20,000 square feet of retail space with at least 15,000 square feet being street level retail; and

   (d) at least 20,000 square feet devoted to an outdoor public plaza; and

2. the LSVD sign:

   (a) shall be located on a wall facing the public outdoor public plaza; provided however that the LSVD sign may also be incidentally visible from a public street; and

   (b) shall not create greater hazards or distractions to drivers than other uses or building features permitted by Chapter 16 of the Code.

b. The regulations for SPI 16 Midtown District section 16-18P.029 (Specific regulations for Subarea 2: Midtown Residential) and SPI 16 Midtown District section 16-18P.030 (Specific regulations for Subarea 3: Juniper East) shall be the same as the regulations in subsection (3) RLC (Residential Limited Commercial) District, provided that:

   i. No freestanding signs shall be permitted.

   ii. No shopping center signs shall be permitted.

   iii. Signs may be located as near to the street property line as the nearest building.

(38) *SPI 17 Piedmont Avenue District.* The following signs shall be permitted in the SPI 17 Piedmont Avenue District:

a. The regulations for SPI 17 Piedmont Avenue District section 16-18O.027 (Specific regulations for Subarea 3: 10th and Piedmont) shall be the same as the regulations in subsection (6) C-2 (Commercial Service) District, provided that:

   i. No freestanding signs shall be permitted.

ii.    No shopping center signs shall be permitted.

b.    The regulations for SPI-17 Piedmont Avenue District section 16-18Q.025 (Specific regulations for Subarea 1: 14th and Piedmont), section 16-18O.026 (Specific regulations for Subarea 2: Piedmont North) and section 16-18O.028 (Specific regulations for Subarea 4: Piedmont South) shall be the same as the regulations in subsection (3) RLC (Residential Limited Commercial) District, provided that:

i.    No freestanding signs shall be permitted.

ii    No, shopping center signs shall be permitted.

iii.    Signs may be located as near to the street property line as the nearest building.

iv.    In Subarea 4, the maximum sign size for a bed and breakfast inn use shall not exceed eight square feet.

(39) *SPI 15 Lindbergh District.* The following signs shall be permitted in the SPI 15 Lindbergh District:

a.    The regulations for section 16-18O.028 (Specific regulations for commercial subareas) shall be the same as the regulations in subsection (6) C-2 (Commercial Service) District, provided that:

i.    No freestanding signs shall be permitted.

ii.    No shopping center signs shall be permitted.

b.    The regulations for section 16-18O.029 (Specific regulations for residential subareas) shall be the same as the regulations in subsection (3) RLC (Residential Limited Commercial) District, provided that:

i.    No freestanding signs shall be permitted.

ii.    No shopping center signs shall be permitted.

iii.    Signs may be located as near to the street property line as the nearest building.

(40) *LW (Live Work) District.* The regulations for the LW district shall be the same as the regulations in subsection (3) R-LC (Residential Limited Commercial) District, provided that:

a.    Signs extending over the right-of-way are prohibited. No sign shall extend or project over any property line onto sidewalk or street right-of-way, except that signs may extend over the supplemental zone.

b.    No freestanding signs shall be permitted for new developments. One freestanding sign per property shall be permitted for pre-existing principal structures setback a minimum of 40 feet from the property line with street frontage. Said freestanding

sign shall not be located in the sidewalk street furniture zone or clear zone, and shall not exceed 48 square feet in sign area and a height of 15 feet.

(41) *MRC (Mixed Residential Commercial) District.* The regulations for the MRC District shall be the same as the regulations in subsection (6) C-2 (Commercial Service) District, provided that;

    a.  No freestanding signs shall be permitted for new developments. One freestanding sign per property shall be permitted for pre-existing principal structures setback a minimum of 40 feet from the property line with street frontage. Said freestanding sign shall not be located in the sidewalk street furniture zone or clear zone, and shall not exceed 48 square feet in sign area and a height of 15 feet.

    b.  No shopping center signs shall be permitted.

    c.  Building signature signs: Subject to the restrictions set forth in section 16-28A.007(p).

(42) *MR (Multi-Family Residential) District.* The regulations for the MR district shall be the same as the regulations in subsection (3) RLC (Residential Limited Commercial) District, provided that:

    a.  No freestanding signs shall be permitted for new developments. One freestanding sign per property shall be permitted for pre-existing principal structures setback a minimum of 40 feet from the property line with street frontage. Said freestanding sign shall not be located in the sidewalk street furniture zone or clear zone, and shall not exceed 48 square feet in sign area and a height of 15 feet.

    b.  No shopping center signs shall be permitted.

    c.  Signs may be located as near to the street property line as the nearest building.

    d.  Building signature signs are permitted subject to the restrictions set forth in section 16-28A.007(p).

(43) *SPI-18 Mechanicsville Neighborhood District.* The following signs shall be permitted in the SPI-18 Mechanicsville Neighborhood District:

    a.  The regulations for SPI-18 Mechanicsville District for Subareas 1, 2, 3 and 10 shall be the same as the regulations in subsection (5) C-1 (Community Business) District, provided that:

        i.  No freestanding signs shall be permitted.

        ii.  No shopping center signs shall be permitted.

    b.  The regulations for SPI-18 Mechanicsville District Subareas 4 shall be the same as the regulations in subsection (2) R-G (Residential General) District.

    c.  The regulations for SPI-18 Mechanicsville District Subareas 5 and 6 shall be the same as the regulations in subsection (1) R-1 through R-5.

    d.    The regulations for SPI-18 Mechanicsville District Subareas 7 and 8 shall be the same as the regulations in subsection (10) I-1 (Light Industrial) District except that billboard signs are prohibited.

(44) *Oakland City Historic District.* The following regulations shall apply to the Oakland City Historic District.

    (1)    Except when otherwise explicitly provided, the provisions of chapter 28A of this part shall apply to this district.

    (2)    The regulations for this district shall be the same as the regulations in section 16-28A.010(1), provided that:

        (a)    No permit shall be issued for the erection of any sign prior to the issuance of a certificate of appropriateness by the commission pursuant to chapter 20; and

        (b)    The location of the sign, unless otherwise specified within this subsection (44), shall be subject to the approval of the commission simultaneously with the request for a certificate of appropriateness by the commission pursuant to chapter 20.

    (3)    No billboard signs shall be permitted in the Oakland City Historic District.

    (4)    No animated, changing, or flashing signs shall be permitted in the Oakland City Historic District.

    (5)    No internally illuminated signs shall be permitted in the Oakland City Historic District.

(45) *[Reserved.]*

(46) *SPI 20 Greenbriar Town Center District.* The following signs shall be permitted in the SPI 20 Greenbriar Town Center District:

    a.    The regulations for SPI 20 Greenbriar Town Center District Subareas 1, 2, and 3 shall be the same as the regulations in Subsection (41) MRC (Mixed Residential Commercial) District 3, except as otherwise set forth in subsection b.

    b.    Where a shopping center is located on a parcel larger than 50 acres and the structures on the parcel exceed 500,000 square feet, such use may be allowed signage which meets the requirements of this subsection:

        (i)    Four freestanding monument style signs each not exceeding 200 square feet in sign area and not exceeding 20 feet in height above the level of the surface of the pavement of the nearest lane of vehicular travel of the adjacent street or 20 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater. The signs may be internally lighted but shall not be changing signs:

(ii) The freestanding monument style shopping center signs permitted by this subsection may be installed in any required yard but shall be located at least 20 feet from the curb line when adjacent to a street to allow for the future installation of sidewalks and must otherwise meet the requirement set forth in this part as to visibility at intersections.

(iii) Each freestanding monument style shopping center sign permitted by this subsection shall be separated from any other such sign by a minimum of 500 feet of frontage along the same street when such sign is located in a required yard but this distance requirement may be reduced to 200 feet for signs located on different streets.

(iv) Where such shopping center has existing signage which faces limited access roadways. One existing sign may be converted to a changing sign, which may utilize any technology allowed by the sign ordinance provided however that neither the size of the sign face nor the height of the sign shall increase. The converted sign shall not be counted in the inventory of permitted monument style shopping center signs and shall be a conforming sign.

(v) Any existing signage which faces limited access roadways, not converted to a changing sign, shall be considered non-conforming and shall not be counted in the inventory of permitted monument style shopping Center signs.

(47) *SPI-11 Vine City and Ashby Station District.* The following signs shall be permitted in the SPI-11 Vine City and Ashby Station District:

a. *Subarea 1:* Ashby Station Shopping Subarea: The sign regulations are the same as those for the C-1 (Community Business) District; See section 16-28A.010(5).

b. *Subarea 2:* Martin Luther King, Jr. Drive-Ashby Street Commercial Subarea: The sign regulations are the same as those for the C-1 (Community Business) District; see section 16-28A.010(5).

c. *Subarea 3:* University Center Office-Institutional Subarea: The sign regulations are the same as those for the O-I (Office-Institutional) District; See section 16-28A.010(4).

d. *Subareas 4, 5 and 6:* University Residential, Ashview Heights Residential and Washington Park Single-Family Residential Subareas: The sign regulations are the same as those for the R-1 (Single-Family Residential) District; see section 16-28A.010(1). For bed and breakfast inn uses the sign regulations shall be the same as the regulations for the RLC (Residential Limited Commercial) district provided that the maximum sign size shall not exceed eight square feet and no freestanding signs shall be permitted.

e. *Subarea 7:* Vine City Single-Family Residential Subarea: The sign regulations are the same as those for the R-1 (Single-Family Residential) District; see section 16-

28A.010(1). For bed and breakfast inn uses the sign regulations shall be the same as the regulations for the RLC (Residential Limited Commercial) district provided that the maximum sign size shall not exceed eight square feet and no freestanding signs shall be permitted.

f.   *Subarea 8:* Vine City Multi-Family Residential Subarea: The sign regulations are the same as those for the MR (Multi-Family Residential) District; see section 16-28A.010(42).

g.   *Subareas 9, 10, 11 and 12:* Simpson Mixed Use, Lowery Mixed Use, Vine City Neighborhood Commercial and Northside Mixed Use Subareas: The sign regulations are the same as those for the MRC (Mixed Residential Commercial) District; see section 16-28A.010(41).

(48) *SP121 Historic West End/Adair Park District.* The following signs shall be permitted in the SPI 21 Historic West End District:

a.   The regulations for SPI 21 Historic West End/Adair Park District Subareas 1 and 2 shall be the same as the regulations in subsection (41) MRC (Mixed Residential Commercial) District.

b.   The regulations for SPI 21 Historic West End/Adair Park District Subareas 3 and 4 shall be the same as the regulations in subsection (36) NC (Neighborhood Commercial) District.

c.   The regulations for SPI 21 Historic West End/Adair Park District Subareas 5 and 6 shall be the same as the regulations in subsection (42) MR (Multi-family Residential) District.

d.   The regulations for SPI 21 Historic West End/Adair Park District Subarea 7 shall be the same as the regulations in subsection (1) Single-Family Residential District.

e.   The regulations for SPI-21 Historic West End District Subarea 8 shall be the same as the regulations in subsection (4) O-I (Office-Institutional) District, except:

   i.   No freestanding signs shall be permitted.

   ii.   No shopping center signs shall be permitted.

   iii.   Monument signs shall be permitted as set forth in subsection h.

   iv.   Changing signs shall be permitted as set forth in subsection h.

f.   The regulations for SPI 21 Historic West End District Subarea 9 shall be the same as the regulations in subsection (40) LW (Live Work) District.

g.   The regulations for SPI 21 Historic West End District Subarea 10 shall be the same as the regulations in subsection (8) C-4 (Commercial Residential) District, except that:

   i.   No freestanding signs shall be permitted.

      ii.    No shopping center signs shall be permitted.

h.    Monument signs: A permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade-level support structure with no separation between the sign and the ground or grade-level support structure may be permitted in Subarea 8 as a type of building identification sign to be referred to as a "monument sign" provided however that such signs shall meet all of the following criteria. The foregoing definition and following criteria are not intended to permit monument signs elsewhere in SPI 21 or elsewhere in the city.

    i.    Monument signs shall be permitted only for buildings larger than 75,000 square feet.

    ii.    Monument signs shall not be supported by visible columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps or spacing.

    iii.    Only one monument sign is permitted for any building.

    iv.    Monument signs for facilities that offer concerts, live theater, movies, and similar cultural events which offer scheduled performances or limited periods of display may include a maximum of two faces which may use changing sign technology Such changing sign components shall only appear on two sides and no face shall exceed 25 square feet.

    v.    Monument signs meeting all criteria set forth in this subsection may be located on public property when expressly authorized to encroach into a public right-of-way by an encroachment agreement approved pursuant to Chapter 138 of the City Code, provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones or visibility triangles. Where any monument sign which is requested to encroach on public property, the time required to obtain an encroachment agreement shall not be considered a part of the time spent in review the sign application.

(49) *Castleberry Hill Landmark District.* The sign regulations for the Castleberry Hill Landmark District shall be the same as those in Section 16-28A.010(5) (C-1 Community Business District), provided that:

1.    No billboard signs shall be permitted in the Castleberry Hill Landmark District.

2.    No sign shall be permitted within the district except after approval by the urban design commission of a certificate of appropriateness as specified in chapter 20 of this part.

3.    The location of the sign, unless otherwise specified within this subsection (49), shall be subject to the approval of the urban design commission simultaneously with the request for a certificate of appropriateness.

4.   Sign location on the building shall correspond with that portion of the building owned or leased by the person erecting the sign.

5.   Signs shall be located as follows:

    i.   In the area of the storefront above the transom and below the second floor windows or centered between the transom and the cornice;

    ii.   On or in display windows or upper façade windows;

    iii.   On or in the glazing of the doors;

    iv.   On the valance of awnings;

    v.   On the fascia or top edge of canopies; or

    vi.   Projecting perpendicularly from the building.

6.   Where a principal structure is located immediately adjacent to the street, each business establishment shall be permitted to have one sign that does not exceed eight square feet in sign area that projects into the public right-of-way, subject to all other provisions of this part regarding projecting signs. This projecting sign shall be considered one of the three signs allowed for each business establishment.

7.   Freestanding or shopping center signs shall be permitted in Subarea 2 of the district, provided that they are no taller than the principal structure or 20 ft., whichever is less.

8.   The combined area of these permitted building signs shall not exceed ten percent of the total area of the front wall of each said business establishment, and in no case shall any individual sign exceed 200 square feet. Notwithstanding these provisions, every business establishment shall be entitled to at least 60 square feet total combined sign area.

9.   No changing signs shall be permitted.

10.   No internally illuminated signs shall be permitted.

(50)   *SPI-22 Memorial Drive/Oakland Cemetery District.* The regulations for SPI-22 Memorial Drive/Oakland Cemetery District for Subareas 1, 2, 3, 4, and 5 shall be the same as the regulations in Subsection (5) C-1 (Commercial Service) District, with the following supplemental regulations:

    i.   No freestanding signs shall be permitted for new developments. One freestanding sign per property shall be permitted for pre-existing principal structures setback a minimum of 40 feet from the property line with street frontage. Said freestanding sign shall not be located in the sidewalk street furniture zone or clear zone, and shall not exceed 48 square feet in sign area and a height of 15 feet.

    ii.   No shopping center signs shall be permitted.

    iii.   No internally illuminated signs shall be permitted.

    iv.   Notwithstanding the provisions of subsection 16-28A.010(5)(g), signs may project over the sidewalk clear zone for any section of the clear zone that is privately owned or over the supplemental zone, when a vertical clearance of eight feet between the bottom of the sign and the sidewalk pavement is provided.

    v.   Maximum Height of Signs: The height of signs shall comply with the provisions of subsection 16-28A.007(b)(9)(m), except that for 2nd story tenants may extend to a maximum of 40 feet above ground-level provided that:

        i.   The sign shall be located directly above an independent sidewalk-level entrance to the 2nd story tenant; or

        ii.   The sign shall be located directly above the storefront windows for the 2nd story tenant.

(51)  *Historic Sears Roebuck & Co. Sign District.*

    a.   *Creation of District:* There is created within Chapter 28A the Historic Sears Roebuck & Co. Sign District, which applies to the property within the City of Atlanta currently known as 675 Ponce de Leon Avenue where a brick structure was constructed in 1926 and later expanded to house the operations of Sears Roebuck & Co. and which later became known as City Hall East. The boundaries of the district are shown on the Historic Sears Roebuck & Co. Sign District Map, which is incorporated into and made a part of this chapter and this section. It is the intention of these regulations to address the specific and unique building forms, mass, and scale of the district and regulate the size and location of signs so as to allow signs which are part of a sign plan prepared for the district and approved by the National Park Service while accomplishing the goals of this chapter and maintaining the separation between on-site and off-site advertising. All signs within the district as set forth in the sign plan are permitted under the regulations set forth in this section (51) even where the erection of such signs might otherwise be in conflict with the chapter. Where a sign is specifically prohibited by this section, such prohibition shall be in addition to any prohibition otherwise set forth in this section.

    b.   *Definitions:* For the purpose of this section (51), the following definitions shall apply, provided however that other definitions set forth in the chapter may be used to assist with interpretation of this section, further provided that the definitions set forth in this section are intended to control because of their specific application to the district and the sign types permitted therein;

        1.   *Blade sign* means a sign attached vertically to a metal blade arm extending horizontally from the building face.

2. *Building sign* means a type of business identification sign that is allowed in this district to identify the large scale buildings which are part of this development on buildings which are less than four stories.

3. *Extended sign* means a sign attached to a parapet wall or other wall and extending above the top of the wall.

4. *Historic etched sign* means a building business identification sign or incidental sign consisting of a sign face etched into the façade of the building that was in existence during the period in which Sears Roebuck & Co. business operations were conducted in the building.

5. *Historic iconic sign* means a building signature sign erected on the roof of the Historic Sears Roebuck & Co. Building in substantially the location and massing as the Sears Roebuck & Co. sign that previously existed during the period in which Sears Roebuck & Co. business operations were conducted in the building and used for the same purposes as building signature signs.

6. *Historic Sears Roebuck & Co. Building* (the "*Building*") means the brick building constructed in 1926 and later expanded and which has been approved for placement on the National Register of Historic Places, as shown on the Historic Sears Roebuck & Co. Sign District Map.

7. *Monument sign* means a permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade-level support structure with no separation between the sign and the ground or support structure. Monument signs shall not be supported by visible columns, uprights, poles, or braces and shall be of continuous solid construction without holes, gaps, or spacing.

8. *Pylon sign* means a vinyl sign attached vertically to a metal pylon located in the supplemental zone on private property.

9. *Property owner sign* means a sign face installed on a sign structure allowed in this district and authorized by the sign plan that is not in use by a tenant as a business identification sign.

10. *Sign plan* means the comprehensive and uniform elevations, architectural designs, and sign legend for signage approved for this district and applicable to the buildings constructed by Sears Roebuck & Co. and existing in the Historic Sears Roebuck & Co. Sign District as of January 1, 2014.

c.   *Signs:*

1. *Types:* Wall signs, projecting signs, canopy signs, monument signs, extended signs, blade signs, and pylon signs shall be permitted as business signs. Building signs shall be permitted for the property owner's business located within the district.

2. *Number:* The total number of signs shall not exceed the number identified in the sign plan for each type of sign. Each tenant may be assigned a maximum of three signs in accordance with the procedure set forth for permitting of signs in this district. A business establishment located at the corner of a building may be assigned one additional business identification sign by the property, owner, said sign to be oriented toward the additional frontage.

3. *Height:* The height of signs shall not exceed the height specified in the sign plan for each type of sign.

4. *Area:* The total area of any business identification signs in the district shall not exceed the square footage specified in the sign plan for each type of sign.

5. *Adjacency:* A sign is permitted to be erected only to identify the business of the property owner or tenants of the building but the assignment of sign locations is controlled by the sign plan.

6. *Assignment of Sign Locations:* Applicants seeking a permit for a sign in this district shall submit an application on a form to be developed for this district by the office of buildings, which shall require certification by the property owner that the requested sign face, size, height, number, and location are authorized by the property owner. The sign copy to be displayed shall be included in the application. One or more signs for a business establishment may be installed in a location other than the premises of the business establishment if so authorized by the property owner.

d. *Building Signature Signs:*

1. *Types:* Wall signs, projecting signs, and an historic iconic sign are permitted as building signature signs.

2. *Number:* One historic iconic sign as identified in the sign plan is permitted. One building signature sign is permitted on each side elevation of the building.

3. *Height:* The height of a building signature sign shall not exceed the height specified in the sign plan for each type of sign.

4. *Area:* The total area of the permitted historic iconic sign and the building signature signs in the district shall not exceed the gross square footage specified in the sign plan.

e. *Prohibited and Restricted Signs:*

1. *Billboard Signs:* Billboard signs shall not be permitted other than as specified in the sign plan.

2. *Animated, Flashing, and Changing Signs:* Animated, changing, and flashing signs shall not be permitted.

    3.   *Freestanding Signs:* Freestanding signs other than incidental signs, pylon signs, and monument signs specified in the sign plan shall not be permitted.

f.   *Monument Signs:*

    1.   *Number:* Monument signs as defined in this section (51) shall be authorized not to exceed the number specified in the sign plan and shall be installed on private property provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones, pedestrian paths, or visibility triangles.

    2.   *Height:* The height of monument signs shall not exceed the height specified in the sign plan for each type of monument sign.

    3.   *Area:* The total area of each monument sign shall not exceed the square footage specified in the sign plan for that type of monument sign.

    4.   *Shared Access and Assignment of Sign Locations:* Monument signs may include business identification signage for multiple businesses located in the district. Applicants seeking a permit for a business identification sign on a monument sign in this district shall submit an application on a form to be developed for this district by the office of buildings, which shall require certification by the property owner that the requested sign face and location are authorized by the property owner.

g.   *Incidental Signs:* Incidental signs are permitted.

h.   *Historic Etched Signs:* Historic etched signs are permitted to remain undisturbed as a non-conforming characteristic of the previous use and shall not require a permit.

i.   *Sign Lighting:*

    1.   Signs may be externally lit from the top or the bottom and the lighting shall be directed onto the sign face. All sources of light associated with a sign shall be effectively shielded from adjacent properties zoned R-1 through R-5, RG, or MR.

    2.   Signs may be lit in any of the following ways: halo-lit, exposed neon, exposed light bulbs, internally illuminated letters, and externally illuminated letters.

j.   *Property Owner Signs:* Property owner signs are permitted to be used by the property owner, the property owner's business within the district, or an event or activity occurring within the district.

k.   *New Buildings:* For any building constructed in the district after the effective date of creation of this district, the signage shall be governed by section 16-28A.010(41).

Created: 2022-03-02 15:57:33 [EST]

(Supp. No. 90, Update 2)

l.  *Sign Plan:* The sign plan for the district that has been adopted by the council is on file in the office of the municipal clerk.

(52) *West End/Lee Street Overlay Sign District.*

a.  *Creation of District*. There is created within Chapter 28A the West End/Lee Street Overlay Sign District. The boundaries of the District are shown on the West End/Lee Street Overlay Sign District Map, which is incorporated into and made a part of this chapter and this section. The passage of this ordinance shall be a supplement to and an overlay upon the existing zoning and sign regulations already applicable to parcels within its boundaries and the regulations set forth herein shall continue to apply when the existing zoning is changed unless a specific property is specifically exempted from these regulations as a condition of rezoning. The regulations set forth in this chapter, or set forth elsewhere in this part when referred to in this chapter, are regulations which are applicable in those parts of the city designated as being a part of the West End/Lee Street Overlay Sign District.

b.  *Authority*. This chapter is enacted pursuant to the city's exclusive zoning and planning authority granted by the Constitution of the State of Georgia, including without limitation Article IX. Section II, Paragraph III and Article XI Section II, Paragraph IV, as well as authority granted by the General Assembly of the State of Georgia, including but not limited to O.C.G.A. § 36-35-3, O.C.G.A. § 36-66-2, and O.C.G.A. § 36-70-3, the City of Atlanta Charter, Article I, Section 102(c)(42) as well as the general police powers of the city and such other authority as may be provided by applicable, state, federal and local laws.

c.  *Findings, Purpose and Intent.* The City of Atlanta finds that:

i.  The size, scale and character of buildings and uses in the West End zoning district (SPI-21) and along Lee Street, beginning West End Avenue to the north and Campbellton Road to the south directly affects the adjacent neighborhoods and the public health, safety and welfare;

ii.  Due to the large amount of vehicular traffic which is drawn to the West End neighborhood and Lee Street corridor, visual clutter created by window signs on commercially zoned or used properties can be distracting to drivers and may create unsafe conditions;

iii.  The visual clutter of window signs on commercially zoned or used properties within the West End neighborhood and Lee Street corridor detract from the aesthetically pleasing nature of the corridor;

iv.  The current regulations of window signs in the NC-6 (Cascade Heights Neighborhood Commercial) District contribute to vehicular and pedestrian safety as well as the aesthetic look of the store fronts in that district and that

similar regulations should be adopted along the West End neighborhood and Lee Street corridor; and

v.    There is a substantial need directly related to the public health, safety and welfare to address these public health safety and welfare concerns through the adoption of the regulations set forth in this chapter which shall supplement the existing zoning controls imposed by this part and other parts of the Code.

d.   *Definition:* For the purpose of this section (52), the following definition as well as all other definitions set forth in the Sign Ordinance shall apply within the District:

*Window sign:* Any sign that is placed on, affixed to, painted on or located either on the exterior of a window or within the casement or sill area of a window or within three feet therein and is visible from the exterior of the structure; but not including any lawful display of merchandise in its original packaging.

e.   *Type, Number, Area:* Window signs, as defined herein, shall not require a sign permit prior to display but shall only be permitted as follows:

i.    On parcels commercially zoned such as, but not limited to, C-2, MR, or SPI-21, conditionally or not, not more than two window signs per establishment shall be allowed. Each such individual sign shall not be larger than four square feet. In no event shall one or more of such signs cover more than 25 percent of the area of each window pane in which a sign is placed. Such signs shall not be illuminated, except that one such sign per establishment may be illuminated. Window signs shall not be counted toward any wall sign total square footage allowed by the underlying zoning district sign regulations.

ii.   Any window sign in lawful existence prior to the effective date of this amendment shall be removed within a reasonable period of time so as to allow recoupment of cost to the sign owner. Cost shall be evidence by receipts or other evidence of actual cost in procuring the window sign. Removal of said signage shall be as follows:

A)   Any sign with a cost of $100.00 or less shall be removed within 30 days of the effective date of this amendment.

B)   Any sign with a cost of greater than $100.00 and less than $5,000.00 shall be removed within 120 days of the effective date of this amendment.

C)   Any sign with a cost of equal to or greater than $5,000.00 shall be removed within one year of the effective date of this amendment.

f.    *Relation to Other Sign Controls.* All signs within the district, other than window signs shall be regulated based on the underlying zoning of property and corresponding sign regulations.

(53) *Campbellton Road Overlay Sign District*.

    a.   *Creation of District.* There is created within Chapter 28A the Campbellton Road Overlay Sign District, the boundaries of the district are shown on the Campbellton Road Overlay Sign District Map, which is incorporated into and made a part of this chapter and this section. The passage of this ordinance shall be a supplement to and an overlay upon the existing zoning and sign regulations already applicable to parcels within its boundaries and the regulations set forth herein shall continue to apply when the existing zoning is changed unless a specific property is specifically exempted from these regulations as a condition of rezoning. The regulations set forth in this chapter, or set forth elsewhere in this part when referred to in this chapter, are regulations which are applicable in those parts of the city designated as being a part of the Campbellton Road Overlay Sign District.

    b.   *Authority*. This chapter is enacted pursuant to the city's exclusive zoning and planning authority granted by the Constitution of the State of Georgia, including without limitation Article IX, Section II, Paragraph III and Article XI Section II, Paragraph IV, as well as authority granted by the General Assembly of the State of Georgia, including but not limited to O.C.G.A. § 36-35-3, O.C.G.A. § 36-66-2, and O.C.G.A. § 36-70-3, the City of Atlanta Charter, Article I, Section 102(c)(42) as well as the general police powers of the city and such other authority as may be provided by applicable, state, federal and local laws.

    c.   *Findings, Purpose and Intent*. The City of Atlanta finds that:

        i.   The size, scale and character of buildings and uses on that part of Campbellton Road, beginning at the intersection with County Line Road on the west and proceeding to Stanton Road on the east and along Greenbriar Parkway between Campbellton Road and The Fontainbleau directly affects the adjacent neighborhoods and the public health, safety and welfare;

        ii.   Due to the large amount of vehicular traffic which is drawn to the Campbellton Road visual clutter created by window signs on commercially zoned or used properties can be distracting to drivers and may create unsafe conditions;

        iii.   The visual clutter of window signs on commercially zoned or used properties within the Campbellton Road corridor detracts from the aesthetically pleasing nature of the corridor;

        iv.   The current regulations of window signs in the NC-6 (Cascade Heights Neighborhood Commercial) District contribute to vehicular and pedestrian safety as well as the aesthetic look of the store fronts in that district and that similar regulations should be adopted along the Campbellton Road corridor; and

v.   There is a substantial need directly related to the public health, safety and welfare to address these public health safety and welfare concerns through the adoption of the regulations set forth in this chapter which shall supplement the existing zoning controls imposed by this part and other parts of the Code.

d.   *Definition:* For the purpose of this section (53), the following definition as well as all other definitions set forth in the sign ordinance shall apply within the district.

i.   *Window sign:* Any sign that is placed on, affixed to, painted on or located either on the exterior of a window or within the casement or sill area of a window or within three feet therein and is visible from the exterior of the structure; but not including any lawful display of merchandise in its original packaging.

e.   *Type, Number, Area:* Window signs, as defined herein, shall not require a sign permit prior to display but shall only be permitted as follows:

i.   On parcels commercially zoned such as, but not limited to, C-1, MRC, RLC or SPI-20, conditionally or not, not more than two window signs per establishment shall be allowed. Each individual window sign shall not be larger than four square feet. In no event shall one or more window signs cover more than 25 percent of the area of each window pane in which a sign is placed. Such signs shall not be illuminated, except that one window sign within a business establishment may be illuminated. Window signs shall not be counted toward any wall sign total square footage allowed by the underlying zoning district sign regulations.

ii.   Any window sign in lawful existence prior to the effective date of this amendment shall be removed within a reasonable period of time so as to allow recoupment of cost to the sign owner. Cost shall be evidence by receipts or other evidence of actual cost in procuring the window sign. Removal shall be as follows:

A.   Any window sign with a cost of $100.00 or less shall be removed within 30 days of the effective date of this amendment.

B.   Any window sign with a cost of greater than $100.00 and less than $5,000.00 shall be removed within 120 days of the effective date of this amendment.

C.   Any window sign with a cost of equal to or greater than $5,000.00 shall be removed within one year of the effective date of this amendment.

iii. Relation to other sign controls. All signs within the district, other than window signs, shall be regulated based on the underlying zoning of property and corresponding sign regulations.

(54) *Means Street Landmark District.* The sign regulations for the Means Street Landmark District shall be the same as the regulations for the subject property at the time of adoption of the Means Street Landmark District provided that:

(1) No sign shall be permitted except after approval by the Commission of a Certificate of Appropriateness as specified in Chapter 20R of this part;

(2) Signs provided for contributing buildings shall be designed in a manner that is compatible with the design, materials, location, and general character of sign age from the time period of historical significance for the building;

(3) Signs provided for non-contributing buildings shall be designed in a manner that is compatible with the design and general character of the non-contributing building upon which it is located;

(4) Sign location on a contributing building shall correspond with that portion of the building owned or leased by the person erecting the sign;

(5) All regulations in Chapter 20R of this part are met;

(6) General advertising signs and billboards shall be prohibited;

(7) Freestanding signs shall be prohibited;

(8) Monument signs shall be prohibited;

(9) LSVD signs shall be prohibited;

(10) Changing signs shall be prohibited on contributing buildings; and

(11) Internally illuminated signs shall be prohibited on contributing buildings.

(55) *Arts and Entertainment District.*

a. *Intent.* The intent of the City in adopting these regulations is to:

1. Recognize that large scale sporting events, major conventions, and other large and significant entertainment activities in downtown Atlanta have unique needs for signage which is a critical consideration for sponsors and organizers selecting a location to host the event;

2. Create the Arts and Entertainment District, as a sign overlay district, and allow, through certain limitations set forth herein (the "Regulations"), additional signage for the specific and unique building forms, mass, scale and use of the buildings within the Arts and Entertainment District;

3. Expand the economic base of the City, by providing additional employment opportunities and additional tax revenues to the City and the region by

making the area of the A&E District more attractive through the management of specialized signage opportunities that will allow large scale sporting events, major conventions, and activities at major entertainment venues to choose the City when evaluating their choices of location;

4. Manage the placement of the additional signage so as to balance the economic development needs of the City in attracting large scale sporting events, major conventions, and activities at major entertainment venues with the general welfare of residents and businesses;

5. Create a process for the management of permits for the additional signage pursuant to a cooperation agreement with Atlanta Downtown Improvement District ("ADID") so that the sponsors and organizers of large scale sporting events, major conventions, and qualifying activities at major entertainment venues can deal with a single entity in order to create a "unified look and feel" for their event;

6. Demonstrate the City's commitment to economic development through its cooperation agreement with ADID so as to allow the contractual governance and enforcement of a unified approach to the streetscape and certain aspects of the built environment for large scale sporting events, major conventions, and qualifying activities at major entertainment venues which will allow the City to focus on traffic planning, crowd control and other key elements of public safety;

7. Enhance the general streetscape in the area encompassed by the district through the establishment of design guidelines providing additional signage opportunities permitted by these regulations;

8. Contribute to the overall welfare of the residents in the district by providing a more lively and enhanced streetscape to encourage a walkable downtown with more activity and which could lead to increased property values;

9. Allow for the management of supplemental signage, art, and other programs by the Atlanta Downtown Improvement District, with the input of other downtown stakeholder's that will protect the public interest and balance the commercial and economic initiatives with an approach designed to keep downtown aesthetically pleasing, safe for pedestrians and vehicular traffic, and respectful of interests of residents and businesses; and

10. Define the effect of these Regulations on other parts of this Code;

b. *District Created.* The Arts and Entertainment District (hereafter the "A&E District") is established. The boundary of the A & E District is the area within the heavy dashed lines on the map attached to the ordinance creating this A&E District. Said Map 1 is incorporated herein by reference. The Regulations shall apply within the boundary of the A&E District.

Created: 2022-03-02 15:57:33 [EST]

c.  *Authority.* The Regulations in this subsection are enacted pursuant to the city's exclusive zoning and planning authority granted by the Constitution of the State of Georgia, including without limitation Article IX. Section II, Paragraph III and Article XI Section II, Paragraph IV, as well as authority granted by the General Assembly of the State of Georgia, including but not limited to O.C.G.A. § 36-35-3, O.C.G.A. § 36-66-2, and O.C.G.A. § 36-70-3, the City of Atlanta Charter, Article I, Section 102(c)(42) as well as the general police powers of the city and such other authority as may be provided by applicable, state, federal and local laws.

d.  *Effect of the Regulations upon Existing Entitlements.* These Regulations are intended to be a part of a larger economic development purpose and a supplement to and an overlay upon the existing zoning and sign regulations already applicable to parcels within the boundaries of the A & E District but shall have no effect upon the entitlement given by other applicable parts of this Chapter 28A to businesses and property owners to erect signage within the A & E District.

e.  *Nonconforming.* Where a non-conforming sign is altered or removed, such sign shall not be restored to its previous degree of non-conformity or reconstructed, without regard to whether such alteration or removal was undertaken in connection with the erection of a sign that is permitted only by these regulations, such that the removal of any non-conforming sign shall be governed by other applicable parts of this Chapter and the Zoning Code applicable to non-conformities.

f.  *Effect of Subsequent Rezoning.* The regulations set forth herein shall continue to apply when the existing underlying zoning is changed unless a specific condition associated with a specific parcel otherwise requires and such condition shall govern over these regulations.

g.  *Additional Standards for Signs on Buildings or Sites Designated by the Historic Preservation Ordinance.* In determining the appropriateness or location of new signs proposed to be placed under this section, ADID shall also make application to the urban design commission which shall apply the criteria set forth in section 16-28A.007(v) in addition to the applicable criteria for certificates of appropriateness specified in Chapter 20 of this Part 16.

h.  *Distance limitations.* Distance limitations set forth in O.C.G.A. § 32-6-70 et seq. shall apply.

i.  *Downtown Arts and Entertainment District Sign Plan.* A Sign Plan is adopted at the time of creation of the district and contains certain criteria for ADID to follow when deciding that a proposed sign meets the criteria as set forth in these regulations. Said Sign Plan is attached to the ordinance creating this district and is incorporated herein by reference. Said Sign Plan is hereby made a public record, is accessible to members of the public, including but not limited to those who are, or may be, affected by it, and is accessible for public inspection in the office of the Atlanta

Municipal Clerk by requesting a certified copy of the ordinance creating the A & E District. It is also available online at http://web.atlantaga.gov/fal/.

j.   *Applications Limited.* In recognition of the economic development purpose behind the creation of the Subarea, the adoption of the regulations and the Sign Plan, only applications received from ADID as the permit applicant shall be accepted for the additional signs permitted by these regulations and as specified in the cooperation agreement approved by the governing authority.

k.   *Action on ADID Applications.* An application by ADID seeking permission to erect a sign found by ADID to meet the criteria of the Sign Plan shall be approved by the director under this subsection even where the erection of such sign might otherwise be in conflict with regulations elsewhere in this Chapter provided that upon receipt of an application, the structural plans for the erection of the sign are deemed by the director to meet the applicable building codes through construction review by the Office of Buildings.

l.   *Construction Review by the Office of Buildings.* Upon receipt of an application containing the items immediately below, from ADID for permission to erect a sign found by ADID as meeting the criteria of the Sign Plan, the director shall review only the structural plans for the erection of the sign described in the application to determine if the plans for the erection of the sign meet the applicable building codes. If approved, such sign shall be erected and operated only in the manner set forth on the approved structural plans.

1.   All applications from ADID for a permit to erect a sign in the district pursuant to these regulations shall be submitted to the director on the application form provided by the director.

2.   Each application shall be accompanied by the applicable fees established by the governing authority as may be amended (or in effect at the time of submittal) from time to time.

3.   All applications for construction, creation or installation of a new sign or for modification of an existing sign shall be accompanied by detailed drawings showing the dimensions, design, structure, and location of the sign sufficient to review for compliance with all applicable codes.

4.   No application shall be deemed to be accepted by the director unless all fees are paid and the required drawings are submitted.

5.   Any permanent sign that projects into the right-of-way shall be subject to the provisions of Article II of Chapter 138 and shall obtain permission from the City to encroach therein in the same manner as canopies, ledges, bay windows, balconies, decorative lighting, flagpoles, gargoyles, architectural embellishments, area walks or similar facilities. If an application for encroachment is pending the fact that such permission is pending shall not

prevent the director from receiving an application but no permit for erection shall be issued until a fully executed encroachment agreement approved by the department of transportation has been received.

6. All applications are to be reviewed by the department of transportation prior to the issuance of a permit to verify that no sign shall be erected or lit on a premises or location, in such a manner so as to obstruct the view of, or be confused with any authorized traffic signal, notice or control device, or with lights on any emergency vehicle, or so to create hazards or distractions to drivers because of direct or reflected natural or artificial light, flashing, intermittent or flickering lighting or real or apparent movement.

    i. If the department of transportation determines that the sign will be a traffic hazard, the commissioner shall deny the application;

    ii. If any sign is found to constitute a traffic hazard after installation by the department of transportation, the commissioner shall require the operator of the sign to either reduce the intensity of the condition or effect which causes the hazard to a level acceptable to the department of transportation or if no such reduction is possible, to remove the sign.

    iii. The commissioner may, through the issuance of a stop work order, cause an immediate cessation of such conditions or effects where an imminent danger to the traveling public is found.

m. *Criteria for the Sign Plan.* The Sign Plan, which is adopted as a part of the economic development purpose associated with these regulations, is developed based on criteria which are intended to allow flexibility in the development of signage in the district.

1. The aesthetic and architectural compatibility of the proposed sign to the building upon which the sign is to be displayed or suspended;

2. The use of the building mass and orientation in the placement of the sign so as to define and place strong visual emphasis on the street and other important public open spaces;

3. Whether the sign will enliven building façades and avoid extensive blank walls that would detract from the visual interest and appearance of an active streetscape and unify a building's appearance so as to add to a street façade's interest, scale and three-dimensional quality;

4. Whether the signage will direct attention to street level architecture and building uses in a manner that adds richness and variety to the pedestrian experience of the district;

5.   Whether the signage will assist buildings to display a clear pattern of openings and create shadow lines that enhance the street wall;

6.   Standard outdoor advertising billboard proportions of 14'x48' shall be rejected unless used as one component of a multiple sign array of varying proportions;

7.   Where signage is at street level, it should present dynamic, state-of-the-art façades with expressive lighting, audio-visual effects, and dimensional signage;

8.   Signs should appear as an integral part of the building design so as not to appear as an afterthought application;

9.   Whether the sign uses means of illumination such as neon tubes, fiber optics, incandescent lamps, LED's cathode ray tubes, shielded spotlights and wall wash fixtures so as to provide visual interest during nighttime hours is appropriate for placement of the sign when considering the safety of vehicular traffic and the impact on the residential uses that will be affected;

10.  The relationship of the scale and placement of the sign to the building or premises upon which it is to be displayed.

n.   *Cap on Sign Locations.* Not more than twenty five (25) sign locations shall be authorized by this subsection at any one time within the district. This number is the cap. This cap does not limit the number of supplemental sign permits that may be issued, only the number of locations. In the event all supplemental signage is removed from a sign location, a new sign location may be authorized so long as the total outstanding sign locations does not exceed the cap. For purposes of this subsection, a sign location shall mean on the same building or parcel.

o.   *Annual Inspection of Signs.* Sign permit owners shall provide an annual inspection report certified by a licensed engineer that the sign installed pursuant to this subsection is structurally sound and continues to meet the state minimum codes applicable at the time of sign erection.

p.   *Signs not to be visible from the Interstate.* No supplemental sign permit shall issue, nor shall any supplemental sign be erected or maintained if the sign face of such sign is visible by drivers on the interstate highway.

(56) *Briarcliff Plaza Landmark District.* The sign regulations for the Briarcliff Plaza Landmark District shall be the same as the C-1 zoning regulations, provided that:

a.   No sign shall be permitted except after approval by the Director of a Certificate of Appropriateness as specified in Chapter 20S of this part;

b.   Signs provided for contributing buildings shall be designed in a manner that is compatible with the design, materials, location, and general character of signage from the time-period of historical significance for the building;

c.   Sign location on a contributing building shall correspond with that portion of the building owned or leased by the person erecting the sign;

d.   All regulations in Chapter 20S of this part are met;

e.   Neon lighting or similar tubular lighting mechanisms shall be permitted;

f.   The following signs shall be prohibited:

   i.   General advertising signs and billboards;

   ii.   Freestanding signs;

   iii.   Monument signs;

   iv.   LSVD signs;

   v.   Changing signs on contributing buildings; and

   vi.   Internally illuminated signs on contributing buildings, except for signs utilizing neon lighting or similar tubular lighting mechanisms.

(57) *Pratt-Pullman Landmark District.* The sign regulations for the Pratt-Pullman Landmark District shall be the same as the C-1 zoning regulations, provided that:

1)   No sign shall be permitted except after approval by the Director of a Certificate of Appropriateness as specified in Chapter 20T of this part.

2)   Signs provided for contributing buildings shall be designed in a manner that is compatible with the design, materials, location, and general character of signage from the time-period of historical significance for the building.

3)   Sign location on a contributing building shall correspond with that portion of the building owned or leased by the person erecting the sign.

4)   Signs provided for additions to contributing buildings and new buildings shall be designed in a manner that is compatible with the design, materials and general character of signage from the time period of historical significance for the district.

5)   All regulations in Chapter 20T of this part are met.

6)   *Property Signature Sign.* As used in the Pratt-Pullman Landmark District, a property signature sign shall be defined as a wall sign or a freestanding sign, not greater than 400 square feet and styled in the manner of a movie marquee or train station sign. A property signature sign shall not be a pylon sign.

7)   The following signs shall be prohibited:

   i)   LSVD signs;

ii)   Changing signs on contributing buildings; and

iii)  Internally illuminated signs on contributing buildings.

(58) *Fort McPherson Film and Television Overlay Sign District Regulations.* The sign regulations for the Fort McPherson Overlay Sign District shall be the same as the I-1 zoning regulations, provided that:

1)  Iconic Studio Entrance Sign. As used in the Fort McPherson Overlay Sign District, an iconic studio entrance sign shall be defined as a wall sign or a freestanding sign, not greater than 2,000 square feet and located adjacent to the entrance gate for a film and television studio, which sign location shall not be less than 600 feet from the nearest public right-of-way. An iconic studio entrance sign shall not be a pylon sign.

2)  The maximum height for an iconic studio entrance sign shall be 20 feet.

3)  An iconic studio entrance sign may be an LSVD sign, or a changing sign.

4)  Not more than one location for an iconic studio entrance sign may be authorized pursuant to this subsection at any one time within the district.

5)  An iconic studio entrance sign may be erected only to identify, highlight, and promote the film and television studio operator's business, products, and services.

(59) *SPI-2 Fort McPherson Special Public Interest District:* The regulations for the SPI 2 Fort McPherson Special Public Interest District shall be the same as the regulations in Subsection (6) C-2 (Commercial Service) District, provided that,

a.  No freestanding sign shall be permitted.

b.  No shopping center signs shall be permitted.

c.  Monument Signs: In addition to the signs otherwise authorized in this section (59), monument signs shall be authorized as a type of sign provided they meet each of the following standards:

1.  For the purposes of this section (59), "monument sign" means a permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade-level support structure with no separation between the sign and the ground or grade-level support structure, Monument signs shall not be supported by visible columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps or spacing;

2.  One monument sign shall only be authorized for each building containing more than 25,000 square feet of gross floor area excluding parking areas, When building faces two or more streets, two monument signs shall be authorized provided that each is oriented toward a different street;

3. Monument signs shall not exceed ten feet in height measured from the lowest point of the elevation of the nearest sidewalk clear zone or supplemental zone to the highest point of the monument sign. Monument signs shall not exceed four feet in length and two feet in width, measured from the outer edges of the monument sign structure;

4. Monument signs shall be located on private property except when expressly authorized to encroach into a public right-of-way by an encroachment agreement approved pursuant to Chapter 138 of the City Code, provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones or visibility triangles; and

5. All monument signs shall require approval through a Special Administrative Permit before a building permit can be issued.

(60) *Poncey-Highland Historic District.*

(1) The sign requirements of the R4 district apply in Subareas 1, 2, 6, and 7.

(2) The sign requirements of the MRC districts apply in Subareas 3, 4, and 5, except as further restricted by "3" and "4" below.

(3) Rope LED lighting is prohibited on signs and in windows in Subareas 3, 4, and 5.

(4) All original or historic signs shall be retained, provided that the sign face maybe changed compliant with Chapter 28A of this part if the overall size, shape, depth, location on the building, and materials of the sign and sign structure are retained.

(61) *MET Atlanta Sign District.*

a. *Creation of District:* There is created within Chapter 28A the MET Atlanta Sign District, which applies to the property within the City of Atlanta currently known as MET Atlanta (formerly know as The Candler Warehouse) constructed in 1914 by Asa Candler, co-founder of the Coca-Cola Company. The boundaries of the district are shown on the MET Atlanta District Map, which is incorporated into and made a part of this chapter and this section. It is the intention of these regulations to address the specific and unique building forms, mass, and scale of the district and regulate the size and location of signs so as to allow signs which are part of a sign plan prepared for the district while accomplishing the goals of this chapter and maintaining the separation between on-site and off-site advertising. All signs within the district as set forth in the sign plan are permitted under the regulations set forth in this section (61) even where the erection of such signs might otherwise be in conflict with the chapter. Where a sign is specifically prohibited by this section, such prohibition shall be in addition to any prohibition otherwise set forth in this section.

b. *Definitions:* For the purpose of this section (61), the following definitions shall apply, provided however that other definitions set forth in the chapter may be

used to assist with interpretation of this section, further provided that the definitions set forth in this section are intended to control because of their specific application to the district and the sign types permitted therein;

1. *Blade sign* means a sign attached vertically to a metal blade arm extending horizontally from the building face.

2. *Building sign* means a type of business identification sign that is allowed in this district to identify the large-scale buildings which are part of this development on buildings which are less than four stories.

3. *Extended sign* means a sign attached to a parapet wall or other wall and extending above the top of the wall.

4. *Historic etched sign* means a building business identification sign or incidental sign consisting of a sign face etched into the façade of the building that was in existence during the period in which MET Atlanta business operations were conducted in the building.

5. *Historic iconic sign* means a building signature sign erected on the roof of the MET Atlanta Building in substantially the location and massing as a sign that previously existed during the period in which MET Atlanta business operations were conducted in the building and used for the same purposes as building signature signs.

6. *MET Atlanta Building (the "Building")* means the concrete building(s) constructed in 1914 and later expanded as shown on the MET Atlanta Sign District Map.

7. *Monument sign* means a permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade-level support structure with no separation between the sign and the ground or support structure. Monument signs shall not be supported by visible columns, uprights, poles, or braces and shall be of continuous solid construction without holes, gaps, or spacing.

8. *Pylon sign* means a vinyl sign attached vertically to a metal pylon located in the supplemental zone on private property.

9. *Property owner sign* means a sign face installed on a sign structure allowed in this district and authorized by the sign plan that is not in use by a tenant as a business identification sign.

10. *Sign plan* means the comprehensive and uniform elevations, architectural designs, and sign legend for signage approved for this district and applicable to the buildings constructed by MET Atlanta of January 1, 2020.

c. *Signs:*

1. *Types:* Wall signs, projecting signs, canopy signs, monument signs, extended signs, blade signs, and pylon signs shall be permitted as business signs. Building signs shall be permitted for the property owner's business located within the district.

2. *Number:* The total number of signs shall not exceed the number identified in the sign plan for each type of sign. Each tenant may be assigned a maximum of three signs in accordance with the procedure set forth for permitting of signs in this district. A business establishment located at the corner of a building may be assigned one additional business identification sign by the property, owner, said sign to be oriented toward the additional frontage.

3. *Height:* The height of signs shall not exceed the height specified in the sign plan for each type of sign.

4. *Area:* The total area of any business identification signs in the district shall not exceed the square footage specified in the sign plan for each type of sign.

5. *Adjacency:* A sign is permitted to be erected only to identify the business of the property owner or tenants of the building, but the assignment of sign locations is controlled by the sign plan.

6. *Assignment of Sign Locations:* Applicants seeking a permit for a sign in this district shall submit an application on a form to be developed for this district by the office of buildings, which shall require certification by the property owner that the requested sign face, size, height, number, and location are authorized by the property owner. The sign copy to be displayed shall be included in the application. One or more signs for a business establishment may be installed in a location other than the premises of the business establishment if so authorized by the property owner.

d. *Building Signature Signs:*

1. *Types:* Wall signs, projecting signs, and an historic iconic sign are permitted as building signature signs.

2. *Number:* One historic iconic sign as identified in the sign plan is permitted. One building signature sign is permitted on each side elevation of the building.

3. *Height:* The height of a building signature sign shall not exceed the height specified in the sign plan for each type of sign.

4. *Area:* The total area of the permitted historic iconic sign and the building signature signs in the district shall not exceed the gross square footage specified in the sign plan.

e. *Prohibited and Restricted Signs:*

Created: 2022-03-02 15:57:33 [EST]

1.   *Billboard Signs:* Billboard signs shall not be permitted other than as specified in the sign plan.

2.   *Freestanding Signs:* Freestanding signs other than incidental signs, pylon signs, and monument signs specified in the sign plan shall not be permitted.

f.   *Monument Signs:*

1.   *Number:* Monument signs as defined in this section (61) shall be authorized not to exceed the number specified in the sign plan and shall be installed on private property provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones, pedestrian paths, or visibility triangles.

2.   *Height:* The height of monument signs shall not exceed the height specified in the sign plan for each type of monument sign.

3.   *Area:* The total area of each monument sign shall not exceed the square footage specified in the sign plan for that type of monument sign.

4.   *Shared Access and Assignment of Sign Locations:* Monument signs may include business identification signage for multiple businesses located in the district. Applicants seeking a permit for a business identification sign on a monument sign in this district shall submit an application on a form to be developed for this district by the office of buildings, which shall require certification by the property owner that the requested sign face and location are authorized by the property owner.

g.   *Incidental Signs:* Incidental signs are permitted.

h.   *Historic Etched Signs:* Historic etched signs are permitted to remain undisturbed as a non-conforming characteristic of the previous use and shall not require a permit.

i.   *Sign Lighting:*

1.   Signs may be externally lit from the top or the bottom and the lighting shall be directed onto the sign face. All sources of light associated with a sign shall be effectively shielded from adjacent properties zoned R-1 through R-5, RG, or MR.

2.   Signs may be lit in any of the following ways: halo-lit, exposed neon, exposed light bulbs, internally illuminated letters, and externally illuminated letters.

j.   *Property Owner Signs:* Property owner signs are permitted to be used by the property owner, the property owner's business within the district, or an event or activity occurring within the district.

k.  *New Buildings:* For any building constructed in the district after the effective date of creation of this district, the signage shall be governed by section 16-28A.010(41).

l.  *Sign Plan:* The sign plan for the district that has been adopted by the council is on file in the office of the municipal clerk.

(62) *Stadium Neighborhoods Sign Overlay District Regulations.* The sign regulations for the Stadium Neighborhoods Sign Overly District shall be as provided below:

a.  *Freestanding Signs:* In addition to signage permitted in 16-28A.010(41), one freestanding sign shall be permitted in this district.

b.  *Height of Signs:* No freestanding sign shall exceed 20 feet in height above the level of the surface of the pavement of the nearest lane of the main traveled way or 35 feet from the ground at the base of the structure to the tallest part of the structure whichever is greater.

(63) *Morehouse College School of Medicine Sign Overlay:* The regulations for the Morehouse College School of Medicine Sign Overlay shall be as follows:

a.  *Type, Number, and Area of Wall Signs:* Wall signs, projecting signs, canopy signs, parapet wall signs, suspended signs, and marquee signs shall be permitted, provided that any such sign which projects over the public sidewalk or public street right-of-way shall be subject to all other provisions of this chapter and other applicable requirements of the Code of Ordinances of the City of Atlanta. A maximum of two building signature signs shall be permitted. The provision of Section 16-28A.007(m) shall not apply.

b.  *Monument Signs:* In addition to the signs otherwise authorized monument signs shall be authorized as a type of sign provided, they meet each of the following standards:

1.  For the purposes of this section (12), "monument sign" means a permanent sign not attached to a building and constructed directly and continuously upon the ground or a grade-level support structure with no separation between the sign and the ground or grade-level support structure. Monument signs shall not be supported by visible columns, uprights, poles or braces and shall be of continuous solid construction without holes, gaps or spacing.

2.  One monument sign shall be authorized meeting the following requirement:

    a.  Building square footage: The building contains more than 25,000 square feet of gross floor area excluding parking areas; and

    b.    When buildings face two or more streets, two monument signs shall be authorized provided that each is oriented toward a different street.

    c.    Monument signs shall not exceed ten feet in height measured from the lowest point of the elevation of the nearest sidewalk clear zone or supplemental zone to the highest point of the monument sign. Monument signs shall not exceed four feet in length and two feet in width, measured from the outer edges of the monument sign structure.

    d.    Monument signs shall be located on private property except when expressly authorized to encroach into a public right-of-way by an encroachment agreement approved pursuant to Chapter 138 of the City Code, provided that under no circumstances shall a monument sign encroach into required sidewalk clear zones or visibility triangles.

    e.    All monument signs shall require approval through a Special Administrative Permit before a building permit can be issued.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 ; Ord. No. 2016-16(15-O-1409) , § 2, 6-15-16; Ord. No. 2017-08(17-O-1649), § 8, 2-6-17 ; Ord. No. 2017-07(17-O-1188), § 1, 2-15-17 ; Ord. No. 2017-38(17-O-1009), § 1(Exh. A), 6-28-17 ; Ord. No. 2017-48(17-O-1177), §§ 1—3, 8-30-17 ; Ord. No. 2017-50(17-O-1204), §§ 2—4, 9-5-17 ; Ord. No. 2017-64(17-O-1449), § 3, 11-6-17 ; Ord. No. 2017-77(17-O-1668), 3(Att. C), 11-29-17 ; Ord. No. 2017-81(17-O-1426), § 1, 12-13-17 ; Ord. No. 2018-14(18-O-1168), § 1, 5-30-18 ; Ord. No. 2018-26(18-O-1192), § 1(Att. A), 7-11-18 ; Ord. No. 2018-47(18-O-1372), § 1, 10-10-18 ; Ord. No. 2018-50(18-O-1427), §§ 1, 3, 10-24-18 ; Ord. No. 2019-18, § 1, 3-13-19 ; Ord. No. 2020-15(19-O-1478) , § 1, 3-11-20; Ord. No. 2020-33(20-O-1381) , § 51, 6-23-20; Ord. No. 2020-49(20-O-1171) , § 3(Att. C), 9-17-20; Ord. No. 2020-53(20-O-1323) , § 16, 10-14-20; Ord. No. 2021-17(19-O-1431) , § 1(Att. A), 4-28-21; Ord. No. 2021-20(21-O-0081) , § 1(Att. A), 4-28-21; Ord. No. 2021-42(21-O-0263) , § 1, 9-15-21)

## Sec. 16-28A.011. Construction and maintenance.

All signs shall be constructed and maintained in accordance with the following standards:

(1)    All signs shall comply with all applicable provisions of the City of Atlanta Building Code at all times, provided that if any provision of said code directly conflicts with a provision in this chapter 28A, this chapter shall control.

(2)    All signs shall comply with all applicable provisions of the City of Atlanta Electrical Code at all times, provided that if any provision of said code directly conflicts with a provision in this chapter 28A, said electrical code shall control.

(3) Except for banners, flags, temporary signs, and window signs conforming in all respects with the requirements of this chapter 28A, all signs shall be constructed of permanent materials and shall be permanently attached to the ground, a building, or another structure by direct attachment to a rigid wall, frame or structure.

(4) All signs shall be erected and maintained in good structural condition and in conformance with Part 16 and all other applicable regulations of the City of Atlanta at all times. Except as provided in section 16-28A.011(1) and (2) above, should any provision of this chapter 28A be in conflict with another regulation of the city, the more restrictive or that imposing the higher standard shall govern.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )


**Sec. 16-28A.012. Signs in the public right-of-way.**

(a) No sign shall be allowed in the public right-of-way except as follows or as otherwise permitted by the Code of Ordinances, and all other prohibitions and regulations governing signs in public rights-of-way and upon public property in the Code of Ordinances, including but not limited to section 138, also shall apply:

(1) Signs erected by or on behalf of a governmental body to post legal notices, identify public property, convey public information, and direct or regulate pedestrian or vehicular traffic.

(2) Bus stop signs erected by a public transit authority.

(3) Informational signs of a public utility identifying its poles, lines, pipes or other facilities.

(4) Awning, projecting and suspended signs projecting over a public right-of-way when in conformity with all other requirements of the Code of Ordinances and this chapter, including section 16-28A.007(e).

(5) Banners within the public right-of-way that are authorized by and approved under section 138-60 of the Code of Ordinances of the City of Atlanta.

(6) Temporary emergency warning signs erected by a governmental agency, a public utility company, or a contractor doing authorized or permitted work within the public right-of-way.

(7) Signs that are attached to bus shelters subject to the provisions of section 138-43 of the Code of Ordinances. Signs attached to street furniture such as trash cans, benches, kiosks, and streetcar shelters owned and/or operated by governmental units or public authorities. Temporary changing signs, not to exceed 30 days, as part of a city-sponsored program in connection with entertainment events meeting the criteria set forth in section 16-28A.010(12)l.(1)(i—iv).

(8) Newspaper vending devices that are authorized by and approved under division V of Article II of section 138- of the Code of Ordinances of the City of Atlanta.

(9)   Building identification signs pursuant to section 16-02.019(7) and section 16-02.019(8).

(10) Neighborhood identification signs, limited to two such signs per street entrance, shall be permitted.

(b) Any sign installed or placed on public property or right-of-way except in conformance with the requirements of or references in this section shall be deemed to be an illegal sign and shall be immediately removed by the owner or be subject to immediate removal by the city. In addition to other remedies hereunder, the city shall have the right to recover from the owner or person placing such a sign the full costs of removal and disposal of such sign. This Code section 16-28A.012, and all code sections referenced in this section, shall be enforced by the commissioner of transportation or that commissioner's designee.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 ; Ord. No. 2020-33(20-O-1381) , § 52, 6-23-20)


**Sec. 16-28A.013. Procedures.**

(a)   *Sign Permits:*

(i)   No sign shall be placed, constructed, erected or modified without first securing a sign permit from the director in accordance with these procedures, except for those signs exempted by the specific language of this chapter 28A.

(ii)  No sign permit of any kind shall be issued for an existing or proposed sign unless such sign meets all of the requirements of this chapter, Part 16 of the Code of Ordinances, and all other applicable requirements of the Code of Ordinances or is a lawful nonconforming sign under this chapter.

(iii) A sign permit shall be required for a change of materials or for the substitution of panels or faces on a billboard sign to verify that the sign is structurally sound, is at a location, and is of a size and height, which meets the requirements for a lawful sign under this part.

(iv)  No permit will be issued for any change to a legally nonconforming sign that enlarges or expands the degree of nonconformity, provided however that repairs and normal maintenance of legally non-conforming signs including the repairs and maintenance necessary to allow conversion of the sign face for the utilization of changing sign technology shall not be considered an expansion of the degree of non-conformity. An existing changing sign that is legally non-conforming shall be allowed to utilize this provision for purpose of installing a different changing sign technology.

(b)   *Permit Procedures:* The following procedures shall govern the application for and issuance of all sign permits under this chapter 28A.

(1)   All applications for sign permits shall be submitted to the director on an application form provided by the director. Each application shall be accompanied by the applicable

fees established by the governing authority from time to time. No application shall be deemed to be accepted by the director unless all fees are paid and all information reasonably required by the director is provided by the applicant. All applications for construction, creation or installation of a new sign or for modification of an existing sign shall be accompanied by detailed drawings showing the dimensions, design, structure, and location of each particular sign, as well as total wall area dimensions when necessary to determine compliance with this chapter 28A. One application and permit may include multiple signs on the same lot where said multiple signs are otherwise permissible by this chapter 28A.

(2) All applications for sign permits shall be either issued or denied within 30 days of their submission. If the sign permit is neither issued nor denied within this time period, the applicant may at their own risk erect a sign meeting the requirements of this part as if the application had been granted. The director is authorized, however, upon determination that a sign, erected for any reason, is not in compliance with these regulations, to take the appropriate action necessary to cause it to come into compliance or to be removed if illegal. After examination of an application, including an application which has been filed for more than 30 days, the director shall either:

   (a) Issue the sign permit if the sign(s) conform(s) in all respects to the requirements of this chapter and all other applicable City Code provisions; or

   (b) Deny the sign permit if the sign(s) fail(s) in any way to conform to the requirements of this chapter or any other applicable City Code provision. In case of a denial, the director shall notify the applicant in writing at the address set forth in the application.

(3) No illegal display, feature, attribute or other part of any otherwise permitted sign shall be considered legally non-conforming and no illegal sign shall become legally non-conforming by reason of failure of the director to deny the permit within 30 days of the submission of the application.

(c) *Inspections:* The director shall, at any time deemed necessary, inspect each sign regulated by this chapter 28A to ensure conformity with these regulations and other ordinances of the city. The director is hereby authorized and empowered to revoke any permit issued upon failure of the holder thereof to comply with any provision of this chapter 28A or other ordinances of the city, or to take other action lawful and necessary to assure correction of violations.

(d) *Lapse of Sign Permit:* A sign permit shall be deemed to lapse automatically and hence be deemed illegal if the business license for the premises lapses, is revoked or is not renewed. A sign permit shall also lapse if the activity on the premises is discontinued for a period of 180 days or more and is not renewed within 30 days of a notice to the last permittee, sent to the premises, that the sign permit will lapse if such activity is not renewed.

(e) *Permits for Portable Signs:* Portable signs shall be allowed only in accordance with the provisions of section 16-28A.007(a) and only upon the issuance of a sign permit, which shall be subject to the following additional requirements:

(1) A sign permit shall allow the use of a portable sign only for one single continuous specified 30-day period.

(2) Only one sign permit for a portable sign shall be issued to the same business license holder on the same lot for the same business.

(3) A portable sign shall be allowed only in the districts specified in section 16-28A.007(a) and shall be subject to all other requirements for portable signs as set forth in this chapter, in Part 16, and in any other applicable Code section.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

## Sec. 16-28A.014. Nonconforming signs.

(a) *Policy:* It is the policy of the city to encourage that all signs within the city be brought into compliance with the terms and requirements of this chapter and of Part 16 of the Code of Ordinances of the City of Atlanta.

(b) *Nonconforming Sign Regulations:*

(1) A nonconforming sign may remain in use subject to the requirements of chapter 24 of Part 16, and the following requirements, as well as any other applicable requirements of the Code of Ordinances of the City of Atlanta. Said nonconforming sign shall be deemed to be "structures and premises in combination" for purposes of regulation under chapter 24 of Part 16.

(2) Any nonconforming sign which is not used or leased for a continuous period of one year shall not be reused for sign purposes unless and until it fully conforms with the terms ad requirements of this chapter 28A.

(3) The substitution or modification of panels or faces on nonconforming signs and repainting, refacing or repostering nonconforming sign shall be permitted to the extent authorized by section 16-28A.013 and chapter 24 of Part 16. Repairs and normal maintenance of nonconforming signs, such as repainting, electrical repairs, and neon tubing repairs, shall be permitted, to the extent authorized by this chapter 28A, and chapter 24 of Part 16, provided it does not enlarge or expand the degree of nonconformity.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.015. Violations and enforcement.**

Any person violating any provision of this chapter shall be guilty of an offense and punished in accordance with the enforcement provisions of chapter 30 of Part 16 of the Code of Ordinances. This chapter shall be enforced by the director, except where otherwise specified. Each sign installed, created, erected or maintained in violation of this chapter 28A shall be considered a separate violation, and each day of a continued violation for each sign shall be considered a separate violation when applying the penalties of chapter 30 of Part 16. In addition to the enforcement and penalty provisions in chapter 30 of Part 16, the director shall be authorized to remove any illegal sign and place a lien for the removal costs against the property upon which the sign was located prior to removal. Any person damaging any tree in violation of section 16-28A.007(n) of this chapter shall, in addition to other penalties imposed by this part, be required to replace any such tree with a healthy tree or trees of like caliper and species, if, in the judgment of the city arborist, such tree is permanently injured or impaired or in danger of dying as a result of such damage.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.016. Variances limited.**

The provisions of this chapter varied only pursuant to the following requirements. The board of zoning adjustment, the urban design commission, or any other duly authorized administrative body shall have the power to grant variances relating to the height of signs, sign setbacks, topographic conditions which would prevent the erection of a sign which is otherwise permissible under this chapter 28A, and similar minor variances, according to their authority, and which are not otherwise expressly prohibited below. Neither the board of zoning adjustment, the urban design commission, nor any other authorized administrative body shall have the power or authority to vary the express terms of this chapter 28A related to the number of signs, the total area of signs permitted on a lot, distance and spacing requirements, or removal of illegal signs. Further, the board or other commission or administrative body shall have no power to permit within any zoning district within the City of Atlanta any sign not otherwise authorized by this chapter. Appeals from decisions of the director shall be as authorized by section 16-30.010 of this part.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )

**Sec. 16-28A.017. Severability of regulations.**

Should any section or provision of this chapter, or the application thereof to any person or circumstance, be declared by a court of competent jurisdiction to be invalid, such decision shall not affect the validity of this chapter as a whole or any section thereof other than the section or provision, or application thereof, specifically declared to be invalid.

( Ord. No. 2015-54(15-O-1394), § 1(Att. A), 11-11-15 )