## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| BUCKHEAD CITY COMMITTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00234-SEG |
| | ) | |
| CITY OF ATLANTA, GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

E. Adam Webb
Georgia Bar No. 743910
G. Franklin Lemond, Jr.
Georgia Bar No. 141315
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (facsimile)

*Attorneys for Plaintiff*

Buckhead City Committee (the "Committee") files this response in opposition to the Motion to Dismiss filed by Defendant City of Atlanta, Georgia ("Defendant" or "City"). The allegations contained in the Committee's operative complaint are more than sufficient to state a claim against the City. Because the City's arguments in support of dismissal largely ignore the Committee's allegations, dismissal should be denied.

## STATEMENT OF FACTS

The Committee is a 501(c)(4) non-profit organization with the goal of creating a separately incorporated Buckhead City, Georgia. *See* Amended Complaint, ¶ 2. The Committee has led the fight to create the new city since its formation and is supported by many thousands of members of the Buckhead community. *Id.* at ¶ 3. The Buckhead community is deeply concerned about problems that have arisen under the government of the City of Atlanta including rampant crime, roads littered with potholes, broken sidewalks, poor services such as garbage collection, high taxes, and corruption. *Id.* The current leaders of the City of Atlanta have made it clear that they do not want the new city to be approved. *Id.* at ¶ 4.

In order to have a physical office for its staff and volunteers, in 2021, the Committee opened an office at 3002 Peachtree Road. *Id.* at ¶ 13. This is a very

1

prominent location in the heart of the Buckhead community.  *Id.*  The Committee office is located in an existing building that has been utilized for a variety of businesses for 40 years.  *Id.* at ¶ 14.  For example, the site housed the Three Dollar Café for many years and most recently was the home of an art studio.  *Id.*

Because the site already had several signs in place, the Committee hired an experienced sign company to change the text or copy on the signs to the Committee's messages.  *Id.* at ¶ 15.  The Committee also hired an experienced sign vendor and design firm to prepare the signs.  *Id.* at ¶ 16.  The sign vendor immediately surveyed the site and determined that no new signs were needed but that the copy needed to be changed on three signs, namely the existing roof sign, the existing wall sign, and the existing freestanding sign.  *Id.* at ¶ 17.

The sign vendor researched the City of Atlanta's sign ordinance and permitting portions of the City website and determined that the new messages could be posted on the existing signs.  *Id.* at ¶ 18.  The Atlanta City Code provides as follows:

> *Messages: Any sign allowed herein may contain any lawful message so long as said sign complies with the size, height, area and other requirements of this chapter and of part 16 of the code of ordinances.*

*See* Sign Ordinance, § 16-28A.007(g).  Thus, changing the messages on the signs was specifically allowed under the City Code.  *See* Amended Complaint, ¶ 18.

2

Pursuant to the City Code, even if the existing signs at the Committee headquarters were nonconforming, changing of the content would still be allowed.  *See* Sign Ordinance, § 16-28A.014(b)(3).  Therefore, under any circumstances, the Atlanta Code specifically allowed the Committee to post its desired messages on the existing signs.  *Id.* at ¶ 19.

The only time the City of Atlanta requires permits to change the copy area of a sign is related to billboards:

> *A sign permit shall be required for a change of materials or for the substitution of panels or faces on a billboard sign to verify that the sign is structurally sound, is at a location, and is of a size and height, which meets the requirements for a lawful sign under this part.*

*See* Sign Ordinance, § 16-28A.013(a)(iii).  The signs at the Committee headquarters are not billboards, but rather are on-premise signs for use by the on-site organization.  Thus, no permits were needed.  *See* Amended Complaint, ¶ 20. Even if the signs at issue had not already been in place, they would have been allowed in the applicable zoning district, which is the SPI-9 Buckhead Village District.  *See* Sign Ordinance, § 16-28A.010(19).  Therefore, each of the signs sought by the Committee would have been allowed even as a new sign under the terms of the City Code.  *See* Amended Complaint, ¶ 21.

Despite the clear text of the City Code allowing the message changes

without a permit, in an abundance of caution, the Committee's sign vendor submitted sign permit applications to the City of Atlanta. *Id.* at ¶ 22. Such permits were not needed pursuant to the City Code but it certainly would not hurt to seek City permits. *Id.* On October 13, 2021, the vendor submitted three sign applications to the City: one to change the message on the existing roof sign, one to change the message on the existing wall sign, and one to change the message on the existing freestanding sign. *Id.* at ¶ 23. Each application prominently showed that the sign would promote the Committee and its goal of forming Buckhead City. It would have been clear to any person reviewing the applications that they were for the Buckhead City Committee. *Id.*

On October 18, 2021, the Committee's sign vendor was contacted by the City requesting payment for each of the permit applications. *Id.* at ¶ 24. The City staff member stated that the applications would be considered after payment was submitted. *Id.* The vendor made the payments and continued to monitor the permit process via the City's online permitting system. The permitting system stated that the deadline for zoning department review of the applications was October 25, 2021. *Id.*

No permits were received by October 25, 2021. *Id.* at ¶ 25. On October 26, 2021, the vendor contacted the City and requested an update on the permits. *Id.*

The vendor was told that the applications had just been sent to an inspector and that the inspector had 30 days from October 26, 2021 to review the applications. *Id.* On October 27, 2021, the Committee's vendor sent the following email to the inspector who had been assigned the applications for review:

> *Good Morning Maria,*
>
> *I am wondering if there is any way that this can happen sooner than 30 days? When I was downtown and told that the office was closed to walkins and to apply online, they estimated a total of 10 days for general sign permits.*
>
> *Is there any possible way to expedite this request since the sign structure already exists on the building, we are only asking to replace the sign graphics/messaging?*
>
> *Thank you for your help with this.*

*Id.* at ¶ 26. Rather than proceeding to issue the sign permits, the City staffer began a series of delaying tactics. *Id.* at ¶ 27. For example, as to the existing roof sign, the staffer requested proof that the sign had been issued a lawful permit. *Id.* This request evidenced the improper discretion of City officials in the sign permitting process. The sign is over 30 years old and the Committee's newly-hired vendor had no access to its permitting history. *Id.* The vendor explained to the City that none of the decades-old permit records were available. The City then raised other pretexts to delay and reject the requested permits. *Id.* These bogus demands by City officials illustrate improper discretion over speech activity in the City.

After weeks of back-and-forth, the City still had not issued the permits.  This violated the City of Atlanta's own 30-day limit for sign application processing.  *Id.* at ¶ 28.  In accordance with the City Code, on the 31st day after the applications had been submitted, the Committee was allowed to post the requested signs:

> All applications for sign permits shall be either issued or denied within thirty (30) days of their submission.  If the sign permit is neither issued nor denied within this time period, the applicant may at their own risk erect a sign meeting the requirements of this part as if the application had been granted.

*See* Sign Ordinance, § 16-28A.013(b)(2).  The Committee installed the signs "as if the applications had been granted."  *See* Amended Complaint, ¶ 29.

After the installation of the signs, the City sent an inspector to the premises. *Id.* at ¶ 30.  The inspector issued two Violation Correction Notices.  *Id.* at ¶ 31. The first notice ordered the Committee and its leaders to "remove roof top sign" by January 17, 2022.  The notice went on to state that failure to comply would subject the Committee and its leaders to criminal prosecution, including a $1,000 fine and jail time of up to 180 days.  Further, the City Code allows removal of signs by the City in such circumstances with costs of removal to be paid by the sign owner.  *Id.*

The second notice ordered the Committee and its leaders to "remove illegal roof sign and any other signs that cannot be permitted" on or before January 17, 2022.  *Id.* at ¶ 32.  The notice went on to state that failure to comply would subject

the Committee and its leaders to criminal prosecution, including a $1,000 fine and jail time of up to 180 days.  Once again, the City Code allows removal of signs by the City in such circumstances with expenses charged to the sign owner.  *Id.*

On January 13, 2022, a City inspector returned to the Committee's office for purposes of further harassment.  *Id.* at ¶ 35.  This time the inspector ordered the Committee and its leaders to "have spots marked for parking and handicap van access ready and clearly marked."  *Id.* at ¶ 36.  The Committee was ordered to complete this work on or before January 25, 2022.  The notice went on to state that failure to comply would subject the Committee and its leaders to criminal prosecution, including a $1,000 fine and jail time of up to 180 days.  *Id.*

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Glover v. City of Atlanta*, 2021 WL 3055267, at *2 (N.D. Ga. July 20, 2021). While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To withstand a motion to dismiss for failure to state a claim under Rule

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Glover*, 2021 WL 3055267, at *2 (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  A complaint is facially plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim."  *Am. Dental Ass'n*, 605 F.3d at 1289.  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

## **ARGUMENT AND CITATION OF AUTHORITY**

### I.    **The Committee Has As-Applied And Facial Standing To Challenge The City's Permitting Discretion, Delays Of Speech Activity, And Enforcement Behavior Under The City Code.**

The fundamental flaw in the City's argument that the Committee lacks standing to challenge the City's permitting delays is it fails to recognize that, at the

pleading stage, general factual allegations of injury resulting from the defendant's conduct are sufficient to establish standing. *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257 (11th Cir. 2006), specifically recognized that the burden of proof regarding standing changes at the successive stages of litigation. 451 F.3d at 1269. The court noted that "'general factual allegations of injury resulting from the defendant's conduct may suffice' at the pleading stage.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In *Lujan*, the Supreme Court recognized that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 504 U.S. at 561 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

The Eleventh Circuit's recitation of this principle in *CAMP* was nothing new. The same principle was articulated in *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000). In *Bischoff*, the court noted, "when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing." *Id. See also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (same). In *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994), the Eleventh

9

Circuit held that "[w]hen lack of standing is raised in a motion to dismiss, the issue is properly resolved by reference to the allegations of the complaint." Furthermore, "[s]ince a motion to dismiss occurs at the inception of litigation and standing is a preliminary jurisdictional matter, a trial court resolves the issue without considering the likelihood of success on the merits." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990).

Defendant's argument regarding the lack of standing is quite similar to the one rejected by the Court in *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283 (N.D. Ga. 2008). There, this Court held:

> The City argues that plaintiff lacks standing to pursue Counts Two, Three, Four, and Five because it has not suffered an injury under the provisions of the ordinance that those counts target. "[W]hen lack of standing is raised in a motion to dismiss, the issue is properly resolved by reference to the allegations of the complaint." *Church v. City of Huntsville,* 30 F.3d 1332, 1336 (11th Cir. 1994). The City's effort to dismiss Counts Two, Three, Four, and Five for lack of standing argument fails because ***it is largely made without regard to the complaint. When the complaint's allegations are considered, plaintiff's standing is apparent.***
>
> Various paragraphs of the complaint allege that the City's sign ordinance vests city officials with unbridled discretion, lacks procedural safeguards, and otherwise violates the First Amendment and the Georgia Constitution. As in *The Lamar Company, LLC v. City of Marietta,* 538 F. Supp. 2d 1366 (N.D. Ga. 2008), plaintiff "as a permit applicant is subject to" those allegedly unconstitutional provisions and, as such, has suffered the requisite injury. 538 F. Supp. 2d at 1372; *see also Lamar Adver. Co. v. City of Douglasville,* 254 F. Supp. 2d 1321, 1326-27 (N.D. Ga. 2003)

> ("Because ... [the plaintiff] asserts that [the defendant's] licensing statute vests unbridled discretion in city officials to permit or deny expressive activity, [the plaintiff] has standing to challenge [the defendant's sign] ordinance on its face.").
>
> Nonetheless, the City suggests that "[p]laintiff does not have standing to challenge any parts of the ordinance it may assert constitute the challenged conduct *because plaintiff's signs were denied based on their proximity to other signs.*" Defs. Br. Mot. Jdgmt. 5 (emphasis added). The implication, of course, is that plaintiff was not "subject to" the provisions of the ordinance he complains about because his applications were denied pursuant to *another* provision of the City's ordinance. (*See, e.g.,* Defs. Br. Mot. Jdgmt. 5). ***But for the allegations of the complaint, this argument would be persuasive.***

*Id.* at 1285 (emphasis added). Similar findings are warranted here.

The decisions relied upon by Defendant in support of its argument to the contrary – *Granite State Outdoor Advertising v. City of St. Petersburg*, 348 F.3d 1278 (11th Cir. 2003), and *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051 (11th Cir. 1987) – were all decided on summary judgment, not a motion to dismiss. *See, e.g., CAMP*, 451 F.3d at 1269. The City's attempt to conflate the standards must be rejected.

The Committee has alleged an "injury in fact" – namely the delays in the processing of its sign permit applications by the City of Atlanta. *See* Amended Complaint, ¶¶ 25, 27, 41, 43, 49. This injury is causally related to the alleged constitutional violation because the City's Sign Ordinance does not require a prompt decision on permit applications. *Id.* at ¶¶ 28, 42, 45. A favorable decision

– invalidation of the provision – would mean the Committee should have received approval of its applications and may be entitled to damages. *Id.* at ¶¶ 42-45. This is sufficient to establish standing at this stage of the litigation. *See, e.g., CAMP*, 451 F.3d at 1269; *Roma Outdoor*, 558 F. Supp. 2d at 1285.

Irrespective of whether the Committee applied for a permit or not, precedent establishes that Plaintiff has standing to facially challenge the City's permitting scheme as well. As an applicant that has been denied, the Committee has the ability to bring an as-applied challenge as well as a facial challenge on behalf of others. *E.g.*, *CAMP*, 451 F.3d at 1271; *KH Outdoor, LLC v. City of Trussville,* 458 F.3d 1261, 1267-68 (11th Cir. 2006) (holding that plaintiff was not limited to an as-applied challenge, but could also argue that by restricting the largest signs to commercial billboards, the city unconstitutionally discriminated against noncommercial speech); *The Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366, 1372 (N.D. Ga. 2008); *Lockridge v. City of Oldsmar*, 475 F. Supp. 2d 1240, 1250 (M.D. Fla. 2007) (allowing plaintiff to assert as-applied and facial challenge to ordinance). The City's argument to the contrary lacks merit.

But the Committee's standing to bring a facial challenge extends further than that. For nearly 30 years, it has been a well-recognized principle of law that a plaintiff may facially challenge speech permitting regulations that allegedly vest

government officials with unbridled discretion *even if such regulations have never been enforced against the plaintiff*. *Lakewood*, 486 U.S. at 755-56.  Such challenges are authorized due to the concern that "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Id.* at 755-56.

The Eleventh Circuit enforced this principle in *CAMP*.  There, an organization contended that several aspects of a city's festival ordinance granted unbridled discretion to officials.  451 F.3d at 1275.  CAMP further argued that, "because it has applied for permits and its future applications would be subject to these procedural regulations, it has standing to [facially] mount these challenges." *Id.*  The court agreed that CAMP was "subject to" the requirements, finding:

> The record establishes that CAMP has applied for permits in the past, [], and intends to apply for permits in the future.  That city officials have not yet exercised their discretion to refuse CAMP's proposed festivals is immaterial because it is the existence, not the imposition, of standardless requirements that causes CAMP injury.

*Id.* at 1275 (citing *Lakewood*).

*Lakewood* and *CAMP* have repeatedly been applied to authorize sign companies to facially challenge discretionary permitting regulations to which they are subject.  In *The Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366 (N.D. Ga.

2008), the Court held that a sign company had standing to facially challenge provisions of a sign code that gave city officials unbridled discretion over whether or not to issue a sign permit, including the lack of requisite procedural safeguards, because it desired to post signs in the city. *Id.* at 1372-73 (citing *Lakewood* and *CAMP*). Plaintiff has standing to bring its facial challenges.

It would be an odd rule indeed if sign applicants were not allowed to challenge codes pursuant to which they actually applied for signs, were subjected to discretionary permitting requirements, were denied permits, and were threatened with criminal prosecution. At this stage of the litigation at least, these allegations are more than sufficient to support standing.

## II.   **The Committee States A Valid Claim For Undue Discretion and Lack Of Time Limits.**

Sign regulations that contain no meaningful time limit within which a municipality must respond to a sign application can be fatal to the entire regulatory scheme. *E.g.*, *Solantic*, 410 F.3d at 1269 (invalidating entire sign ordinance on the grounds that it did not contain time limits). A licensing scheme that "subjects the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional." *Café Erotica*, 360 F.3d at 1284-85.

As held in *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130

14

(1992), a prior restraint on speech "may not delegate overly broad licensing discretion to a government official." Moreover, a licensing scheme that "subjects the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional." *Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1283-85 (11th Cir. 2004) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990)). That is because failure "to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech," and therefore, will not be tolerated. *Café Erotica*, 360 F.3d at 1283. To satisfy this requirement, an ordinance should contain at least these two safeguards: (1) officials must be required to make prompt decisions; and (2) prompt judicial review must be available. *Café Erotica*, 360 F.3d at 1283.

Prior restraints on speech are presumptively invalid because they "commonly contain two defects: discretion and the opportunity for delay." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999). To remedy these concerns, it is imperative that ordinances contain time limits on the decision-making process. *FW/PBS*, 493 U.S. at 225-27. Moreover, it is imperative that a time limit be accompanied by "language [which] create[s] an absolute right to operate at the expiration" of the time period. *Redner v. Dean*, 29 F.3d 1495,

15

1500-01 (11th Cir. 1994).  A time limit that lacks mandatory language specifying that the speech activity can begin if the decision-maker fails to timely act is insufficient.  *Id.*; *also Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1313-14 (11th Cir. 2003); *Café Erotica v. St. Johns County*, 143 F. Supp. 2d 1331, 1334-35 (M.D. Fla. 2001).

Here, City officials are not required to make prompt decisions.  If the City fails to act within 30 days, there are no adverse consequences for the City.  While an applicant is allowed to move forward with its sign if the City does not act within 30 days, the City reserves the right to "take the appropriate action necessary to cause it to come into compliance or to be removed if illegal."  *See* Sign Ordinance, § 16-28A.013(b)(2).  The Committee has demonstrated that the City uses this authority – indeed the Committee has been ordered to remove its signs even though the City failed to timely process the applications – or face a $1,000 fine and jail time of up to 180 days.  *See* Amended Complaint, ¶¶ 31-32.  The City has turned the First Amendment on its head by essentially allowing itself an unlimited amount of time to make a decision on a sign application.  Indeed the City makes it clear "no illegal sign shall become legally non-conforming by reason of failure of the director to deny the permit within 30 days of the submission of the application."  *See* Sign Ordinance, § 16-28A.013(b)(3).

The Committee has a colorable claim that the City's failure to include a meaningful time limit after which signs may be posted is unconstitutional.  *E.g.*, *United States v. Frandsen*, 212 F.3d 1231, 1239 (11th Cir. 2000) (when licensor has no real time limits "the risk of arbitrary suppression is as great as the provision of unbridled discretion"); *Redner v. Dean*, 29 F.3d 1495, 1500 (11th Cir. 1994) (finding ordinance that failed to allow applicant to begin engaging in the expressive activity for which the license is sought while license was being considered unconstitutional); *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314 (11th Cir. 2003) (same); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999) (same).

The City's suggestion that Plaintiff has not alleged a policy of delaying sign applications but rather the actions of a "rogue" staffer is unsupported by any record evidence.  Obviously multiple City employees participated in the conduct.  For example, the Committee's sign vendor was given the run-around by multiple permitting officials and then multiple enforcement personnel issued improper threats of criminal prosecution.  Thus, the Committee has alleged that the City applied the Sign Ordinance as written, not that one staff member did something on his own.  *E.g.,* Amended Complaint, ¶¶ 28, 42.  There is no allegation that anyone at the City departed from the discretion afforded them under the City Code.

17

Speculation regarding the bases for these officials' conduct by the City cannot be a basis for dismissal.

Equally as unpersuasive is the City's claim that the Committee caused the delays at issue, not the City.  There is nothing in the Amended Complaint to support the City's contention that Plaintiff did not provide "all information reasonably required" for a permit.  *See* ECF No. 16, p. 9.  Instead, the Amended Complaint alleges that the Committee submitted an application and that the City made bogus and discretionary requests for supplementation and then took longer than 30 days to reach a decision.  *See* Amended Complaint, ¶ 28.  Plaintiff clearly alleges the City caused all the delays at issue.  Bare allegations to the contrary cannot serve as a basis for dismissal.  The Committee has stated a valid claim.

## III.   **The Committee Has Stated A Valid Claim For Retaliation.**

To survive a motion to dismiss based on retaliation for exercising rights under the First Amendment, a plaintiff must allege facts establishing (1) "his speech or act was constitutionally protected;" (2) he "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech," and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech."  *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1373 (S.D. Ga. 2015); *see also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th

Cir. 2019); *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Randazzo v. Fisher*, 2022 WL 841757, at *16 (N.D. Ga. Mar. 9, 2022) (citing *Hartman v. Moore*, 547 U.S. 250, 256, (2006)).

Applying this standard here, it is clear that Plaintiff has stated a valid claim for retaliation.  First, the Committee's First Amendment-protected activities through the use of signs cannot be seriously questioned.  *E.g.*, *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) (recognizing that "signs are a form of expression protected by the Free Speech Clause").  Second, the City's improper discretion in requesting bogus documentation and its undue delay in handling sign permit applications certainly harmed the Committee's efforts to communicate with the public.  The Committee's signs were improperly delayed for weeks.  Established precedent dictates that even one day of delay is *per se* irreparable.  *E.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) ("We have repeatedly held that harms to speech rights 'for even minimal periods of time, unquestionably constitute[ ] irreparable injury'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72

19

(11th Cir. 2006).  Moreover, the City's threats of criminal prosecutions have also hampered the Committee's efforts by distracting Committee leaders and staff and forcing the Committee to expend a substantial amount of its limited resources on legal fees and expenses.  *See* Amended Complaint, ¶ 49 (alleging same).  Finally, the Committee has alleged a causal connection between the City's conduct and the adverse effect on Plaintiff's speech.  *Id.* at ¶¶ 4-5 (alleging the leaders of the City do not want Buckhead City to be created and have taken action against the Committee as a result of their anti-Buckhead City position). The harm to the Committee's First Amendment-protected activities has been real and substantial.

The City's arguments against the Committee's claim completely ignore the allegations of Plaintiff's Amended Complaint and read like a request for summary judgment.  *See* ECF No. 16, pp. 13-16.  The Committee's well-pled allegations, which must be accepted as true at this juncture, establish a valid claim for retaliation.  *E.g.*, *FindWhat Inv. Group*, 658 F.3d at 1296.

## IV.   <u>The Committee Has Stated A Valid Claim For Selective Enforcement.</u>

"It is well settled that unequal application of a facially neutral statute may violate the Equal Protection Clause."  *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996); *WBY, Inc. v. City of Chamblee*, 2021 WL 3005379, at *14 (N.D. Ga. July 15, 2021).  *See also E & T Realty v. Strickland*, 830 F.2d 1107, 1113

(11th Cir. 1987) ("Unequal administration of facially neutral legislation can result from either misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases)"). To succeed on such a claim, the plaintiff must show that: "(1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the [] statute for the purpose of discriminating against the plaintiff." *WBY*, 2021 WL 3005379, at *14 (citing *Strickland*, 74 F.3d at 264). Put another way, a claim for selective prosecution under the Equal Protection Clause requires a plaintiff to demonstrate that the policy at issue "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Savage v. Hall County*, 2005 WL 8156146, at *2 (N.D. Ga. Sept. 9, 2005)

The Committee has identified two similarly situated persons who previously posted signs of a substantially similar nature – Mayor Andre Dickens when he was running for Mayor of the City of Atlanta and Saville Studios. *See* Amended Complaint, ¶¶ 14, 34. The Committee has also alleged that the City unequally applied the Sign Ordinance to the Committee's proposed signs, when compared to the almost identical signs used by Andre Dickens and Saville Studios. *Id.* at ¶¶ 34, 53-57; *compare* Exhibit 1 (signs displayed by Committee), *with* Exhibits 2 and 3 (similar signs displayed by art studio and the Dickens campaign).

Moreover, the Committee has clearly and unequivocally alleged that the City's enforcement of its municipal ordinances – its refusal to issue sign permits, bogus request for supplemental application materials, the issuance of citations or threats of citations pertaining to the legitimate use of signs for free speech activities, and threats of citations based on parking at the Committee's offices in the heart of Buckhead – in a manner inconsistent with its prior enforcement is motivated by the City's admitted opposition to the creation of Buckhead City. *See* Amended Complaint, ¶¶ 4-6, 53-57. The Committee has also alleged that these actions have stifled the Committee's First Amendment-protected activities. *Id.* at ¶ 55.

The City's request for dismissal, once again, asks this Court to ignore these well-pled allegations, instead arguing that the Committee's claims "fall short on the merits." *See* ECF No. 16, p. 17. Moreover, the cases cited by Defendant in support of dismissal were all decided on summary judgment, not on a motion to dismiss. *See, e.g.*, *Zia Shadows, LLC v. City of Las Cruces*, 829 F.3d 1232 (10th Cir. 2016) (on appeal following grant of summary judgment); *Jones v. White*, 992 F.2d 1548, 1552 (11th Cir. 1993) (dismissal of selective enforcement claim after "extensive discovery"); *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989) (appeal following grant of summary judgment). Dismissal of the Committee's

claim at the pleadings stage would be inappropriate.

## V.   The Committee Has Stated A Valid Equal Protection Claim.

Courts have consistently found that favoring signs posted by certain businesses and organizations over others, such as the Committee, violates the Equal Protection Clause of the Fourteenth Amendment.  *E.g.*, *Advantage Media, L.L.C. v. City of Hopkins*, 379 F. Supp. 2d 1030, 1045-46 (D. Minn. 2005); *Nat'l Adver. Co. v. Town of Babylon*, 703 F. Supp. 228, 239 (E.D.N.Y. 1989), *aff'd in part, rev'd in part on other grounds by* 900 F.2d 551 (2d Cir. 1990).  The Equal Protection Clause of the Fourteenth Amendment prohibits "deny[ing] to any person within its jurisdiction the equal protection of the laws" and mandates that "all persons similarly situated should be treated alike."  *Advantage*, 379 F. Supp. 2d at 1045 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

To establish a violation of equal protection based on selective enforcement, a plaintiff must ordinarily show that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Advantage*, 379 F. Supp. 2d at 1045-46 (citing *LaTrieste*

*Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)).

"Like other classifications, regulatory distinctions among different kinds of speech may fall afoul of the Equal Protection Clause." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 n.9 (1994).  When confronted with similar ordinance text, another District Court has held:

> Granting an exception for temporary signage only when erected by such entities as semi-public agencies, nonprofit organizations, or "permitted clubs", or only in connection with limited and vaguely defined events, shows an impermissible favoritism for certain types of non-commercial speech and certain types of speakers and, additionally, ***leaves open the door to abuse of discretion in determinations of who qualifies for the exception.***

*Town of Babylon,* 703 F. Supp. at 239 (emphasis added); *also Metromedia, Inc. v. San Diego,* 453 U.S. 490, 515 (1981) ("With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse").

The City's Sign Ordinance chooses the appropriate subjects for public discourse, while expressly prohibiting the Committee from engaging in any discourse whatsoever.  For example, the City Sign Ordinance completely exempts from all requirements government signs and statutory signs.  *See* Sign Ordinance, § 16-28A.012(1).  But if the Committee submitted an application for an exempt government sign, the Sign Ordinance makes it clear that such an application would

be denied.  *Id.*  Because the City would refuse to allow the Committee to display a sign that it would allow itself or another government entity to have, the Committee has stated a valid Equal Protection claim.

## VI.  The Committee Has Stated Valid Claims for Injunctive Relief.

The City's sole argument in support of dismissal of Plaintiff's claim for injunctive relief is that the Committee has failed to state a claim and therefore there is no basis for injunctive relief.  *See* ECF No. 16, p. 24.  In light of the fact that the Committee has stated several viable claims for relief, there is no basis to dismiss Plaintiff's count for injunctive relief.

## VII.  Absent Any Federal Law Claims, Jurisdiction Over State Law Claims Should Be Declined.

The Committee agrees that, in the unlikely event that this Court were to dismiss all of its federal claims, that it should decline supplemental jurisdiction over Plaintiff's state law claims.  The Eleventh Circuit has made it clear that when a District Court declines to exercise supplemental jurisdiction because only state law claims remain, the court should dismiss the state law claims without prejudice "so that the claims may be refiled in the appropriate state court."  *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999).

## CONCLUSION

Dismissal under 12(b)(6) should be denied.

DATED this 16th day of May, 2022.

                              Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

        */s/ E. Adam Webb*
E. Adam Webb
  Georgia Bar No. 743910
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiff*

26

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the Northern District of

Georgia, I hereby certify that the foregoing pleading has been prepared in Times

New Roman, 14-point font, as permitted by Local Rule 5.1C.

 */s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2022, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

 */s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.